René Lastreto II, #100993
rl2@lrplaw.net
Michael J. Gomez, #252571
mjg@lrplaw.net
Lang, Richert & Patch
Post Office Box 40012
Fresno, California 93755-0012
(559) 228-6700 Phone
(559) 228-6727 Fax

Attorneys for Secured Creditors
FARM CREDIT WEST, PCA, and
FARM CREDIT WEST, FLCA

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>Clearwater Nursery, Inc.,<br><br>Debtor. | Case No. 9:bk-15-10251-DS<br><br>Chapter 11<br><br>**LIMITED OBJECTION TO THE APPLICATION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER APPROVING THE EMPLOYMENT OF FOX ROTHSCHILD LLP AS COUNSEL FOR THE COMMITTEE EFFECTIVE AS OF MAY 19, 2015 AND REQUEST FOR HEARING**<br><br>[Hearing To Be Set By Movant Pursuant To LBR 9013-1(o)(4)] |

Objection to Employment Application                    -1-

TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE:

      Secured Creditors Farm Credit West, FLCA and Farm Credit West, PCA (together, "FCW") object on a limited basis to the *"Application of Official Committee of Unsecured Creditors For Order Approving the Employment of Fox Rothschild LLP as Counsel For the Committee Effective as of May 19, 2015"* [ECF No. 77] (the "Application") filed by the Official Committee of Unsecured Creditors (the "Committee").

      In general, FCW has no issue with the Application.[1] The Application, however, seeks inconsistent forms of relief under the Bankruptcy Code.[2] The Application seeks to employ counsel and have their fees approved through the standard section 330(a) process. (Application, p. 2:20-25.) Recognizing the potential for excessiveness when it comes to the hourly rates of its counsel though, the Committee seeks pre-approval of the rates pursuant to section 328(a). (*Id.* at p. 2:19-20 and 6:5-6.) The Committee cannot have it both ways.

      Sections 328 and 330 establish two contrary systems for judicial review and approval of the terms of a professionals retention. Inquiries required by the two methods are mutually exclusive, as there "is no question that a court may not conduct a §330 inquiry into the reasonableness of the fees and their benefit to the estate if the court has already approved the professionals employment under §328." *In re B.U.M. Int'l, Inc.*, 229 F.3d 824, 829 (9th Cir. 2000). The Court must either unconditionally approve the terms of the Application pursuant to section 328 in its entirety or leave it completely subject to subsequent review. *Id.* (albeit referencing §328, the employment order left discretion for future review, eliminating any insulation provided by §328); *see also In re First Magnus Fin. Corp.*, 2009 WL 7809001

---

[1] FCW notes that the hourly rates of counsel set at $675 and $605, and possibly going as high as $895, subject to annual or more frequent adjustment (Application, p. 5:4-18), may be excessive for the size and complexity of this case, but reserves such issue for any later fee applications.

[2] Unless otherwise specified, all section and rule references are to the Bankruptcy Code (11 U.S.C. §§ 101 - 1532) and to the Federal Rules of Bankruptcy Procedure (Rules 1001 - 9037).

1 | (B.A.P. 9th Cir. 2009) (unreported).[3] Consequently, the Committee cannot insulate the fees of its counsel from future review *ab initio* pursuant to § 328(a) while solely leaving open the review of its counsel's time for reasonableness.

Accordingly, FCW respectfully requests that the Application be denied or it be amended to either strike any references to section 328 and only seek approval pursuant to section 327 of the Bankruptcy Code.

Respectfully submitted,

DATED: June 2⁄, 2015

LANG, RICHERT & PATCH, P.C.

By: _____
Michael J. Gomez
Attorneys for Secured Creditors
FARM CREDIT WEST, FLCA and
FARM CREDIT WEST, PCA

---

[3] A copy of the case is attached as **Exhibit 1** as required by LBR 9013-2(c)(3)(D).

# EXHIBIT "1"

2009 WL 7809001
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States Bankruptcy Appellate Panel
of the Ninth Circuit.

In re FIRST MAGNUS FINANCIAL
CORPORATION, Debtor.

MCA Financial Group, Ltd., Appellant.[1]

No. AZ–08–1160–PaDMo.    |    Argued
by Video Conference and Submitted on
Jan. 23, 2009.    |    Filed Feb. 24, 2009.

Appeal from the United States Bankruptcy Court for the District of Arizona, Honorable James M. Marlar, Bankruptcy Judge, Presiding.

Before PAPPAS, DUNN and MONTALI, Bankruptcy Judges.

MEMORANDUM[2]

PER CURIAM.

*1 MCA Financial Group, Ltd. ("MCA") appeals the bankruptcy court's order approving its compensation for the professional services it provided to the chapter 11[3] debtor First Magnus Financial Corporation ("Debtor"). Because the bankruptcy court applied an incorrect legal standard in its review and disposition of MCA's fee application, we VACATE the bankruptcy court's order and REMAND this matter with instructions that the bankruptcy court conduct a further review of that application.

FACTS

At the end of 2006, Debtor was, it alleges, one of the two largest privately-held mortgage companies in the United States, engaged in originating, purchasing, and selling loans secured by one-to-four unit residences. Debtor had assets of approximately $1.1 billion and 5,500 employees working at 335 branches worldwide.

In 2007, the American home mortgage loan industry nearly collapsed. When Debtor could not obtain the financing it needed to make mortgage loans, on August 16, 2007, it terminated most of its employees and ceased operations. On August 21, 2007, Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code, not to reorganize, but as a vehicle to wind down operations and liquidate its remaining assets.

On the same day that it filed its petition, Debtor submitted a series of first day motions to the bankruptcy court. Among those motions was its application for bankruptcy court approval under § 327(a) to employ MCA as its financial advisor. The employment application provided that, under its agreement with Debtor, MCA would seek bankruptcy court approval of compensation for its services under § 330(a) based upon an hourly fee schedule. However, because of existing uncertainties, Debtor alleged it could not at that time estimate the total cost for MCA's engagement. The application disclosed, among other things, that before Debtor filed the bankruptcy petition, MCA had requested and received a $165,000 retainer from Debtor to apply against charges for anticipated services.

The bankruptcy court considered Debtor's first day motions at a hearing on August 29, 2007.[4] The application to employ MCA was presented by Debtor's counsel.[5] The court expressed considerable skepticism as to the need for, and value of, MCA's services to the bankruptcy estate, questioning why such services could not be provided by Debtor's employees or attorneys. At the end of the hearing, the court stated that it would not give MCA what it described as a "blanket appointment." Hr'g Tr. 123:7 (August 29, 2007). Instead, the bankruptcy court authorized Debtor to "just employ [MCA] for 30 days from the date of the filing subject to being reappointed for the following 30 days depending on us knowing more about what they're actually doing for the company that the other existing employees aren't doing." Id. at 123:7–11.

Throughout this hearing, the bankruptcy court expressed concern that because Debtor had not yet filed its statement of financial affairs or schedules, its consideration of the various motions was handicapped. In particular, the court voiced frustration about Debtor's proposed operating budget submitted with its petition, opining that the budget was so liberal and unrealistic that the court was considering the appointment of an examiner to review the financial projections and proposed operations. As a result, the bankruptcy court directed Debtor to submit a revised version of the budget.

***

**\*2** In the original proposed budget, Debtor estimated that payments to MCA for its services would amount to *$75,000 per week* for six months. While the bankruptcy court did not specifically refer at the hearing to this item as an unrealistic expense, in the words of MCA, the court "mistakenly" referred to the proposed payments to MCA as *$75,000 per month* three times at the first day motions hearing.

The bankruptcy court next conducted a hearing on September 6, 2007, to review Debtor's proposed use of cash collateral.[6] During that hearing, the court specifically addressed the $75,000/month vs. $75,000/week compensation proposed for MCA:

> THE COURT: On the accrual [expenses in the proposed budget], you've got the legal fees in there, it looks like $100,000 a week—that's—that's a typo?
>
> LESHAW [Debtor's atty.]: No, Your Honor, I don't think that it is.
>
> THE COURT: What about the $75,000 a week for MCA; is that a typo?
>
> LESHAW: I don't think it is, Your Honor.
>
> THE COURT: I thought they wanted $75,000 a month.
>
> [Leshaw explains to the court that MCA expected heavy professional expenses at the beginning of the case, but that they would decline as the case aged.]
>
> THE COURT: Well, you're using the same numbers all the way through your entire budget. I mean, it's not slowing down. .... I mean, has [Debtor] taken the fine pencil that I asked him last week to [professional fees]? I mean, at some point, we've got to stop the bleeding.

Hr'g Tr. 55:4–24 (September 6, 2007).

The following day, September 7, 2007, the bankruptcy court entered an order approving MCA's employment as Debtor's financial advisor for a period of 30 days. The order provides that "First Magnus is authorized to retain MCA as its financial advisor ... pursuant to § 327" and that "All fees and costs incurred by MCA on behalf of First Magnus Financial shall be subject to Bankruptcy Court approval pursuant to 11 U.S.C. § 330 and 331, *but for said 30 day period, shall not exceed $75,000.00.*" This highlighted provision in the order was added in handwriting and initialed by the bankruptcy court.

Debtor submitted a motion to continue the employment of MCA on September 17, 2007. The motion again sought approval of MCA's employment, and also asked the bankruptcy court to "eliminate any pre-imposed fee cap or limitation for MCA other than the ordinary bankruptcy fee approval process under 11 U.S.C. §§ 330 and 331."

On September 19, 2007, the bankruptcy court held a hearing on the continued employment of MCA.[7] The bankruptcy court continued to question the value of MCA's services, and in particular, why MCA was preparing the liquidation plan and disclosure statement rather than counsel for Debtor. The court took the matter of the continued employment of MCA under advisement.

On September 20, 2007, the bankruptcy court entered its second order approving Debtor's employment of MCA "for another 30 days only, subject to renewal upon appropriate motion, notice, and an opportunity for interested parties to be heard; the fees and costs for said period shall not exceed $75,000; in all other respects, this court's order of September 7, 2007, shall continue in full force and effect."

**\*3** On October 5, 2007, MCA filed its own amended motion[8] asking the bankruptcy court to reconsider the limitations it had placed on its compensation. The motion represented that MCA had performed valuable services worth $106,010 in excess of the $75,000 fee cap during the first 30 days of the bankruptcy case. Significantly, MCA requested only that the court reconsider the fee cap for the first 30 days of its work in the case, and indicated that in the second 30 days, "MCA has made arrangements with the Debtor to work within the $75,000 cap.... Should MCA's retention be approved for a third 30–day period, MCA would estimate its total fees would not exceed $50,000 for such period."

On October 17, 2007, the bankruptcy court held its next hearing in this case.[9] Neither MCA nor its counsel was present at this hearing, but Debtor's attorney requested continuation of MCA's employment on a continuing basis through plan confirmation. The court approved the continuing employment, but subject to a cap of $50,000 per month, as suggested by MCA and Debtor.

MCA submitted its First Interim Fee Application on November 7, 2007. In it, MCA sought approval and payment of $308,599 for compensation, composed of $181,145 for the first 30–day period, $95,590.50 for the second period,

and $31,863.50 for the partial 10–day third period. MCA acknowledged that the amounts requested for compensation exceeded the fee caps imposed by the bankruptcy court in its orders for the first two months, but argued that its services had been necessary and beneficial to Debtor, and that its charges were reasonable.

The bankruptcy court scheduled a hearing on the Interim Fee Applications for December 7, 2007, but because of the press of other Debtor business, was unable to hear the parties, and suggested that they submit the issues raised by their applications without argument. The bankruptcy court took the Interim Fee Applications, including that of MCA, under advisement.

On December 14, 2007, the bankruptcy court entered its Order re: Various Interim Professional Fees and Costs (the "First Fee Order"). In this order, the court approved reimbursement of all expenses claimed by MCA ($8,309.31), but approved only $150,000 in compensation, rather than the $308,599 MCA requested. The court approved no fees for the third partial period, and limited the fees for the first two months to the capped amounts of $75,000 per month. In a special notation on the order, the court stated: "This court set a cap on fees by this entity of $75,000 per month for the first two months of the case. This fee arrangement has not been altered by the court. MCA apparently elected to work in excess of the cap. Doing so merely reduces its effective hourly rates."

MCA filed its Second Interim and Final [10] Fee Application on March 28, 2008. MCA sought final approval of $481,192.00 in compensation and $9,015.10 in expenses. This application included the $150,000 in fees approved in the First Fee Order, plus $172,593.00 in the second fee application period, plus $158,599.00 the court had previously not allowed under fee caps. Once again, MCA argued that the services it provided were necessary and valuable to the estate, and that the fees it was requesting in excess of the caps were reasonable.

*4 The hearing concerning MCA's Final Fee Application took place on April 21, 2008. After hearing from counsel for MCA, the bankruptcy court indicated its intention to stand by the fee caps, and it took MCA's fee request under advisement.

On April 28, 2008, the bankruptcy court entered its Memorandum Decision re: Fees Requested by MCA Financial Group, Ltd. In its decision, the court approved MCA's requested expenses in full. However, with respect to compensation, the court approved the following:

| Period | Requested | Fee Cap | Awarded |
| --- | --- | --- | --- |
| 08/21/07–09/20/07 | $181,145.00 | $75,000 | $75,000 |
| 09/21/07–10/20/07 | 95,590.00 | 75,000 | 75,000 |
| 10/21/07–11/20/07 | 57,429.00 | 50,000 | 50,000 |
| 11/21/07–12/21/07 | 55,777.00 | 50,000 | 50,000 |
| 12/22/07–01/21/08 | 26,624.00 | 50,000 | 26,624 |
| 01/22/08–02/21/08 | 58,478.50 | 50,000 | 50,000 |
| 02/22/08–02/28/08 | 6,148.00 | 50,000 | 6,148 |
| TOTAL | $481,192.00 | | $332,772 |

In its decision, the bankruptcy court indicated that it had imposed fee caps concerning MCA's employment under the authority granted in § 328(a). Because of this, according to the court, it could only modify the terms of the MCA fee structure if, quoting the Code, "such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." After reviewing case law concerning § 328(a), the bankruptcy court concluded:

> Here the fee caps were unambiguous. MCA knew what limitations had been placed upon it, in a liquidating chapter 11 context, yet it chose to exceed the maximum fee caps set by the

court, which the court had determined were reasonable in light of the customary rates and the circumstances of this case.... Under the circumstances and the record in this case, the court does not feel that anything developed in the case which made the original budgetary restrictions 'improvident' or unforeseeable.... Voluntary decisions of a professional to unilaterally exceed the fee caps does not constitute an improvident condition which requires changing the terms of the employment order.

On May 5, 2008, citing Rules 7052, 9023 and 9024, MCA asked the court to reconsider the Final Fee Order, asserting: (1) MCA had been employed under § 327, and therefore, the court's § 328 analysis was inappropriate; (2) even if the court limited compensation, it should award the fees in excess of the caps on a quantum meruit basis; (3) the court erred by imposing the fee caps retroactively after MCA had spent significant time working for Debtor during the first 18 days of the bankruptcy case; (4) the court erred by imposing the fee caps based on a "mistaken reading" of Debtor's budget that $75,000 was the proposed monthly fee rather than the actual proposed fee of $75,000 per week; (5) the fee caps were set on an interlocutory basis before the benefits to the estate of MCA's work could be properly assessed; (6) MCA never intended to be treated as a volunteer; and (7) the Final Fee Order was draconian, without regard to equities or public policy.

*5 After another hearing, the bankruptcy court entered its Memorandum Decision re: Motion to Reconsider and its Final Fee Order on June 12, 2008, addressing the issues discussed in MCA's motion. The court noted that MCA's employment was not approved pursuant to § 330, but was approved under § 327(a), and the fee caps were imposed by authority of § 328(a). The court reiterated its reasoning that because § 328(a) limited the circumstances under which modification of the terms of employment could occur, and because no "improvidence" of those terms had been shown by MCA in this case, the court would not vary the fee caps. It therefore denied MCA's request for fees in excess of the caps.

Regarding MCA's assertion that the court had based the fee caps on a misreading of Debtor's budget as allowing $75,000 to MCA per month rather than per week, the court observed that it had considered $75,000 per month too high for a liquidating debtor, and never credited the $75,000 per week suggestion because it was "even more extreme." Rejecting MCA's various arguments for payment based upon the equities, public policy and fairness, the bankruptcy court observed that MCA, under applicable law in this context, could have had no "reasonable expectation" of employment or compensation until the court so ruled.

MCA filed a timely appeal of the Final Fee Order on June 23, 2008.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 1334 and 157(b)(2)(A). The Panel has jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in the amount of professional compensation awarded to MCA.

## STANDARD OF REVIEW

The Panel will not disturb a bankruptcy court's award of professional fees unless the court abused its discretion or erroneously applied the law. *Ferrette & Slatter v. United States Tr. (In re Garcia),* 335 B.R. 717, 720 (9th Cir.BAP2005).

## DISCUSSION

### I.

*The bankruptcy court did not "mistakenly" base the fee caps it imposed on a "misreading" of Debtor's proposed budget.*

MCA repeatedly argues in its brief on appeal that the bankruptcy court erred because it "misread" Debtor's proposed budget as providing for a payment to MCA of $75,000 per month, rather than per week. For support, MCA submitted seven pages of a 132–page transcript of the first day motions hearing held on August 29, 2007, where the

bankruptcy court three times refers to the budget request as $75,000 per month. MCA notes that the budget proposed by Debtor submitted to the bankruptcy court clearly estimated that MCA's fees would cost $75,000 per week. However, a close examination of the complete record reveals two important considerations demonstrating that the bankruptcy court did not base the fee caps it established for MCA on a misunderstanding about Debtor's budget.

First, it should be remembered that, at the initial hearing, the bankruptcy court rejected Debtor's proposed budget as "too liberal" and directed Debtor to propose a new, more realistic budget. It is doubtful, given its attitude toward Debtor's original projections, that the bankruptcy court intended to rely upon Debtor's initial budget as a basis for estimating MCA's professional compensation.

*6 Second, MCA omits any reference to the bankruptcy court's comments at the September 6, 2007 hearing, where the court explicitly addressed the $75, 000/week vs. $75,000/month issue, asking counsel for Debtor whether the amount in the budget for MCA's compensation was a "typo." After being informed that it was not a clerical error, the court indicated that such an amount was an example of the kind of expense it had directed Debtor to "fine pencil" in revising the budget to "stop the bleeding." The very next day the bankruptcy court entered its order approving MCA's employment for only thirty days, and capping its first month fee at $75,000.

Contrary to MCA's argument that the fee caps imposed by the bankruptcy court were based upon a factual error, the complete record instead establishes that the bankruptcy court did not "misread" Debtor's proposed budget in establishing the limits on MCA's compensation.

## II.

### *The bankruptcy court did not err when it refused to approve compensation for MCA under § 503(b)(1)(A) or quantum meruit.*

MCA argues that, even if it was a "volunteer," a characterization by the bankruptcy court it disputes, the court was obligated to compensate it for the fees in excess of the caps pursuant to § 503(b)(1)(A) as part of the "costs and expenses of preserving the estate[.]" This assertion simply ignores the case law. The Panel has held that, because § 503(b)(2) specifically provides for allowance of administrative expenses consisting of "compensation and reimbursement awarded under section 330(a)[,]" "[i]t is reasonable then, to construe Section 503(b)(2) ... as the only part of Section 503(b) under which such professionals can receive compensation." *McCutchen, Doyle, Brown & Emerson v. Official Comm. Of Unsecured Creditors (In re Weibel),* 176 B.R. 209, 213 (9th Cir.BAP1994); *accord In re Milwaukee Engraving Co.,* 219 F.3d 635 (7th Cir.2000) ("The structure of § 503(b) strongly implies that professionals eligible for compensation must receive it under § 503(b)(2) —which depends on authorization under § 330 or § 1103(a) (and thus on approval under § 327). One might as well erase § 503(b)(2) from the statute if attorneys may stake their claims under § 503(b)(1)(A)"); *see also In re Albricht,* 233 F.3d 1258 (10th Cir.2000); *Cushman & Wakefield, Inc. v. Keren Ltd. P'ship (In re Keren Ltd. P'ship),* 189 F.3d 86, 88 (2d Cir.1999); *F/S Airlease II v. Simon,* 844 F.2d 99, 108–09 (3d Cir.1988).

In a related argument, MCA contends it should be compensated under the equitable doctrine of quantum meruit. This suggestion fails to acknowledge the decisions by the Panel rejecting this approach. *See Shapiro Buchman LLP v. Gore Bros. (In re Monument Auto Detail),* 226 B.R. 219, 224–25 (9th Cir.BAP1998) (*quoting In re Weibel,* 176 B.R. 209, 212 (9th Cir.BAP1994) ("Compensation to professionals acting on behalf of the estate must be based on provisions of the Code. The Code does not provide for fee awards based on state law theories such as quantum meruit.")); *In re Shirley,* 134 B.R. 940, 944 (9th Cir.BAP1992).

*7 MCA has offered no reasoned argument to depart from our prior decisions. The bankruptcy court did not abuse its discretion in refusing to award fees to MCA under § 503(b)(1)(A) or based upon notions of "fairness and equity."

## III.

### *The bankruptcy court erred when it determined the amount of MCA's compensation under § 328(a).*

There is one serious flaw in the bankruptcy court's analysis that, we believe, requires that its order be vacated.

As reflected in both Debtor's application to employ MCA, and in the order entered concerning that application, the bankruptcy court approved Debtor's request to employ MCA pursuant to § 327(a), subject to § 330 and § 331, and not under § 328(a). In particular, the final line of the original retention order provided that: "All fees and costs incurred

Case 9:15-bk-10251-DS    Doc 86    Filed 06/24/15    Entered 06/24/15 11:34:35    Desc
                        Main Document        Page 10 of 13
In re First Magnus Financial Corp., Not Reported in B.R. (2009)

by MCA on behalf of First Magnus shall be subject to Bankruptcy Court approval pursuant to 11 U.S.C. §§ 330 and 331, but for said 30 day period, shall not exceed $75,000.00." The subsequent retention order incorporated these terms. Despite this express reference to § 330, a Code provision which dictates that MCA receive "reasonable compensation" for its services, the bankruptcy court later decided that its options for considering MCA's final fee application were constrained by the provisions of § 328(a). Applying § 328(a), because nothing had occurred in the case making them improvident, the bankruptcy court determined that the fee caps it had previously imposed on MCA's compensation must be enforced without regard to whether the fees requested by MCA were reasonable for the services it provided to Debtor. We respectfully disagree with the bankruptcy court's conclusion.

As noted above, Debtor sought in its application to employ MCA, and the bankruptcy court unambiguously confirmed in its retention order, that all compensation requested by MCA would be subject to approval by the bankruptcy court pursuant to § 330. Therefore, we conclude that the bankruptcy court approved MCA's employment under § 327, with compensation to be considered under § 330, and based on its own order, later erred when it purported to bind MCA to fee caps by reliance on the provisions of § 328(a).

As one court recently observed, "Sections 328 and 330 establish a two-tiered system for judicial review and approval of the terms of a professional's retention." *Rizer, Kanzig, Scherer, Hyland & Perretti v. Official Comm. of Unsecured Creditors (In re Smart World Tech., LLC)*, 552 F.3d 228, 2009 WL 23341 *3 (2d Cir.2009). For the bankruptcy court faced with approving estate professional compensation, the inquiries required by these two provisions of the Code "are mutually exclusive, as '[t]here is no question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court has already approved the professional's employment under § 328 .' " *Id.*, quoting *Friedman Enters. v. B.U.M. Int'l, Inc. (In re B.U.M. Int'l, Inc.)*, 229 F.3d 824, 829 (9th Cir.2000).

*8 Section 330(a)(1) authorizes the bankruptcy court to award a professional "reasonable compensation." In determining what constitutes reasonable compensation in a case, the bankruptcy court is instructed to review "the nature, the extent and the value of such services, taking into account all relevant factors," including the time spent by the professional, the rate of compensation, and the necessity of the services. § 330(a)(3); *see also* § 330(a)(4) (providing that a bankruptcy court shall not allow compensation for duplicative services, or for those not reasonably likely to benefit the estate or necessary to the administration of the case.) In other words, in reviewing the compensation of a professional under § 327, the bankruptcy court reviews what services the professional provided, and decides, in retrospect, after considering all relevant factors, whether the compensation requested by the professional is reasonable. *In re Garcia,* 335 B.R. at 723–25 (providing a detailed review of § 330 standards and reasonable compensation).

Section 328(a), in contrast, contemplates that the bankruptcy court "pre-approve," at the time of retention, employment of an estate professional "on any reasonable terms and conditions, including a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." Once approved, § 328(a) limits the authority of the bankruptcy court to depart from the terms of the fee agreement previously approved to situations where that approval "prove[s] to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."

Simply put, while § 330(a) requires it, § 328(a) severely limits the bankruptcy court's authority to conduct an after-the-fact "reasonableness analysis" concerning the value of a professional's services. *In re B.U.M. Int'l, Inc.,* 229 F.3d at 829 (noting that "There is no question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court already has approved the professional's employment under 11 U.S.C. § 328."); *Pitrat v. Reimers (In re Reimers),* 972 F.2d 1127, 1128 (9th Cir.1992); In *re Confections by Sandra,* 83 B.R. 729 (9th Cir.BAP1987). As can be seen, §§ 328(a) and 330 reflect very different approaches to court review and approval of professional compensation. Correspondingly, approval of a professional's employment under the terms of either § 328(a) or § 330 legally limits the application of the other provision. [11]

Because the approach to analyzing fee requests differs under these two statutes, the Ninth Circuit has established a bright-line rule in its decisions requiring that bankruptcy courts review professional fee requests in bankruptcy cases under § 330(a) unless the retention application approved by the bankruptcy court clearly and unambiguously requests pre-approval of a fee arrangement under § 328(a). In *The Circle*

*K. Corp. v. Houlihan, Lokey, Howard & Zukin, Inc. (In Re Circle K. Corp.),* 279 F.3d 669, 674 (9th Cir.2001), the court emphasized that § 328 will only apply to review of a fee application when that section is specified in the employment retention:

> ***9** We hold that unless a professional's retention application *unambiguously* specifies that it seeks approval under § 328, it is subject to review under § 330. As a matter of good practice, the bankruptcy court's retention order should likewise specifically confirm that the retention has been approved pursuant to § 328 so as to avoid any ambiguity. The absence of such a specific reference in the bankruptcy court's order, however, would not of itself automatically override the retention application's invocation of § 328.

274 F.3d at 671 (emphasis added). Later in the opinion, the court notes yet again:

> In this Circuit, unless a professional is *unambiguously* employed pursuant to § 328, its professional fees will be reviewed for reasonableness under § 330. To ensure that § 328 governs the review of a professional's fees, a professional must invoke the section explicitly in the retention application. Preferably, the retention order would specify that section as well.

274 F.3d at 674 (emphasis added); *accord Zolfo, Cooper & Co. v. Sunbeam–Oster Co., Inc.,* 50 F.3d 253, 261–62 (3d Cir.1995).[12]

In this case, in evaluating MCA's various fee requests, the bankruptcy court was aware of the distinction in approaches to evaluating fee requests under §§ 328 and 330, and the need to avoid ambiguity in its orders regarding the applicable standard for approving professional employment. *See* Memorandum Decision re: Fees Requested by MCA Financial Group, Ltd. at 2 (referring to case law noting that "An order that both approved a fee agreement and reserved the final application to the court's review was ambiguous and thus subject to a reasonableness review under § 330" citing *B.U.M. Int'l* and *Circle K* ). While Debtor's application to employ MCA does not mention § 328(a), it expressly references § 330. The bankruptcy court attempted to distinguish strict application of the *Circle K* rule in this case by observing that fee caps it established concerning MCA were unambiguous. Memorandum Decision re: Fees Requested by MCA Financial Group, Ltd. at 3; ER at 243. We interpret this observation to mean that the bankruptcy court considered its intention to approve MCA's employment under § 328 unambiguous.

The concern for avoidance of ambiguity in the terms of professional employment referenced by the court of appeals in *B.U.M. Int'l* and *Circle K* focused on attempts by a bankruptcy court to impose conditions on a professional's employment under § 328(a), while at the same time retaining the power to review the professional's compensation at a later date for reasonableness under § 330. These decisions did not turn on the ambiguity of the conditions of employment so imposed. Therefore, that the bankruptcy court made its fee caps clear and unambiguous in its orders in this case misses the point of the case law.

The bankruptcy court did not indicate clearly in its orders that MCA's fees would be subject to review under the restrictive standards imposed by § 328. In this case, the employment application did not specify that MCA would be employed under the terms of § 328, but instead expressly provided that MCA and Debtor had agreed that MCA would seek reasonable compensation under § 330, calculated on an hourly basis.

***10** Fairly read, the bankruptcy court's intent to rely upon § 328(a) as a basis for imposing fee caps also cannot be discerned from its retention order. That order indicated that, while imposing a fee cap for the first 30 days, MCA's employment was approved under § 327 with the reasonableness of proposed compensation to be considered under 330.[13] The court's subsequent retention order implicitly incorporated those terms. Indeed, as noted by MCA, the bankruptcy court first expressed its opinion that it was constrained from considering the reasonableness of MCA's fee requests by § 328(a) in its Memorandum Decision of April 23, 2008, issued some seven months after approving MCA's employment application. To retroactively invoke the limitations on review of pre-approved fee agreements under § 328(a) at this late date in contravention of the terms of its original and subsequent retention orders, we believe, is contrary to the theme expressed by the Ninth Circuit in

*Circle K*, requiring that, for a professional's employment to be subject to § 328, the application and order so provide.

In summary, Debtor's application sought approval from the bankruptcy court to employ MCA under § 327, proposing that MCA receive reasonable compensation for its services. The bankruptcy court, at least according to the terms of its retention order, while imposing a fee cap, approved the employment of MCA under § 327 subject to a reasonableness determination of compensation under § 330. The bankruptcy court therefore erred when it later declined to evaluate MCA's compensation under the reasonableness standard of § 330, and instead applied § 328 in its analysis of MCA's applications. The bankruptcy court's decision that the fee caps it had previously imposed could only be disturbed if they were shown to have been improvident, as provided in § 328(a), represents an erroneous application of the law, and therefore, its refusal to evaluate MCA's fee request under the standards enunciated in § 330(a) constitutes an abuse of discretion.

## CONCLUSION

The bankruptcy court's order is VACATED, and this matter is REMANDED to the bankruptcy court to review MCA's final fee application under § 330(a). [14]

Footnotes

1   Although First Magnus Financial Corporation, WNS North America, Inc., the Official Committee of Unsecured Creditors and the United States Trustee were designated as appellees in appellant's notice of appeal and brief, none have appeared or filed briefs in this appeal.

2   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (*see* Fed. R.App. P. 32.1), it has no precedential value. *See* 9th Cir. BAP Rule 8013–1.

3   Unless otherwise specified, all references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

4   Although the entire transcript appears in the bankruptcy court's docket, Appellant provided only a small snippet of that transcript of this extensive hearing in its excerpts of record. In order to evaluate the issues in this appeal in proper context, the Panel has taken notice of the entire transcript. *In re E.R. Fegert, Inc.,* 887 F.2d 955, 957 (9th Cir.1989).

5   MCA was not represented by counsel at this hearing, or in the bankruptcy case until October 5, 2007.

6   Neither a transcript of this hearing, nor any indication that the hearing occurred, is included in Appellant's brief or excerpts of record. Again, to be fair in our review, we feel compelled to take judicial notice of this transcript appearing in the bankruptcy court's docket. *In re Fegert, supra.*

7   Again, the transcript of this hearing is not included in Appellant's excerpts, and unfortunately, the transcript in the bankruptcy court's docket has been so heavily redacted as to render its unhelpful. As a result, the Panel is limited to taking judicial notice of the Minute Entry for the hearing found in the court's docket. That Minute Entry indicates the following: (1) MCA had been retained by Debtor one week before filing the bankruptcy petition; (2) Debtor and [the official Unsecured Creditor's] Committee supported employment of MCA; and (3) Debtor urged the court to remove the fee cap imposed on MCA's retention.

8   On October 1, 2007, MCA filed an original motion for reconsideration. At a hearing on the following day (an event not reflected in Appellant's excerpts of record but appearing in the bankruptcy docket at no. 423), the bankruptcy court declined to consider that motion because it was signed by MCA's senior managing director, who is not an attorney. Hr'g Tr: 58:17–59:4 (October 2, 2007). MCA thereafter engaged counsel and filed this reconsideration request.

9   The Panel takes notice of this transcript, also not included in the excerpts, as it appears in the bankruptcy court's docket.

10  On February 28, 2008, the bankruptcy court entered its order confirming Debtor's Second Amended Plan of Liquidation. The Second Amended Plan proposed a liquidation of the estate supervised by a Liquidating Trustee; MCA's senior managing director, Aaron, was designated the Liquidating Trustee.

11  In the Panel's experience, § 328(a) is most commonly invoked by a proposed professional before services are rendered to provide the professional some comfort that the essential terms of its fee agreement with the debtor or trustee will not later be modified. Ironically, in this case, the bankruptcy court invokes § 328(a) as a limitation on MCA's fees. Neither Debtor nor MCA sought any pre-approval of their fee arrangement, both instead consenting to an "after the fact" review by the bankruptcy court of MCA's fee request for reasonableness under § 330(a).

12  That this is a strict rule is evidenced by the conflict in approaches among the circuits. While the Ninth and Third Circuits require explicit invocation of § 328(a) in the employment application, cases from the Fifth and Sixth Circuits hold that a

fee application does not have to reference § 328(a) for that section to be applied. *Nischwitz v. Miskovic (In re Airspect Air, Inc.),* 385 F.3d 915, 920–21 (6th Cir.2004) (describing the Ninth Circuit's rule as a "stricter standard" than applied in the Sixth Circuit); *Donaldson Lufkin & Jenrette v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.),* 123 F.3d 861 (5th Cir.1997) (holding that § 328(a) applied even though it was not specified in the retention application and the court reserved the right to a § 330 review). In *Circle K,* the Ninth Circuit expressly rejected the reasoning of the Fifth Circuit in *Nat'l Gypsum. In re Circle K,* 279 F.3d at 673–74.

13  We do not hold that the bankruptcy court erred by indicating an intent to cap MCA's fees in approving its employment. That the bankruptcy court advised MCA that it considered $75,000, and then $50,000, per month as an appropriate limitation on MCA's compensation may be an important factor in its later analysis of MCA's fee application for reasonableness under § 330(a). Instead, the bankruptcy court erred by its invocation of § 328 as a limitation on MCA's fee request, when MCA's employment application, and the orders approving the application, both indicate the employment is based upon § 330.

14  Of course, the Panel expresses no opinion whether the fees requested by MCA will, after review by the bankruptcy court under the § 330(a) standards, pass muster as "reasonable compensation."

---

**End of Document**　　　　　　　　　　　　　　　© 2015 Thomson Reuters. No claim to original U.S. Government Works.