1  Michael J. Gomez, #251571
    mjg@lrplaw.net
2  Lang, Richert & Patch
   Post Office Box 40012
3  Fresno, California 93755-0012
   (559) 228-6700 Phone
4  (559) 228-6727 Fax

5  Attorneys for Secured Creditors
   FARM CREDIT WEST, FLCA and
6  FARM CREDIT WEST, PCA

7

8                **UNITED STATES BANKRUPTCY COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10                      **NORTHERN DIVISION**

11  In re                          | Case No.  9:bk-15-10251-DS

12  **Clearwater Nursery, Inc.**,   | Chapter 11

13            Debtor.              | **MOTION FOR ENTRY OF ORDER
                                      DISMISSING OR CONVERTING
14                                    CHAPTER 11 CASE TO CHAPTER 7
                                      PURSUANT TO 11 U.S.C. § 1112(b);
15                                    MEMORANDUM OF POINTS AND
                                      AUTHORITIES AND THE
16                                    DECLARATIONS OF MICHAEL J.
                                      GOMEZ AND ANTHONY GARGIULO
17                                    IN SUPPORT THEREOF**

18                                    Hearing
                                      DATE:       September 10, 2015
19                                    TIME:       10:30 a.m.
                                      CTRM:       202
20                                                1415 State Street
                                                  Santa Barbara, CA 93101

21

22

23

24

25

26

27

28

Motion to Convert Chapter 11 Case to Chapter 7        -1-
Case; Declarations of Anthony Gargiulo and
Michael J. Gomez

1    **TO THE HONORABLE DEBORAH J. SATLZMAN, UNITED STATES BANKRUPTCY**

2    **JUDGE:**

3        Farm Credit West, PCA ("<u>PCA</u>") and Farm Credit West, FLCA (together with PCA,

4    "<u>FCW</u>"), secured creditors of Clearwater Nursery, Inc. (the "<u>Debtor</u>"), hereby move for an order

5    dismissing or converting the above captioned bankruptcy case from Chapter 11 to Chapter 7. This

6    Motion is based on the notice of hearing, the following Memorandum of Points and Authorities,

7    the Declarations of Michael J. Gomez and Anthony Gargiulo, the record in this case, the arguments

8    and representations of counsel, and any oral or documentary evidence presented at or prior to the

9    time of the hearing on this Motion.

10

11                    **MEMORANDUM OF POINTS AND AUTHORITIES**

12    I.      **INTRODUCTION**

13        The Debtor began this case with less than $5,000 in cash.  To assist the Debtor to reach its

14    peak revenue season, PCA provided the Debtor with $500,000 in debtor-in-possession financing

15    (the "<u>DIP Loan</u>").  The loan came due on August 1, 2015, long after the Debtor's historically

16    profitable Mother's Day/Easter season.  The Debtor failed to repay the loan.  The Debtor does not

17    have the means to continue operating.  This case should be dismissed or converted.

18

19    II.     **FACTUAL BACKGROUND**

20        The Debtor filed for bankruptcy protection on February 11, 2015.  As of the Petition Date,

21    the Debtor owed FCW in excess of $14,949,448.56.  FCW holds security interests in nearly all of

22    the Debtor's personal property and against the real property on which the Debtor conducts its

23    business.

24        The Debtor entered into two cash collateral stipulations with FCW in order for the Debtor

25    to continue operations and to use cash collateral to pay ordinary and necessary expenses.  The

26    Debtor was unable to operate solely in reliance on its cash collateral, however.  Accordingly, the

27    Debtor and PCA engaged in negotiations and agreed upon the DIP Loan. The stipulations regarding

28

Motion to Convert Chapter 11 Case to Chapter 7        -2-
Case; Declarations of Anthony Gargiulo and
Michael J. Gomez

1  cash collateral and the approval DIP Loan are memorialized by three orders entered by this Court

2  (the "Orders"). (Gomez Decl., Exs. 2 - 6.)  The terms of the DIP Loan are set forth in a letter

3  agreement, attached to the Gomez Declaration as Exhibit 1.[1]

4        Paragraph A, subsection (1)(c) of the letter agreement states, in relevant part, that "Borrower

5  shall repay in full all advances made under the DIP Loan, plus all accrued interest thereon, by no

6  later than August 1, 2015." Under the Orders, Debtor's failure to comply with any terms,

7  conditions, or covenants contained in the cash collateral stipulations or any senior or pari passu DIP

8  financing triggers an automatic termination of its rights to FCW's cash collateral and places the

9  Debtor in default.  The Debtor failed to repay the DIP Loan by August 1, 2015.  (Gargiulo Decl. ¶

10  2.) Nevertheless, FCW notified the Debtor, the Office of the United States Trustee, and the Official

11  Committee of Unsecured Creditors of the default. (Gomez Decl. ¶ 3, Ex. 7.)  To date, the Debtor

12  has not cured the default. (Gargiulo Decl. ¶ 2.)

14  **III.    ARGUMENT**

15       **A.     Section 1112(b) Mandates Dismissal or Conversion of the Bankruptcy Case to**

16              **Chapter 7.**

17       "[A]bsent unusual circumstances specifically identified by the court[,]" dismissal or

18  conversion is mandatory upon a showing for "cause" under section 1112(b) of the Bankruptcy

19  Code. *In re Gateway Access Solutions*, Inc., 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007) (BAPCA

20  has limited the court's discretion to refuse to dismiss or convert), *In re AmeriCERT, Inc.*, 360 B.R.

21  398, 401 (Bankr. D.N.H. 2007) (section 1112(b), as amended, provides that once cause has been

22  shown, the court's discretion is limited).[2] Section 1112(b)(4) provides a non-exclusive list of items

24       [1]FCW requests that the Court take judicial notice of the cash collateral stipulations, the
Orders, and the DIP Loan letter agreement pursuant to Rule 201 of the Federal Rules of
25  Evidence.

26       [2] Section 1112(b) provides: "Except as provided in paragraph (2) and subsection (c), on
27  request of a party in interest, and after notice and a hearing, the court *shall* convert a case under
this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the

28

Motion to Convert Chapter 11 Case to Chapter 7        -3-
Case; Declarations of Anthony Gargiulo and
Michael J. Gomez

1   that constitute "cause" for dismissal or conversion to Chapter 7 including the following that are

2   directly relevant to this Motion as discussed more fully below:

3         (A)    substantial or continuing loss to or diminution of the estate and the absence of a

4                 reasonable likelihood of rehabilitation (11 U.S.C. § 1112(b)(4)(A)); and

5         (E)    failure to comply with an order of the court (11 U.S.C. § 1112(b)(4)(E))

6        Once the movant establishes "cause" the burden shifts to the debtor to prove the case falls

7   within the § 1112(b)(2) "unusual circumstances" exception to § 1112(b)(1)'s mandatory conversion

8   or dismissal. *See Gateway Access Solutions*, 374 B.R. at 560. As set forth in the legislative history

9   to the provision, the exception only applies if: "(1) the debtor or a party in interest objects and

10   establishes that there is a reasonable likelihood that a plan will be confirmed within the time periods

11   set forth in section 1121(e), or if these provisions are inapplicable, within a reasonable period of

12   time; (2) the grounds for granting such relief include an act or omission of the debtor for which

13   there exists a reasonable justification for such act or omission; and (3) such act or omission will be

14   cured within a reasonable period of time." *Id.* (quoting H.R.Rep. No. 109-31(I), 109th Cong., 1st

15   Sess. 94 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 159),7 COLLIER ON BANKRUPTCY ¶ 1112.04[3]

16   at 1112–27 (15th ed. rev.2005) ("The statute expressly requires the court to specifically identify

17   what those unusual circumstances are, 11 U.S.C. § 1112(b)(1) and (b)(2), and while unusual

18   circumstances are not defined, they are not thought to be conditions that are common in most

19   chapter 11 cases."). Here, the Debtor cannot demonstrate that the "unusual circumstances"

20   exception is applicable as no plan of reorganization can be confirmed in a reasonable period of time

21   and there is no reasonable justification for Debtor's actions that are incapable of being cured.

22   ///

23   ///

24

25   best interests of creditors and the estate, for cause unless the court determines that the
26   appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors
and the estate." (Emphasis added.) Prior to the BAPCPA amendments, section 1112(b)
27   provided that the court "may" convert a case for cause, thereby providing courts with a degree of
flexibility no longer available.

28

Motion to Convert Chapter 11 Case to Chapter 7    -4-
Case; Declarations of Anthony Gargiulo and
Michael J. Gomez

**B.    Cause Exists for Dismissal or Conversion of This Case Pursuant to Section 1112(b) of the Bankruptcy Code.**

　　　　**1.    Cause Exists Under Section 1112(b)(4)(A).**

Section 1112(b)(4)(A) provides that the term "cause" includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." In this case, both prongs of section 1112(b)(4)(A) have been met. Courts have held that the first prong of section 1112(b)(4)(A) test is met where "the estate is suffering some diminution in value" through the inability to pay post-petition obligations. *In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988); *see also In re Citi-Toledo Partners*, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994) (accumulation of real estate taxes constituted continuing diminution of estate in circumstances where debtor did not have any cash flow); *In re Hassen Imps. P'ship*, 2013 WL 4428508 at *13 (B.A.P. 9th Cir. 2013) (unpublished) (finding that the estate, which was comprised of real property, was suffering continuing diminution in value based on failure to pay accruing real estate taxes and noting that administrative insolvency is cause to convert).

According to its schedules, the Debtor planned to reorganize over $18 million of debt with only $4,931.45 cash on hand. The Debtor did not have any cash to operate, much less reorganize. The Debtor could not function without the DIP Loan. The DIP Loan is a post-petition obligation of the Debtor that is secured by the Debtor's assets. Despite half a year in bankruptcy, the Debtor's prospects have not improved. The Debtor failed to repay the DIP Loan and if not for the DIP Loan, the Debtor would have been forced to shut down long ago. The Debtor's inability to pay its obligations without this injection, and the fact that the unpaid loan is secured by the Debtor's assets, establishes further loss. *In re Hassen Imps. P'ship* at *13.

The second prong of section 1112(b)(4)(A) is also satisfied as there is no possibility for rehabilitation. The ability to rehabilitate demands more than whether the debtor has the possibility to reorganize. *In re Hassen Imps. P'ship*, *supra*, at *14 (citing to *In re Wallace*, 2010 WL 378351 at *4 (Bankr. D. Idaho 2010)). As explained by the court in *In re Wallace* at *4, the "issue of rehabilitation for purposes of § 1112(b)(4)(A) is not the technical one of whether the debtor can

Motion to Convert Chapter 11 Case to Chapter 7          -5-
Case; Declarations of Anthony Gargiulo and
Michael J. Gomez

1   confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the

2   reorganization effort."

3        Here, the Debtor's business prospects do not justify continuance of the reorganization effort.

4   At the inception of the case, the Debtor was in an urgent need of cash and PCA injected $500,000.

5   Despite half a year of bankruptcy protection, the Debtor has been unable to improve its financial

6   situation. The Debtor's failure to repay the $500,000 loan is the latest sign that gives a clear

7   indication that the Debtor's business does not have the ability to rehabilitate.  The Debtor cannot

8   modify the terms of the loan and once PCA enforces its security interests, the Debtor will be simply

9   be unable to function.

10        **2.**    **Cause Exists Under Section 1112(b)(4)(E).**

11        Section 1112(b)(4)(E) provides that the term "cause" includes "failure to comply with an

12   order of the court." The Debtor  failed to comply with orders of this Court when it defaulted under

13   the Orders. Each  pursuant to paragraph 27, subsection (f) of the cash collateral stipulations which

14   were adopted by the Orders.  Paragraph 27, subsection (f) provides:

15        27.    Automatic Termination - Notwithstanding any other provision contained herein,

16        Debtor's authorization to use Lender's Cash Collateral pursuant to this Stipulation shall

17        terminate immediately and automatically, without any obligation of Lender to provide notice

18        to the Debtor, upon the occurrence of any of the following Events of Default:

19        (f)    Failure of the Debtor to comply with any terms, conditions, or

20            covenants contained in this Stipulation or any senior or pari passu DIP

21            financing . . .

22   In turn, paragraph A, subsection (1)(c) of the DIP Loan letter agreement states that "Borrower shall

23   repay in full all advances made under the DIP Loan, plus all accrued interest thereon, by no later

24   than August 1, 2015." Not only did the DIP Loan require payment by August 1st, but the budgets

25   appended to the cash collateral stipulations that were approved by the Court required payment by

26   August 1st. Accordingly, the Debtor has failed to comply with the very orders of this Court.

27

28

Motion to Convert Chapter 11 Case to Chapter 7    -6-
Case; Declarations of Anthony Gargiulo and
Michael J. Gomez

1  **IV.    CONCLUSION**

2          The Debtor has failed to comply with the Court's Orders.  Based on the foregoing, the FCW

3  respectfully requests that this Court enter an order:

4          1.      Granting this Motion;

5          2.      Converting the Debtor's bankruptcy case to Chapter 7 pursuant to 11 U.S.C. §

6  1112(b); or

7          3.      Alternatively, dismissing the Debtor's bankruptcy case; and

8          4.      Granting such other and further relief as the Court deems just and proper.

9

10  DATED: August 7, 2015                    Respectfully submitted,

11                                           LANG, RICHERT & PATCH, P.C.

12

13                                      By: _____

14                                           Michael J. Gomez
                                             Attorneys for Secured Creditors
15                                           FARM CREDIT WEST, FLCA and
                                             FARM CREDIT WEST, PCA

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion to Convert Chapter 11 Case to Chapter 7          -7-
Case; Declarations of Anthony Gargiulo and
Michael J. Gomez

<u>**DECLARATION OF ANTHONY GARGIULO**</u>

I, Anthony Gargiulo, declare as follows:

1.    I am a Vice President of Special Assets at Farm Credit West, FLCA ("FLCA") and Farm Credit West, PCA ("PCA" and together with FLCA, "FCW"), and am employed at FCW's offices in Roseville, California. I am over eighteen years old and have knowledge of the facts set forth herein, except where stated upon information and belief, and as to such statements I believe them to be true. If called as a witness, I could and would testify to the facts as set forth herein.

2.    PCA provided a $500,000 loan to Clearwater Nursery, Inc. ("Clearwater") after Clearwater filed for bankruptcy protection. Clearwater received the $500,000 in two advances. As of August 1, 2015, Clearwater had not made any payments on the loan. On August 3, 2015, Clearwater made a $100,000 payment towards the loan. As of August 6, 2015, the loan remains outstanding and no further payments have been made since the $100,000 payment.

This Declaration was executed on August 7, 2015 at Roseville, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

ANTHONY GARGIULO

Motion to Convert Chapter 11 Case to Chapter 7     -8-
Case; Declarations of Anthony Gargiulo and
Michael J. Gomez

## DECLARATION OF MICHAEL J. GOMEZ

I, Michael J. Gomez, declare as follows:

1.      I am an attorney at law and member of the law firm of Lang, Richert & Patch, P.C., attorneys of record for Farm Credit West, FLCA and Farm Credit West, PCA. I am over eighteen years old and have knowledge of the facts set forth herein, except where stated upon information and belief, and as to such statements I believe them to be true. If called as a witness, I could and would testify to the facts as set forth herein.

2.      I am informed and believe that as of August 1, 2015, Clearwater Nursery, Inc. ("Clearwater") failed to repay in full all advances made and the interest accrued under a $500,000 debtor-in-possession loan extended by Farm Credit West, PCA. The terms of the financing are set forth in the letter agreement attached as **Exhibit 1** which was previously filed with the  U.S. Bankruptcy Court for the Central District of California (the "Court"). The Court approved the terms of the loan and permitted use of cash collateral so long as the loan was repaid pursuant to two cash collateral stipulations and three orders entered by the Court, true and correct copies of which are attached as **Exhibits 2** through **6**.

3.      As a result of Clearwater's failure to repay the loan, on August 3, 2015, I caused a notice of default to be issued to counsel for Clearwater, the Office fo the United States Trustee, and counsel for the Official Committee of Unsecured Creditors. A true and correct copy of the notice of default is attached as **Exhibit 7**.

This Declaration was executed on August 7, 2015 at Fresno, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

MICHAEL J. GOMEZ

Motion to Convert Chapter 11 Case to Chapter 7                -9-
Case; Declarations of Anthony Gargiulo and
Michael J. Gomez

Case 9:15-bk-10251-DS   Doc 119   Filed 08/07/15   Entered 08/07/15 17:08:17   Desc
Case 9:15-bk-10251-DS   Main Document 02/Page 10 of 80 tered 02/12/15 15:13:12   Desc
Exhibit Exhibits A and B   Page 20 of 43


**FARM CREDIT WEST**
Commitment. Empowerment. Freedom.

Administrative Office
1478 Stone Point Drive, Suite 450
Roseville, California 95661
916-780-1166 FAX: 916-780-1820
www.FarmCreditWest.com

February 13, 2015

Clearwater Nursery, Inc.
906 Eucalyptus Nursery, LLC
1980 Jafroodi Family Trust U/D/T dated November 13, 1980, as amended
887 Mesa Road
Nipomo, CA 93444

Dear Borrower:

This letter agreement is to confirm that CLEARWATER NURSERY, INC. a California corporation, as Debtor and Debtor-in-Possession ("**Debtor**"), who is the debtor in Bankruptcy Case No. 9:15-bk-10251 (the "**Case**"), filed in the United States Bankruptcy Court for the Central District of California, Northern Division (the "**Bankruptcy Court**"), 906 Eucalyptus Nursery, LLC, a California limited liability company ("**Eucalyptus**"), 1980 Jafroodi Family Trust U/D/T dated November 13, 1980, as amended, by and through its trustee, Mahmood Jafroodi ("**Jafroodi Trust**" and together with Debtor and Eucalyptus, the "**Borrower**"), have requested that FARM CREDIT WEST, FLCA and FARM CREDIT WEST, PCA (together, the "**Prepetition Lenders**"[1]) extend

---

[1] Borrower is obligated to Prepetition Lender under the following documents (collectively referred to as the "**Prepetition Loan Documents**"):

1.    Promissory Note and Loan Agreement dated June 2, 1999 between Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Central Coast Federal Land Bank Association, FLCA;

2.    Deed of Trust and Assignment of Rents dated June 2, 1999 between Jafroodi Trust and Central Coast Federal Land Bank Association, FLCA;

3.    Continuing Guaranty – Recourse dated June 2, 1999 between Debtor and Central Coast Federal Land Bank Association, FLCA guaranteeing the obligations of the Jafroodi Trust, Mahmood Jafroodi, and Azar Jafroodi to Central Coast Federal Land Bank Association, FLCA;

4.    Security Agreement dated June 2, 1999 by Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Debtor in favor of Central Coast Federal Land Bank Association, FLCA;

5.    Promissory Note and Loan Agreement dated December 16, 1999 between Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Central Coast Federal Land Bank Association, FLCA;

6.    Continuing Guaranty – Recourse dated December 16, 1999 between Debtor and Central Coast Federal Land Bank Association, FLCA guaranteeing the obligations of the Jafroodi Trust, Mahmood Jafroodi, and Azar Jafroodi to Central Coast Federal Land Bank Association, FLCA;

7.    Supplemental Security Agreement dated December 16, 1999 by Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Debtor in favor of Central Coast Federal Land Bank Association, FLCA;

8.    Promissory Note and Loan Agreement dated July 13, 2000 between Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Central Coast Federal Land Bank Association, FLCA;

---

Farm Credit West, FLCA
Farm Credit West, PCA
Subsidiaries of Farm Credit West, ACA

The Farm Credit System

**EXHIBIT B**                                  **EXHIBIT 1**

9.      Security Agreement dated July 13, 2000 by Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Debtor in favor of Central Coast Federal Land Bank Association, FLCA;

10.     Promissory Note and Loan Agreement dated April 26, 2001 between Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Central Coast Federal Land Bank Association, FLCA;

11.     Security Agreement dated April 26, 2001 by Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Debtor in favor of Central Coast Federal Land Bank Association, FLCA;

12.     Promissory Note and Loan Agreement dated July 1, 2002 between Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Farm Credit West, FLCA;

13.     Continuing Guaranty – Recourse dated July 1 2002 between Debtor and Farm Credit West, FLCA, guaranteeing the obligations of the Jafroodi Trust, Mahmood Jafroodi, and Azar Jafroodi to Farm Credit West, FLCA;

14.     Security Agreement dated July 1, 2002 by Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Debtor in favor of Farm Credit West, FLCA;

15.     Deed of Trust and Assignment of Rents dated July 1, 2002 between Jafroodi Trust and Farm Credit West, FLCA;

16.     Continuing Guaranty – Recourse dated August 9, 2004 between Debtor and Farm Credit West, FLCA, guaranteeing the obligations of the Jafroodi Trust, Mahmood Jafroodi, and Azar Jafroodi to Farm Credit West, FLCA;

17.     Security Agreement dated August 9, 2004 by Debtor, Jafroodi Trust, Mahmood Jafroodi, and Azar Jafroodi in favor of Farm Credit West, FLCA;

18.     Security Agreement dated August 24, 2004 by Debtor, Eucalyptus, and American Horticultural Supply, Inc. in favor of Farm Credit West, PCA;

19.     Master Loan Agreement dated January 25, 2005 between Debtor, Eucalyptus, and Farm Credit West, PCA;

20.     Promissory Note and Supplement to Master Loan Agreement dated January 25, 2005 by Debtor and Eucalyptus in favor of Farm Credit West, PCA;

21.     Continuing Guaranty – Recourse dated July 28, 2005 between Mahmood Jafroodi, Azar Jafroodi, and Farm Credit West, PCA, guaranteeing the obligations of Borrower to Farm Credit West, PCA;

22.     Master Loan Agreement dated March 1, 2006 between Eucalyptus, Jafroodi Trust, Jafroodi Properties, L.P., and Farm Credit West, PCA;

23.     Security Agreement dated March 1, 2006 by Debtor, Eucalyptus, and American Horticultural Supply, Inc., and Jafroodi Properties, L.P. in favor of Farm Credit West, PCA;

24.     Continuing Guaranty – Recourse dated March 1, 2006 between Debtor and Farm Credit West, PCA, guaranteeing the obligations of Jafroodi Properties, L.P. to Farm Credit West, PCA;

25.     Continuing Guaranty – Recourse dated August 30, 2006 between Jafroodi Properties, L.P. and Farm Credit West, PCA, guaranteeing the obligations of Borrower to Farm Credit West, PCA;

26.     Promissory Note and Supplement to Master Loan Agreement dated September 10, 2008 by Eucalyptus, Jafroodi Trust, and Jafroodi Properties, L.P. in favor of Farm Credit West, PCA;

27.     Master Loan Agreement dated March 20, 2009 between Eucalyptus, Jafroodi Trust, Jafroodi Properties, L.P., and Farm Credit West, PCA;

28.     Promissory Note and Supplement to Master Loan Agreement dated March 20, 2009 by Eucalyptus, Jafroodi Trust, and Jafroodi Properties, L.P. in favor of Farm Credit West, PCA;

Case 9:15-bk-10251-DS    Doc 119    Filed 08/07/15    Entered 08/07/15 17:08:17    Desc
Case 9:15-bk-10251-DS    Main Document 02/12/15    Page 12 of 80    02/12/15 15:13:12    Desc
Exhibit Exhibits A and B    Page 22 of 43

credit to Borrower as described below. FARM CREDIT WEST, PCA (the "**Postpetition Lender**") has agreed to provide such credit to Borrower subject to all of the terms and conditions contained herein. For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Postpetition Lender and Borrower agree as follows.

A.      CREDIT TERMS:

     1.      DIP LOAN.

     (a)      DIP Loan. Postpetition Lender hereby agrees to make a post-petition loan to Borrower (the "**DIP Loan**"), consisting of two advances that may be drawn up to Four Hundred Thousand and No/100 Dollars ($400,000.00) for each advance; provided, however, that in no event shall the total advances and the outstanding principal amount of the DIP Loan ever exceed Five Hundred Thousand and No/100 Dollars ($500,000.00) (the "**Maximum Principal Amount**"). The DIP Loan is not a revolving line of credit and advances will be made on a straight line, non-revolving basis. The proceeds of the DIP Loan shall be used only to fund items identified as Expenses for the period of February 13, 2015 through May 15, 2015, in the 13-week Cash Flow Projection prepared by Debtor and attached hereto as "**Exhibit A,**" all terms of which are incorporated herein by this reference (the "**Permitted Purposes**"). The DIP Loan may not be used for Expenses that are incurred after May 15, 2015. Advances will be made in two draws. Advances will be made solely to Debtor. Advances under the first draw will be made, if at all, between February 18, 2015 and February 20, 2015. Advances under the second draw will be made, if at all, between March 4, 2015 and March 6, 2015. The advance under the first draw shall be limited to $400,000. The advance on the second draw shall be limited to the balance of the Maximum Principal Amount. Postpetition Lender shall have no obligation to make any advance to Debtor, other than in the two draw amounts, and in no event shall Postpetition Lender be obligated to make any advances if Borrower is in default under this letter agreement or any other Loan Document (defined below) at the time Borrower requests such advance. Borrower's obligation to repay advances under the DIP Loan shall be evidenced by a promissory note dated as of the date hereof ("**Note**"), this letter agreement, and any other contract, instrument, or other document required hereby or at any time hereafter delivered to Postpetition Lender in connection herewith (collectively, the "**Loan Documents**"), all terms of which are incorporated herein by this reference.

     (b)      Limitation on Borrowings. Debtor shall obtain advances by taking the following steps: when an advance is sought, Borrower shall submit to Postpetition Lender a request for an advance. The request shall be accompanied by invoices to be paid and Borrower's written schedule

---

     29.      Promissory Note and Supplement to Master Loan Agreement dated April 17, 2009 by Eucalyptus, Jafroodi Trust, and Jafroodi Properties, L.P. in favor of Farm Credit West, PCA;

     30.      Master Loan Agreement dated November 23, 2009 between Borrower and Farm Credit West, PCA;

     31.      Supplemental Security Agreement dated February 14, 2011 by Debtor, Eucalyptus, American Horticultural Supply, Inc., and Jafroodi Properties, L.P. in favor of Farm Credit West, PCA;

     32.      Promissory Note and Supplement to Master Loan Agreement dated August 9, 2012 by Borrower in favor of Farm Credit West, PCA;

     33.      Loan Restructure and Workout Agreement dated April 16, 2009 and the eight amendments thereto; and

     34.      First Amended and Restated Loan Restructure and Workout Agreement dated January 2, 2014.

of payables to be paid for which no invoice exists or for which no invoice yet exists. Debtor will use proceeds of each advance as applicable, only for the Permitted Purposes. At the end of each two week period, Borrower shall provide Postpetition Lender with documentation and an explanation of the disbursements made during the immediately preceding two week period, including, when available, copies of all invoices paid by Debtor from each advance, as applicable. The collective amount of all advances may not exceed the Maximum Principal Amount at any time. The variance of each weekly line item in the 13-week Cash Flow Projection prepared by Debtor and attached hereto as "**Exhibit A,**" shall not be exceeded by more than 15%. The variance of the aggregate revenues and the aggregate expenses for each weekly period in the 13-week Cash Flow Projection prepared by Debtor and attached hereto as "**Exhibit A,**" shall each not be exceeded by more than 10%. In no event shall Postpetition Lender have an obligation to make any advance to Debtor should such advance cause Borrower's total borrowing under the DIP Loan to exceed 50% of the "**Eligible Collateral.**" Eligible Collateral means 10% of Debtor's inventory as reported by Debtor on a cost basis up to $7,000,000 in inventory and 60% of Debtor's accounts receivable that are less than 90 days old, excluding the value of inventory Debtor reports in excess of $7,000,000 and any inter-company accounts receivable owed by Eucalyptus, Jafroodi Trust, Guarantor (as defined below), American Horticultural Supply, Inc., and any Insider (as defined in 11 U.S.C. § 101(31)) of, Affiliate (as defined in 11 U.S.C. § 101(2)) of, or an Insider of an Affiliate of Borrower, Guarantor, and American Horticultural Supply, Inc. Notwithstanding any other provision of this letter agreement, the aggregate amount of all outstanding borrowings under the DIP Loan shall not at any time exceed the Maximum Principal Amount.

(c)    <u>Borrowing and Repayment</u>. Borrower may from time to time during the period in which Postpetition Lender will make advances under the DIP Loan borrow and partially or wholly repay its outstanding borrowings, subject to all the limitations, terms and conditions contained herein; provided, however, that the total outstanding borrowings under the DIP Loan shall not at any time exceed the Maximum Principal Amount. Borrower shall repay in full all advances made under the DIP Loan, plus all accrued interest thereon, by no later than August 1, 2015. Borrower shall pay to Postpetition Lender interest-only payments every month, at such times and the place set forth in the Note or other instrument or document required hereby. Notwithstanding the foregoing, Borrower hereby authorizes Postpetition Lender to apply all cash and cash equivalents, and the proceeds from the sale or other disposition of Borrower's accounts, rights to payment, chattel paper, instruments, documents of title, investment property, inventory, goods, farm products, accounts receivable, general intangibles, equipment, fixtures, vehicles, and stock in Farm Credit West, ACA, including any patronage payment from Farm Credit West, ACA, to the outstanding indebtedness on the DIP Loan, as soon as the DIP Loan has matured or if a default or an event of default exists.

(d)    <u>Prepayment</u>. Borrower may prepay principal on the DIP Loan at any time, in any amount and without penalty.

2.    INTEREST.

(a)    <u>Interest</u>. The outstanding principal balance of the DIP Loan shall bear interest at a rate per annum equal to the lesser of (i) six percent (6%), or (ii) the Maximum Rate (defined below).

(b)    <u>Computation and Payment</u>. Interest shall be computed on the basis of a 365-day year, actual days elapsed, unless such calculation would result in a usurious rate, in which case interest shall be computed on the basis of a 365/366-day year, as the case may be, actual days

Case 9:15-bk-10251-DS    Doc 119    Filed 08/07/15    Entered 08/07/15 17:08:17    Desc
Case 9:15-bk-10251-DS    Main Document 02/  Page 14 of 80   Filed 02/12/15 15:13:12    Desc
Exhibit Exhibits A and B    Page 24 of 43

elapsed. Interest shall be payable at the times and place set forth in the Note or other instrument or document required hereby.

3.    APPLICATION OF PAYMENTS. Proceeds or payments received by Postpetition Lender shall be applied by Postpetition Lender as follows: (i) first, to the payment of all costs, fees and expenses, including attorneys' fees of Postpetition Lender; (ii) second, to the payment of accrued interest; and (iii) third, to the payment of principal.

4.    COLLATERAL AND PRIORITY.

(a)    Collateral. As security for all indebtedness and other obligations of Borrower to Postpetition Lender under the Loan Documents (as defined above), Borrower hereby grants and continues to grant to Postpetition Lender security interests of first priority in all of Borrower's existing and after acquired real and personal property, including without limitation all of Borrower's cash, cash equivalents, bank accounts, accounts, rights to payment, chattel paper, instruments, documents of title, investment property, inventory, goods, farm products, accounts receivable, general intangibles, equipment, fixtures, vehicles, stock in Farm Credit West, ACA, including any patronage payment from Farm Credit West, ACA, and any proceeds thereof (excluding, however, any claims or causes of action held by Debtor under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the United States Bankruptcy Code (the "**Bankruptcy Code**")) pursuant to this letter agreement and any security agreement required by Postpetition Lender from Borrower in connection with this letter agreement. All of the foregoing shall be evidenced by and subject to the terms of such other security agreements, financing statements, and other documents Postpetition Lender shall reasonably require, all in form and substance satisfactory to Postpetition Lender. Borrower shall pay to Postpetition Lender immediately upon demand the full amount of all charges, costs and expenses (to include fees paid to third parties and all allocated costs of Postpetition Lender personnel), expended or incurred by Postpetition Lender in connection with any of the foregoing security, including, without limitation, filing and recording fees and costs of appraisals or audits. The collateral shall be secured pursuant to section 364(d) of the Bankruptcy Code, by a perfected first-priority security interest in and lien on all such collateral, even though such collateral may be subject to valid, perfected, and non-avoidable liens as of the commencement of the Case in favor of the Prepetition Lenders. Without limiting the generality of the foregoing, the collateral granted to Postpetition Lender pursuant to this letter agreement and any security agreement executed in connection with this letter agreement shall include a fully perfected security interest in all of the existing and after acquired personal, tangible, and intangible assets of Borrower, including, without limitation, all cash, cash equivalents, bank accounts, accounts, or other receivables, chattel paper, contract rights, inventory, instruments, investment property, documents of title, equipment, fixtures, general intangibles, all substitutions, accessions, and proceeds of the foregoing, wherever located, including insurance or other proceeds.

(b)    Superpriority of Debtor's Indebtedness to Postpetition Lender. All indebtedness and other obligations of Debtor to Postpetition Lender under the Loan Documents, including, without limitation, those payments, advances, charges, costs, expenses, and reasonable attorneys' fees set forth in Section F.2 below, shall constitute an allowed superpriority claim (the "**Superpriority Claim**") against Debtor with priority over any and all administrative expense claims, adequate protection claims, diminution claims, and all other claims against Debtor or its estate in the Case, at any time existing or arising, of any kind or nature whatsoever, including without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364(c), 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 1113, and 1114, and any other provision of the Bankruptcy Code; and which

shall at all times be senior to the rights of the Debtor and its estate, any successor Chapter 11 Trustee, Examiner, Chapter 7 Trustee, or other estate representative, and any creditor or other party in interest to the fullest extent permitted by law.

      (c)    <u>Subordination of Other Debt</u>.  All indebtedness and other obligations of Debtor to any third party, as well as all other indebtedness of Debtor to Prepetition Lenders, shall be subordinated in right of payment to all indebtedness and other obligations of Debtor to Postpetition Lender evidenced by the Loan Documents.  Without limiting the foregoing, the indebtedness and other obligations of Debtor under the Loan Documents shall be secured by section 364(d) of the Bankruptcy Code, by a perfected first-priority lien on all collateral described above though such collateral may be subject to valid, perfected, and non-avoidable liens in favor of the Prepetition Lenders as of the commencement of the Case.  The Prepetition Lenders hereby consent to the subordination of Debtor's other indebtedness to the Prepetition Lenders as described in Section A.4(a).

      (d)    <u>Validity of Liens</u>.  The Loan Documents shall, with respect to the liens securing the DIP Loan, upon the entry of the Interim Order, be effective to create in favor of Postpetition Lender a legal, valid, and enforceable first perfected security interest in and lien upon all collateral described above.

      5.    RELIEF FROM AUTOMATIC STAY.  As a material inducement to Postpetition Lender and Prepetition Lenders to enter into this letter agreement, and in consideration of the mutual covenants contained in this letter agreement, and for other good and valuable consideration, Debtor, by its execution hereof, hereby covenants and agrees that, upon seven (7) days prior notice from Postpetition Lender to counsel for Debtor, the Office of the United States Trustee, and the Official Committee of Unsecured Creditors, if any, or the twenty largest unsecured creditors, either individually or through counsel, if there is no Official Committee of Unsecured Creditors, that a violation of any term, covenant, or condition of any of the Loan Documents or the occurrence of any default or defined event of default under any of the Loan Documents, Postpetition Lender and Prepetition Lenders shall be entitled, and Debtor irrevocably consents, to relief from the automatic stay without the necessity of a hearing in order for Postpetition Lender and Prepetition Lenders to pursue any and all rights and remedies to which Postpetition Lender and Prepetition Lenders are entitled under the Loan Documents and the Prepetition Loan Documents, or any other agreement between Postpetition Lender and/or Prepetition Lenders, on the one hand, and Borrower, on the other hand, including, without limitation, any document or instrument executed before the commencement of the Case, including, without limitation, the exercise of any rights and remedies to foreclose on any collateral securing the DIP Loan or any other loan made by Postpetition Lender and/or and Prepetition Lenders to Borrower and/or the appointment of a receiver, and Borrower shall not oppose any such foreclosure sale or the appointment of a receiver or dispute the terms of the receivership order (including, without limitation, the powers of such receiver), nor seek to compel the receiver to return the assets to the estate or otherwise interfere with the receiver's possession and control of the assets.

      6.    NO DISCHARGE; NO MODIFICATION; SURVIVAL OF CLAIMS.  Debtor agrees that (a) the obligations described in the Loan Documents and the Prepetition Loan Documents shall not be discharged by the entry of an order confirming a Chapter 11 Plan of Reorganization (and Debtor, pursuant to section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge), (b) the Superpriority Claim granted to Postpetition Lender pursuant to the Interim Order, Final Order, and the Loan Documents, and the payment of the foregoing, shall not be modified or altered in any manner by the entry of an order confirming a Chapter 11 Plan of

Case 9:15-bk-10251-DS    Doc 119    Filed 08/07/15    Entered 08/07/15 17:08:17    Desc
Case 9:15-bk-10251-DS    Main Document 02/12/15 1 Entered of 80 02/12/15 15:13:12    Desc
Exhibit Exhibits A and B    Page 26 of 43

Reorganization pursuant to section 1129 of the Bankruptcy Code or by section 105 of the Bankruptcy Code, except upon the indefeasible payment, in full and in immediately available funds without deduction or setoff, of all obligations under the Loan Documents unless otherwise agreed to by Postpetition Lender, and (c) the obligations described in the Loan Documents and the Prepetition Loan Documents shall not be modified or altered in any manner by the entry of an order confirming a Chapter 11 Plan of Reorganization pursuant to section 1129 of the Bankruptcy Code or by section 105 of the Bankruptcy Code, absent the consent of Postpetition Lender and Prepetition Lender.

B.    <u>REPRESENTATIONS AND WARRANTIES</u>:

Borrower makes the following representations and warranties to Postpetition Lender, which representations and warranties shall survive the execution of this letter agreement and shall continue in full force and effect until the full and final payment, and satisfaction and discharge, of all obligations of Borrower to Postpetition Lender subject to this letter agreement.

1.    LEGAL STATUS. Debtor is a corporation, duly organized and existing and in good standing under the laws of the State of California, and is qualified or licensed to do business in all jurisdictions in which such qualification or licensing is required or in which the failure to so qualify or to be so licensed could have a material adverse effect on Borrower. Eucalyptus is a limited liability company, is a separate entity from Debtor as the term "entity" is defined in section 101(15) of the Bankruptcy Code, is duly organized and existing and in good standing under the laws of the State of California, and is qualified or licensed to do business in all jurisdictions in which such qualification or licensing is required or in which the failure to so qualify or to be so licensed could have a material adverse effect on Borrower. The Jafroodi Trust is a revocable trust; is a separate entity from Debtor as the term "entity" is defined in section 101(15) of the Bankruptcy Code; and is qualified or licensed to do business in all jurisdictions in which such qualification or licensing is required or in which the failure to so qualify or to be so licensed could have a material adverse effect on Borrower.

2.    AUTHORIZATION AND VALIDITY. The Loan Documents have been duly authorized, and upon their execution and delivery in accordance with the provisions hereof will constitute legal, valid, and binding agreements and obligations of Borrower or the party which executes the same, enforceable in accordance with their respective terms.

3.    NO VIOLATION. The execution, delivery, and performance by Borrower of each of the Loan Documents do not violate any provision of any law or regulation, or contravene any corporate documents of Debtor, or result in a breach of or constitute a default under any contract, obligation, indenture, or other instrument to which Borrower is a party or by which Borrower may be bound.

4.    NO SUBORDINATION. There is no agreement, indenture, contract, or instrument to which Borrower is a party or by which Borrower may be bound that requires the subordination in right of payment of any of Borrower's obligations subject to this letter agreement to any other obligation of Borrower.

5.    PERMITS, FRANCHISES. Borrower possesses, and will hereafter possess, all permits, consents, approvals, franchises, and licenses required and all rights to trademarks, trade names, patents, and fictitious names, if any, necessary to enable it to conduct the business in which it is now engaged in compliance with applicable law.

Case 9:15-bk-10251-DS    Doc 119    Filed 08/07/15    Entered 08/07/15 17:08:17    Desc
Case 9:15-bk-10251-DS    Main Document 02/12/15    Page 17 of 80    Desc 02/12/15 15:13:12    Desc
Exhibit Exhibits A and B    Page 27 of 43

6.    ENVIRONMENTAL MATTERS.  Except as disclosed by Borrower to Postpetition Lender in writing prior to the date hereof, Borrower is in compliance in all material respects with all applicable federal or state environmental, hazardous waste, health and safety statutes, and any rules or regulations adopted pursuant thereto, which govern or affect any of Borrower's operations and/or properties, including, without limitation, the Comprehensive Environmental Response Compensation and Liability Act of 1980, the Superfund Amendments and Reauthorization Act of 1986, the Federal Resource Conservation and Recovery Act of 1976, and the Federal Toxic Substances Control Act, as any of the same may be amended, modified, or supplemented from time to time.  None of the operations of the Borrower is the subject of any federal or state investigation evaluating whether any remedial action involving a material expenditure is needed to respond to a release of any toxic or hazardous waste or substance into the environment.  Borrower has no material contingent liability in connection with any release of any toxic or hazardous waste or substance into the environment.

7.    PERFECTION OF SECURITY INTEREST.  The Interim Order shall be sufficient and conclusive to establish the validity and perfection of Postpetition Lender's security interest in the collateral described in the Loan Documents with respect to all liens securing the indebtedness and Borrower's obligations under the Loan Documents, without the necessity of filing or recording any financing statement, security agreement, notice, or other instrument or document that may otherwise be required under law or regulation of any jurisdiction or the taking of any other action (including, entering into any lockbox or deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the liens granted under the Loan Documents, or to entitle Postpetition Lender to the priorities granted herein.  Postpetition Lender may elect to take such action and obtain the Borrower's assistance as Postpetition Lender in its sole discretion deems necessary to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence Postpetition Lender's security interests under the Loan Documents, including, without limitation, financing statements, security agreements, notices, other documents and approvals, and all such financing statements, security agreements, notices, other documents and approvals shall be deemed to have been filed or recorded as of the commencement of the Case; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect any security interest of Postpetition Lender under the Loan Documents.  Borrower is authorized and directed to execute and deliver promptly upon demand to Postpetition Lender all such financing statements, security agreements, notices, and other documents as Postpetition Lender reasonably requests.  Postpetition Lender in its discretion may file a photocopy of the Interim Order, the Final Order, or both, as a financing statement with any filing or recording office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.   The collateral described in the Loan Documents and Postpetition Lender's rights with respect to such collateral are not subject to any setoff, claims, withholdings, or other defenses.

C.    UNDERLINE CONDITIONS:

1.    CONDITIONS OF INITIAL EXTENSION OF CREDIT.  The obligation of Postpetition Lender to extend any credit contemplated by this letter agreement is subject to fulfillment to Postpetition Lender's satisfaction of all of the following conditions:

(a)    Documentation.  Postpetition Lender shall have received, in form and substance satisfactory to Postpetition Lender, each of the following documents, duly executed and, if applicable, acknowledged by Borrower:

43

(1)    This letter agreement.

(2)    The Note.

(3)    A security agreement.

(4)    Such other documents as Postpetition Lender may require under any other section of this letter agreement.

(b)    <u>Insurance</u>.  Borrower shall have delivered to Postpetition Lender evidence of insurance coverage on all Postpetition Lender's property, in form, substance, amounts, covering risks and issued by companies satisfactory to Postpetition Lender, and where required by Postpetition Lender, with loss payable endorsements in favor of Postpetition Lender.

(c)    <u>Bankruptcy Court Approval of Financing</u>.  The Bankruptcy Court shall have entered an interim order no later than February 19, 2015, approving the DIP Loan (the "**Interim Order**"), which Interim Order has not been stayed and which shall be acceptable to Postpetition Lender.  The Interim Order also shall authorize and allow the obligations of Debtor under the Loan Documents as superpriority administrative expense claims in the Case pursuant to section 364(c)(1) and (d) of the Bankruptcy Code.

(d)    <u>Security Interests</u>.  All filings, recordings, deliveries, or instruments and other actions necessary or desirable in the opinion of Postpetition Lender to protect and preserve Postpetition Lender's security interests in the collateral securing the indebtedness and other obligations of Borrower hereunder shall have been duly effected.  Postpetition Lender shall have received evidence thereof in form and substance satisfactory to Postpetition Lender.

2.    CONDITIONS TO EACH EXTENSION OF CREDIT.  The obligation of Postpetition Lender to make each extension of credit requested by Borrower hereunder shall be subject to the fulfillment to Postpetition Lender's satisfaction of each of the following conditions:

(a)    <u>Compliance</u>.  The representations and warranties contained herein and in each of the other Loan Documents shall be true on and as of the date of the signing of this letter agreement and on the date of each extension of credit by Postpetition Lender pursuant hereto, with the same effect as though such representations and warranties had been made on and as of each such date, and on each such date, no default hereunder, and no condition, event or act that with the giving of notice or the passage of time or both would constitute such a default, shall have occurred and be continuing or shall exist.

(b)    <u>Documentation</u>.  Postpetition Lender shall have received all additional documents that may be required in connection with such extension of credit.

(c)    <u>Partial Lease Payment</u>.  By no later than March 4, 2015, Debtor will have made a partial lease payment to Jafroodi Properties, L.P. sufficient to enable Jafroodi Properties, L.P. to pay the real property taxes that must be paid by April 10, 2015, that are associated with the real properties Debtor leases from Jafroodi Properties, L.P.

     (d)    <u>Proceeds Restriction</u>.  Postpetition Lender shall not be obligated to provide Debtor with the second advance of the DIP Loan should Debtor and/or Jafroodi Properties, L.P. fail to pay the monthly debt service payment of $57,731.28 to Farm Credit West, FLCA that came due on February 1, 2015, within one business day of Debtor's receipt of the first advance of the DIP Loan.

D.    <u>COVENANTS</u>:

     Borrower covenants that so long as Postpetition Lender remains committed to extend credit to Borrower pursuant hereto, or any liabilities (whether direct or contingent, liquidated or unliquidated) of Borrower to Postpetition Lender under any of the Loan Documents remain outstanding, and until payment in full of all obligations of Borrower subject hereto, Borrower shall, unless Postpetition Lender otherwise consents in writing:

     1.    PUNCTUAL PAYMENT.  Punctually pay all principal, interest, fees, costs, expenses, and other charges under any of the Loan Documents at the times and place in the manner specified therein, and immediately upon demand by Postpetition Lender, the amount by which the outstanding principal balance of any credit subject hereto at any time exceeds any limitation on borrowings applicable thereto.  Debtor authorizes Postpetition Lender to deduct the payments for the DIP Loan via ACH transfer from its debtor-in-possession bank accounts on the first day of each month or the next business day should the first of the month be a legal holiday.  In lieu of paying a portion of its rent directly to Jafroodi Properties, L.P. for the real properties it leases from Jafroodi Properties, L.P., Debtor authorizes Farm Credit West, FLCA and Farm Credit West, PCA to deduct the monthly debt service payments owed by Jafroodi Trust and Jafroodi Properties, L.P. to Farm Credit West, FLCA and Farm Credit West, PCA, which are being paid by Debtor as a portion of the rent it owes to Jafroodi Properties, L.P., via ACH transfer from its debtor-in-possession bank accounts on the first of each month or the next business day should the first of the month be a legal holiday.

     2.    RECORDS.  Maintain adequate books and records in accordance with generally accepted accounting principles consistently applied, and permit any representative of Postpetition Lender, at any reasonable time, to inspect, audit, and examine such books and records, to make copies of the same.  Provide variance reports to Postpetition Lender semiweekly commencing on February 23, 2015, and continuing every two weeks thereafter, demonstrating the weekly variance of each line item in the 13-week Cash Flow Projection prepared by Debtor and attached hereto as **"Exhibit A."**  Provide to Postpetition Lender borrowing base certificates on a semiweekly basis commencing on February 23, 2015, and continuing every two weeks thereafter, in a form satisfactory to Postpetition Lender that is signed and certified by an officer of Debtor.  Debtor will note in its records the payment of the monthly debt service payments owed by Jafroodi Trust and Jafroodi Properties, L.P. to Farm Credit West, FLCA and Farm Credit West, PCA, and the payment of the ongoing real property taxes that that are associated with the real properties Debtor leases from Jafroodi Properties, L.P., as a portion of the monthly rent paid to Jafroodi Properties, L.P

     3.    COMPLIANCE.  Preserve and maintain all licenses, permits, governmental approvals, rights, privileges, and franchises necessary for the conduct of its business; and comply with the provisions of all documents pursuant to which Debtor is organized and/or that govern Debtor and the Family Trust's continued existence and with the requirements of the laws, rules, regulations, and orders of a governmental agency applicable to Borrower and/or its business.

Case 9:15-bk-10251-DS   Doc 119   Filed 08/07/15   Entered 08/07/15 17:08:17   Desc
Case 9:15-bk-10251-DS   Main Document 02/12/15 Page 20 of 80 ed 02/12/15 15:13:12   Desc
Exhibit Exhibits A and B   Page 30 of 43

4.     INSURANCE. Maintain and keep in force, for each business in which Borrower is engaged, insurance of the types and in amounts customarily carried in similar lines of business, including, but not limited to fire, extended coverage, public liability, property damage, flood, and workers' compensation, with all such insurance carried with companies and in amounts satisfactory to Postpetition Lender, and deliver to Postpetition Lender from time to time at Postpetition Lender's request schedules setting forth all insurance then in effect.

5.     FACILITIES. Keep all properties useful or necessary to Borrower's business in good repair and condition, and form time to time make necessary repairs, renewals and replacements thereto so that such properties shall be fully and efficiently preserved and maintained.

6.     TAXES AND OTHER LIABILITIES. Pay and discharge when due any and all indebtedness, obligations, assessments, and taxes, both real or personal, including without limitation federal and state income taxes, state and local property taxes and assessments, except (a) such as Borrower may in good faith contest or as to which a bona fide dispute may arise, and (b) for which Borrower has made provision, to Postpetition Lender's satisfaction, for eventual payment thereof in the event Borrower is obligated to make such payment.

7.     LITIGATION. Promptly give notice in writing to Postpetition Lender of any litigation pending or threatened against Borrower.

8.     CAPITAL EXPENDITURES. Not make any additional investment in fixed assets.

9.     OTHER INDEBTEDNESS. Not create, incur, assume, or permit to exist any indebtedness or liabilities resulting from borrowings, loans, or advances, whether secured or unsecured, matured or unmatured, liquidated or unliquidated, joint or several, except (a) the liabilities of Borrower to Postpetition Lender, and (b) any other liabilities of Borrower existing as of, and disclosed to Postpetition Lender prior to, the date hereof.

10.     MERGER, CONSOLIDATION, TRANSFER OF ASSETS. Not merge into or consolidate with any other entity; nor make any substantial change in the nature of Borrower's business as conducted as of the date hereof; nor acquire all or substantially all of the assets of any other entity; nor sell, lease, transfer, or otherwise dispose of all or a substantial or material portion of Borrower's assets except in the ordinary course of business.

11.     GUARANTIES. Not guarantee or become liable in any way as surety, endorser (other than as endorser of negotiable instruments for deposit or collection in the ordinary course of business), accommodation endorser or otherwise for, nor pledge nor hypothecate any assets of Borrower as security for, any liabilities or obligations of any other person or entity, except any of the foregoing in favor of Postpetition Lender.

12.     LOANS, ADVANCES, INVESTMENTS. Not make any loans or advances to or investments in any person or entity, except any of the foregoing existing as of, and disclosed to Postpetition Lender prior to, the date hereof.

13.     PLEDGE OF ASSETS. Not mortgage, pledge, grant, or permit to exist a security interest in, or lien upon, all or any portion of Borrower's assets now owned or hereafter acquired, except any of the foregoing in favor of Prepetition Lenders or which are existing as of, and

Case 9:15-bk-10251-DS    Doc 119    Filed 08/07/15    Entered 08/07/15 17:08:17    Desc
Case 9:15-bk-10251-DS    Main Document 02/12/15    Page 21 of 80    Entered 02/12/15 15:13:12    Desc
Exhibit Exhibits A and B    Page 31 of 43

disclosed to Postpetition Lender in writing prior to, the date hereof.  Borrower acknowledges that violation of this provision shall be a default hereunder.

14.    INSPECTIONS.  Borrower shall permit Postpetition Lender to perform inspections of Postpetition Lender's collateral from time to time, and all costs incurred by Postpetition Lender in connection with such inspections shall be reimbursed by Postpetition Lender immediately upon demand.  Borrower shall provide Postpetition Lender with access to Borrower's premises and any assistance necessary or appropriate to allow Postpetition Lender to conduct such inspections.

15.    PERFECTION AND PROTECTION OF SECURITY INTERESTS AND LIENS.  Borrower shall form time to time upon the request of Postpetition Lender deliver any financing statements, continuation statements, extension agreements, security agreements, legal opinions, and corporate authority documentation relating thereto, and other documents, properly completed and executed (and acknowledged when required) by Postpetition Lender in from and substance satisfactory to Postpetition Lender, and take all such actions as may reasonably be requested by Postpetition Lender, which Postpetition Lender requests for the purpose of (a) perfecting, confirming, or protecting any security interest of Postpetition Lender or other rights in any collateral securing the indebtedness and Borrower's obligations described hereunder and (b) maintaining compliance with all applicable laws.  Borrower hereby authorizes Postpetition Lender to file one or more financing and continuation statements, and amendments thereto, relative to all or any part of any such collateral describing said collateral as "all assets" without the signature of Borrower.

16.    COMPLIANCE WITH ADEQUATE PROTECTION DIRECTIVES.  Borrower shall at all times punctually pay all adequate protection payments ordered by the Bankruptcy Court to Prepetition Lender.  In support of the foregoing, to the extent Eucalyptus and Jafroodi Trust are holders of Farm Credit West, ACA stock, they authorize and consent to Farm Credit West, ACA delivering the patronage payments on account of the stock to Farm Credit West, PCA to be applied to Borrower's obligations to Farm Credit West, PCA arising under the Prepetition Loan Documents, which may be applied by Farm Credit West, PCA in any manner.

17.    NO MODIFICATION OR INTERIM OR FINAL ORDER.  Borrower shall not, and shall not permit any Affiliate of Borrower to, seek, consent, or suffer to exist with Postpetition Lender's consent (a) any modification stay, vacation, or amendment to the Interim Order or Final Order; (b) a priority claim for any administrative expense or unsecured claim against Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in section 503(b), 506(c), or 507(b) of the Bankruptcy Code) equal or superior to the priority claim of Postpetition Lender; or (c) any lien or any collateral described in the Loan Documents having a priority equal or superior to the security interest in favor of Postpetition Lender under the Loan Documents.

18.    USE OF DIP LOAN.  Borrower shall use the DIP Loan exclusively for the Permitted Purposes and in a manner consistent in all respects with the period of February 13, 2015 through May 15, 2015 in the 13-week Cash Flow Projection prepared by Debtor and attached hereto as "**Exhibit A.**".  Borrower will not allow the payment of any expenses or disbursements other than those set forth in Exhibit A unless Postpetition Lender previously agrees in writing.

19.    LEASE PAYMENTS.  Debtor will make timely partial lease payments to Jafroodi Properties, L.P. sufficient to enable Jafroodi Properties, L.P. to pay the ongoing real property taxes that are associated with the real properties Debtor leases from Jafroodi Properties, L.P.

Case 9:15-bk-10251-DS    Doc 119    Filed 08/07/15    Entered 08/07/15 17:08:17    Desc
Case 9:15-bk-10251-DS    Main Document 02/12/15 Page 22 of 80 Entered 02/12/15 15:13:12    Desc
Exhibit Exhibits A and B    Page 32 of 43

20.    BORROWING BASE COMPLIANCE.  Borrower shall at all times maintain Eligible Collateral with a value in excess of 200% of the DIP Loan, including any principal, interest, fees, expenses, or other charges owed on the DIP Loan.

21.    BUDGET VARIANCE.  The variance of each weekly line item in the 13-week Cash Flow Projection prepared by Debtor and attached hereto as **"Exhibit A,"** shall not be exceeded by more than 15%.  The variance of the aggregate revenues and the aggregate expenses for each weekly period in the 13-week Cash Flow Projection prepared by Debtor and attached hereto as **"Exhibit A,"** shall each not be exceeded by more than 10%.

E.    DEFAULT, REMEDIES:

1.    DEFAULT, REMEDIES.  Upon the violation of any term, covenant or condition of any of the Loan Documents, or upon the occurrence of any default or defined event of default under any of the Loan Documents: (a) all principal and accrued and unpaid interest outstanding under each of the Loan Documents, any term thereof to the contrary notwithstanding, shall at Postpetition Lender's option and without notice become immediately due and payable without presentment, demand, or any notices of any kind, including, without limitation, notice of nonperformance, notice of protest, protest, notice of dishonor, notice of intention to accelerate or notice of acceleration, all of which are hereby expressly waived by Borrower and Guarantor; (b) the obligation, if any, of Postpetition Lender to extend any further credit under any of the Loan Documents shall immediately cease and terminate; (c) Postpetition Lender shall have all rights, powers, and remedies available under each of the Loan Documents, or accorded by law, including, without limitation, the right to resort to any or all security for any credit subject hereto and to exercise any or all of the rights of a beneficiary or secured party pursuant to applicable law; and (d) the outstanding principal balance of the DIP Loan shall bear interest at a rate per annum equal to the lesser of (i) seven and a half percent (7.5%), or (ii) the Maximum Rate (defined below) without further notice of any kind, and shall be computed as provided in Section A.2(b).  All rights, powers, and remedies of Postpetition Lender may be exercised at any time by Postpetition Lender and from time to time after the occurrence of any such breach or default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

2.    BANKRUPTCY DEFAULTS.  In addition to the defaults set forth in Section E.1., above, it shall be a default under this letter agreement if:

(a)    the Bankruptcy Court shall enter any order (i) amending, supplementing, altering, staying, vacating, rescinding, or otherwise modifying the Interim Order, the Final Order, or any other order with respect to the Case affecting in any material respect this letter agreement or the other Loan Documents, without Postpetition Lender's consent, (ii) appointing a Chapter 11 trustee or an examiner for Debtor pursuant to section 1104 of the Bankruptcy Code with enlarged powers relating to the operation of the business (powers beyond those set forth ins section 1106(a)(3) and (4) and 1106(b) of the Bankruptcy Code), (iii) dismissing the Case or converting the Case to a Chapter 7 case, or (iv) granting relief from the automatic stay to any creditor holding or asserting a lien or reclamation claim on the assets of Debtor to permit such creditor to foreclose upon or to reclaim any collateral securing the indebtedness or obligations of Borrower under the Loan Documents with a value in excess of $10,000 or permitting actions that would have a material adverse effect on Debtor or its estate; or

Case 9:15-bk-10251-DS   Doc 119   Filed 08/07/15   Entered 08/07/15 17:08:17   Desc
Case 9:15-bk-10251-DS   Main Document 02/12/15 Page 23 of 80 ed 02/12/15 15:13:12   Desc
Exhibit Exhibits A and B   Page 33 of 43

(b)    an application shall be filed by Debtor for the approval of any other Superpriority Claim in the Case that is in pari passu with or senior to the claims of Postpetition Lender against Debtor unless after giving effect to the transactions contemplated by such application, all obligations of Debtor under the Loan Documents (whether contingent or otherwise) shall be paid in full in cash, or there shall arise any such Superpriority Claim; or

(c)    the Interim Order does not become Final (as hereafter defined) fifteen (15) days after its approval by the Bankruptcy Court. **"Final"** shall not mean that an order is not stayed by court order, statute, rule, or otherwise, and that no notice of appeal shall have been filed with regard to such order; or

(d) the Bankruptcy Court does not issue an order (the **"Final Order"**) approving the DIP Loan at a final hearing scheduled for March 6, 2015, and such Final Order does not become Final fifteen days thereafter; or

(e)    any party shall file a notice of appeal with regard to the Interim Order or the Final Order.

3.    EFFECT OF BANKRUPTCY DEFAULT. In the event of a default under Section E.2. above, at the request of (or with the consent of) Postpetition Lender, upon notice to Borrower by Postpetition Lender, (a) Postpetition Lender's obligations under any Loan Documents (including obligations of Postpetition Lender to make further advances) shall immediately terminate, and (b) the indebtedness under the Loan Documents, including the unpaid principal amount and accrued interest thereon, shall immediately become due and payable, without presentment, demand, notice of acceleration, notice of intent to accelerate, protest or other requirements of any kind, all of which are hereby expressly waived by Borrower.

4.    NO WAIVER. No delay, failure or discontinuance of Postpetition Lender in exercising any right, power, or remedy under any of the Loan Documents shall affect to operate as a waiver of such right, power, or remedy; nor shall any single or partial exercise of any such right, power, or remedy preclude, waive, or otherwise affect any other or further exercise thereof or the exercise of any other right, power, or remedy. Any waiver, permit, consent, or approval of any kind by Postpetition Lender of any breach of or default under any of the Loan Documents must be in writing and shall be effective only to the extent set forth in such writing.

F.    <u>MISCELLANEOUS</u>:

1.    NOTICES. All notices, requests, and demands, which any party is required or may desire to give to any other party under any provision of this letter agreement must be in writing delivered to each party at its address first set forth below, or to such other address as any party may designate by written notice to all other parties. Each such notice, request, and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier or the date of receipt or three (3) days after deposit in the U.S. Mail, first class and postage prepaid; and (c) if sent by facsimile or e-mail, upon receipt.

(a)    Postpetition Lender's Notice Address:

Farm Credit West, PCA
Attn: Kevin Ralph, Regional Vice President
1478 Stone Point Drive, Suite 450

Case 9:15-bk-10251-DS    Doc 119    Filed 08/07/15    Entered 08/07/15 17:08:17    Desc
Case 9:15-bk-10251-DS    Main Document 02/12/15 Page 24 of 80ed 02/12/15 15:13:12    Desc
Exhibit Exhibits A and B    Page 34 of 43

Roseville, CA 95661
Facsimile: (916) 780-1820
E-mail: kevin.ralph@farmcreditwest.com

With a copy to Postpetition Lender's counsel:

Rene Lastreto II
Michael J. Gomez
Lang, Richert & Patch
5200 North Palm Avenue, Fourth Floor
Fresno, CA 93704
Facsimile: (559) 228-6727
E-mail: rl2@lrplaw.net
       mjg@lrplaw.net

    (b)    Borrower's Notice Address:

Clearwater Nursery, Inc.
906 Eucalyptus Nursery, LLC
1980 Jafroodi Family Trust U/D/T dated November 13, 1980, as amended
887 Mesa Road
Nipomo, CA 93444
Facsimile: (805) 929-5421
E-mail: Eric.Djafroodi@clearwaternursery.com

With a copy to Debtor's counsel:

Peter Susi
Jonathan Gura
Hollister & Brace
1126 Santa Barbara Street
Santa Barbara, CA 93102
Facsimile: (805) 965-0329
E-mail: psusi@hbsb.com
       jgura@hbsb.com

    2.    COSTS, EXPENSES AND ATTORNEYS' FEES.  Borrower shall pay to Postpetition Lender immediately upon demand the full amount of all payments, advances, charges, costs, and expenses, including reasonable attorneys' fees (to include outside counsel fees and all allocated costs of Postpetition Lender's in-house counsel to the extent permissible), expended or incurred by Postpetition Lender in connection with (a) the negotiation and preparation of this letter agreement and the other Loan Documents, Postpetition Lender's continued administration hereof and thereof, and the preparation of amendments and waivers hereto and thereto, (b) the enforcement of Postpetition Lender's rights and/or the collection of any amounts which become due to Postpetition Lender under any of the Loan Documents, and (c) the prosecution or defense of any action in any way related to the Loan Documents, including, without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in an arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter, or motion

brought by Postpetition Lender or any other person) relating to Borrower or any other person or entity.

3.  SUCCESSORS, ASSIGNMENT.  This letter agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, legal representatives, successors and assigns of the parties; provided, however, that Borrower may not assign or transfer its interests or rights hereunder without Postpetition Lender's prior written consent.  Postpetition Lender reserves the right to sell, assign, transfer, negotiate, or grant participations in all or any part of, or any interest in, Postpetition Lender's rights and benefits under each of the Loan Documents.  In connection therewith, Postpetition Lender may disclose all documents and information which Postpetition Lender now has or hereafter may acquire relating to any credit subject hereto, Borrower or its business, or any collateral required hereunder.

4.  ENTIRE AGREEMENT; AMENDMENT.  This letter agreement and the other Loan Documents constitute the entire agreement between Borrower and Postpetition Lender with respect to each credit subject hereto and supersedes all prior negotiations, communications, discussions, and correspondence concerning the subject matter hereof.  This letter agreement may be amended or modified only in writing signed by each party hereto.

5.  NO THIRD PARTY BENEFICIARIES.  This letter agreement is made and entered into for the sole protection and benefit of the parties hereto and their respective permitted successors and assigns, and no other person or entity shall be a third party beneficiary of, or have any direct or indirect cause of action or claim in connection with, this letter agreement or any other of the Loan Documents to which it is not a party.

6.  SEVERABILITY OF PROVISIONS.  If any provision of this letter agreement shall be prohibited or invalid under applicable law, such provision, shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or any remaining provisions of this letter agreement.

7.  GOVERNING LAW.  This letter agreement shall be governed by and construed in accordance with the laws of the State of California, except to the extent that federal laws preempt the laws of the State of California, and all persons and entities in any manner obligated under this letter agreement consent to the jurisdiction of any federal or state court within the State of California having proper venue and also consent to service of process by any means authorized by California or federal law.

8.  BUSINESS PURPOSE.  Borrower represents and warrants that each credit subject hereto is for a business, commercial investment, agricultural, or similar purpose and not primarily for a personal, family, or household use.

9.  SAVINGS CLAUSE.  It is the intention of the parties to comply strictly with applicable usury laws.  Accordingly, notwithstanding any provision to the contrary in the Loan Documents, in no event shall any of the Loan Documents require the payment or permit the payment, taking, reserving, receiving, collection, or charging of any sums constituting interest under applicable laws that exceed the maximum amount permitted by such laws, as the same may be amended or modified from time to time (the "**Maximum Rate**").

Case 9:15-bk-10251-DS    Doc 119    Filed 08/07/15    Entered 08/07/15 17:08:17    Desc
Case 9:15-bk-10251-DS    Main Document 02/12/15    Page 26 of 80    ed 02/12/15 15:13:12    Desc
Exhibit Exhibits A and B    Page 36 of 43

G.    GUARANTOR'S CONSENT, REAFFIRMATION, AND COVENANTS.    Jafroodi Properties, L.P., Mahmood Jafroodi, and Azar Jafroodi (collectively "**Guarantor**") hereby agree as follows:

1.    Guarantor consents to Borrower's execution, delivery, and performance of the Loan Documents, and all documents required by Postpetition Lender to be executed by Borrower thereunder.

2.    Guarantor ratifies and reaffirms each of his/her/its obligations under the Continuing Guaranty – Recourse given to Postpetition Lender in connection with the Prepetition Loan Documents.

3.    Each and every Continuing Guaranty – Recourse given to Postpetition Lender by the undersigned Guarantor for the indebtedness represented by the Prepetition Loan Documents is hereby increased to include the indebtedness embodied by the DIP Loan effective immediately and without the necessity of Postpetition Lender obtaining a new Continuing Guaranty – Recourse from Guarantor.

4.    Guarantor has no claims or defenses against Postpetition Lender, Prepetition Lender, or any other person or entity which would or might affect: (a) the enforceability of the Loan Documents and the Prepetition Loan Documents; or (b) the collectability of the sums advanced by Postpetition Lender or Prepetition Lender in connection with the Loan Documents or the Prepetition Loan Documents.

5.    Guarantor understands and acknowledges that Postpetition Lender is entering into this letter agreement in reliance upon, and in partial consideration for, their acknowledgment and representations as set forth herein, and Guarantor agrees that such reliance is reasonable and appropriate.

6.    To the extent Guarantor is a holder of Farm Credit West, ACA stock, Guarantor authorizes and consents to Farm Credit West, ACA delivering the patronage payments on account of the stock to Farm Credit West, PCA to be applied to Debtor's obligations to Farm Credit West, PCA arising under the Prepetition Loan Documents, which may be applied by Farm Credit West, PCA in any manner.

7.    Jafroodi Properties, L.P. shall timely pay all future real property taxes associated with its real property assets, including the taxes that must be paid by April 10, 2015.

8.    Jafroodi Properties, L.P. agrees that it shall promptly commence marketing efforts for its real properties and shall hire a listing broker acceptable to Farm Credit West, PCA. Jafroodi Properties, L.P. agrees that it shall promptly cause its broker to list its real properties for sale at a list price acceptable to Farm Credit West, PCA. Jafroodi Properties, L.P. agrees that it shall pursue a sale of its real properties to an arm's length third party purchaser, without delay, and shall in good faith seek to consummate a sale of its real properties. Jafroodi Properties, L.P. agrees that it shall make available to Farm Credit West, PCA within two (2) business days of its receipt any and all written materials Jafroodi Properties, L.P. or its broker obtains with respect to the listing of Jafroodi Properties, L.P.'s real properties from anyone, including, without limitation, all marketing materials, all expressions of interest, and all offers for sale. Jafroodi Properties, L.P. agrees that it shall provide Farm Credit West, PCA with one or more letters of intent for its real properties by no

later than May 15, 2015. Jafroodi Properties, L.P. agrees that it shall provide Farm Credit West, PCA with one or more offers for its real properties by no later than July 1, 2015.

9.    Guarantor, the Jafroodi Trust, and Eucalyptus acknowledge that they are in default under the Prepetition Loan Documents as a result of the bankruptcy filing of Debtor. Guarantor, the Jafroodi Trust, and Eucalyptus acknowledge that Prepetition Lender is under no obligation to continue performing any duty or covenant imposed by the Prepetition Loan Documents, including, but not limited to, Section III.j) of the First Amended and Restated Loan Restructure and Workout Agreement dated January 2, 2014. **Guarantor, the Jafroodi Trust, and Eucalyptus understand and acknowledge that Prepetition Lender is not waiving the default or any other defaults and is reserving all of its rights and remedies, and nothing in this agreement should be construed or relied upon as a waiver.** Notwithstanding the foregoing, in accordance with Section III.j) of the First Amended and Restated Loan Restructure and Workout Agreement dated January 2, 2014, Guarantor and Borrower acknowledge and agree that effective as January 1, 2016, Jafroodi Properties, L.P. shall commence monthly payments on the **"JP Loans"** (as that term is defined in Section III.j) of the First Amended and Restated Loan Restructure and Workout Agreement dated January 2, 2014) to Farm Credit West, PCA in the approximate amount of $76,934.99 first due on January 1, 2016 and continuing on the first day of each month thereafter. The JP Loans shall bear interest at a rate per annum equal to the lesser of 4 percent (4%), or (ii) the Maximum Rate (defined above). The JP Loans shall be paid in full by no later than January 1, 2023, and shall be evenly amortized over the seven (7) year period from January 1, 2016 through January 1, 2023. All other terms of the JP Loans shall remain the same as those provided in the Prepetition Loan Documents, including, but not limited to, the default rate of interest.

H.    GENERAL RELEASE BY NON-BANKRUPT OBLIGORS.

1.    Guarantor, Eucalyptus, and Jafroodi Trust on behalf of themselves, their respective successors and assigns, and their respective past and present attorneys, accountants, insurers, representatives, affiliates, partners, parents, subsidiaries, officers, employees, managers, directors, members, and shareholders, and each of them (for purposes of this Section, hereinafter referred to individually and collectively as the "Non-Debtor Releasing Parties"), do each hereby forever relieve, release, acquit, and discharge Postpetition Lender and Prepetition Lender from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, disputes, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which the Non-Debtor Releasing Parties, or any of them, now own or hold or have at any time heretofore owned or held or may at any time hereafter own or hold against Postpetition Lender and Prepetition Lender, or any of them, by reason of any acts, facts, transactions, or any circumstances whatsoever occurring or alleged to have occurred through the Bankruptcy Court's entry of the Final Order, including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Prepetition Loan Documents, the Loan Documents, the Deeds of Trust and Assignment of Rents granted by Jafroodi Properties, L.P. to secure repayment of its obligations to Farm Credit West, PCA, any collateral for the Prepetition Loan Documents, any collateral for the Postpetition Loan Documents, any collateral pledged by Jafroodi Properties, L.P. to Farm Credit West, PCA, Prepetition Lender's administration of the obligations represented by the Prepetition Loan Documents, Prepetition Lender's enforcement of the Prepetition Loan Documents, the negotiations leading to this agreement, and the exhibits hereto.

Case 9:15-bk-10251-DS    Doc 119    Filed 08/07/15    Entered 08/07/15 17:08:17    Desc
Case 9:15-bk-10251-DS    Main Document 02/12/15 Page 28 of 80 red 02/12/15 15:13:12    Desc
Exhibit Exhibits A and B    Page 38 of 43

2.  As to the matters released herein, the Non-Debtor Releasing Parties each expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

3.  The Non-Debtor Releasing Parties each expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state, territory, commonwealth, or possession of the United States, or the United States, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and relinquishment, each of the Non-Debtor Releasing Parties acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of the Non-Debtor Releasing Parties, through this agreement, to fully, finally, and forever release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

[SIGNATURE PAGE FOLLOWS]

Case 9:15-bk-10251-DS    Doc 119    Filed 08/07/15    Entered 08/07/15 17:08:17    Desc
Case 9:15-bk-10251-DS    Main Document 02/12/15 Page 29 of 80 02/12/15 15:13:12    Desc
Exhibit Exhibits A and B    Page 39 of 43

IN WITNESS WHEREOF, the parties hereto have executed this letter agreement as of the day and year first written above.

**FARM CREDIT WEST, PCA and FARM CREDIT WEST, FLCA**

By: _____

Name: _____

Title: _____

**BORROWER:**

CLEARWATER NURSERY, INC., a California corporation;

906 EUCALYPTUS NURSERY, LLC, a California limited liability company; and

1980 JAFROODI FAMLY TRUST U/D/T DATED NOVEMBER 13, 1980, AS AMENDED

By: _____
John Djafroodi, aka John E. Djafroodi,
in each of the following capacities:
President and Secretary of Clearwater Nursery, Inc.

By: _____
Mahmood Jafroodi,
in each of the following capacities:
Manager of 906 Eucalyptus Nursery, LLC, and
Trustee of the 1980 Jafroodi Family Trust U/D/T dated November 13, 1980, as amended

**GUARANTOR:**

By: _____
Mahmood Jafroodi

By: _____
Azar Jafroodi

[ADDITIONAL SIGNATURE PAGE FOLLOWS]

Case 9:15-bk-10251-DS   Doc 119   Filed 08/07/15   Entered 08/07/15 17:08:17   Desc
Case 9:15-bk-10251-DS   Main Document   Filed 02/12/15   Page 30 of 80   Entered 02/12/15 15:13:12   Desc
Exhibit Exhibits A and B    Page 40 of 43

GUARANTOR (cont'd):

JAFROODI PROPERTIES, L.P., a California limited partnership

By:    906 EUCALYPTUS NURSERY, LLC, a California limited liability company
        General Partner of Jafroodi Properties, L.P.

By:    _____
        Mahmood Jafroodi
        Manager of 906 Eucalyptus Nursery, LLC

EXHIBIT "A"

13-WEEK CASH FLOW PROJECTION

[See Attached]

Case 9:15-bk-10251-DS   Doc 119   Filed 08/07/15   Entered 08/07/15 17:08:17   Desc
Case 9:15-bk-10251-DS   Main Document 02/12 Page 32 of 80 Filed 02/12/15 15:13:12   Desc
Exhibit Exhibits A and B   Page 42 of 43

## WEEKLY CASH FORECAST

| | Week 1 2/22/2015 | Week 2 2/27/2015 | Week 3 3/6/2015 | Week 4 3/13/2015 | Week 5 3/20/2015 | Week 6 3/27/2015 | Week 7 4/3/2015 | Week 8 4/10/2015 | Week 9 4/17/2015 | Week 10 4/24/2015 | Week 11 5/1/2015 | Week 12 5/8/2015 | Week 13 5/15/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ending** | | | | | | | | | | | | | |
| BEGINNING CASH BALANCE | $  - | 63,987.14 | 56,295 | 16,990 | 138,648 | 30,446 | 101,864 | 49,035 | 31,765 | 33,830 | 177,307 | 175,002 | 302,682 |
| CASH RECEIPTS FROM A/R | $ 141,846 | $ 202,780 | $ 270,706 | $ 321,462 | $ 178,360 | $ 221,261 | $ 284,214 | $ 224,214 | $ 224,214 | $ 224,214 | $ 224,214 | $ 380,074 | $ 380,074 |
| **PRODUCTION & DISTRIBUTION EXPENSE** | | | | | | | | | | | | | |
| Production Labor | | | | | | | | | | | | | |
| - Insiders | $ 77,553 | | | | $ 9,000 | | $ 2,250 | | $ 2,250 | | $ 2,250 | | $ 2,250 |
| - Non-Insider | 6,354 | | $ 68,156 | | 68,156 | | 54,378 | | 54,378 | | 54,378 | | 62,891 |
| Maintenance Labor | 5,799 | | 6,354 | | 6,354 | | 5,296 | | 5,296 | | 5,296 | | 6,517 |
| Warehouse/Shipping Labor | 46,235 | | 7,718 | | 7,718 | | 3,939 | | 3,939 | | 3,939 | | 3,245 |
| Harvesting/Packing Labor | 17,785 | | 62,921 | | 62,921 | | 34,702 | | 34,702 | | 34,702 | | 18,245 |
| Harvesting/Shipping (Produce) | 4,202 | 4,202 | 25,835 | 4,095 | 25,835 | 4,095 | 25,662 | 3,356 | 25,662 | 3,356 | 25,662 | 4,003 | 33,667 |
| Repairs & Maintenance | 35,662 | 35,662 | 4,095 | 11,899 | 4,095 | 11,899 | 3,356 | 8,269 | 3,356 | 8,269 | 3,356 | 5,187 | 4,003 |
| Seed & Plant Material | 19,052 | 10,052 | 11,899 | 9,174 | 11,899 | 4,174 | 8,269 | 6,809 | 8,269 | 8,269 | 8,269 | 6,168 | 5,187 |
| Production Material & Supply | 8,859 | 8,859 | 9,174 | 4,241 | 9,174 | 4,341 | 6,809 | 3,623 | 6,809 | 6,809 | 6,809 | 4,718 | 6,168 |
| Soil Materials | 9,519 | 9,519 | 4,241 | 7,409 | 4,341 | 7,409 | 3,623 | 7,013 | 3,623 | 3,623 | 3,623 | 10,774 | 4,718 |
| Chemicals & Fertilizers | 29,803 | 29,803 | 7,409 | 50,553 | 7,409 | 75,553 | 7,013 | 31,022 | 7,013 | 7,013 | 7,013 | 16,837 | 10,774 |
| Shipping Materials & Supplies | 3,850 | 3,850 | 25,553 | 1,925 | 25,553 | 1,925 | 31,022 | 1,540 | 31,022 | 31,022 | 31,022 | 1,925 | 16,837 |
| Upside material costs | 894 | 894 | 1,925 | 329 | 1,925 | 329 | 1,540 | 254 | 1,540 | 1,540 | 1,540 | 500 | 1,925 |
| Sales Tax | 18,405 | 18,405 | 329 | 8,510 | 329 | 8,510 | 254 | 9,199 | 254 | 234 | 234 | 6,455 | 500 |
| Freigh-Out | | | 8,510 | | 8,510 | | 9,199 | | 9,199 | 9,199 | 9,199 | | 6,455 |
| Rent | | | | | | | | | | | | | |
| - Insider jPLP | 35,159 | | | 35,159 | | | | 35,159 | | | | 35,159 | |
| - Adequate Protection FCW | 57,731 | | 57,731 | | | | 57,731 | | | | | 57,731 | |
| - Short-term land lease | 1,000 | | 1,000 | | | | 1,000 | | | | | 1,000 | |
| Gas & Oil Vehicles | 934 | 934 | 1,129 | 1,129 | 1,129 | 1,129 | 487 | 487 | 487 | 487 | 487 | 492 | 492 |
| Heating Gas | | 71,000 | | | | | | 35,801 | | | | 27,105 | |
| Electricity | | | | | | | | 12,977 | | | | 14,757 | |
| Payroll Taxes - Excl Admin & Sales & Log | 15,919 | | | 15,234 | | | | | | | | | |
| Insurance - Includes Admin & Sales W Comp Not Logistics | 6,378 | | 6,378 | | 6,378 | | 5,316 | | 5,316 | | 5,316 | | 6,378 |
| Taxes & Licenses | 19,580 | | 19,630 | | | | 20,896 | 82,882 | | | | 19,723 | |
| | 90 | | 90 | | | | | | | | | 90 | |
| **TOTAL PROD & DIST EXPENSE** | $ 420,761 | 202,779 | 330,176 | 195,324 | 260,724 | 124,364 | 282,721 | 236,380 | 203,093 | 71,552 | 203,093 | 212,627 | 150,253 |
| **SALES EXPENSE** | | | | | | | | | | | | | |
| Sales Salaries | $ 8,637 | | $ 8,737 | | 8,737 | | 7,198 | | 7,198 | | 7,198 | | 8,737 |
| Sales PR Taxes | 959 | | 959 | | 959 | | 799 | | 799 | | 799 | | 959 |
| Floral Shows | | | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | | |
| Advertising & Promotions | $ 2,250 | 2,250 | $ 1,650 | 1,650 | 1,650 | 1,650 | 550 | 550 | 550 | 550 | 550 | 713 | 713 |
| Commissions (Albertson's) | 750 | 750 | 250 | 250 | 250 | 255 | 500 | 500 | 500 | 500 | 550 | 1,750 | 1,750 |
| **TOTAL SALES EXPENSE** | $ 12,596 | 3,000 | 11,396 | 1,700 | 11,396 | 1,700 | 9,447 | 1,450 | 9,447 | 1,450 | 9,447 | 2,463 | 12,159 |
| Travel & Entertainment | $ 3,098 | 3,098 | 1,319 | 1,319 | 1,319 | 1,319 | 635 | 635 | 635 | 635 | 635 | 367 | 367 |
| Sales Travel | 500 | 500 | 500 | 500 | 500 | 500 | 400 | 400 | 400 | 400 | 400 | 125 | 125 |
| Corporate Travel | 1,495 | 1,495 | 576 | 576 | 576 | 576 | 407 | 407 | 407 | 407 | 407 | 265 | 265 |
| Sales Meals & Entertainment | 200 | 200 | 200 | 200 | 200 | 200 | 160 | 160 | 160 | 160 | 160 | 75 | 75 |
| Corporate Meals | | | | | | | | | | | | | |
| **TOTAL SALES EXPENSE** | $ 5,293 | 5,293 | 2,596 | 2,596 | 2,596 | 2,596 | 1,602 | 1,602 | 1,602 | 1,602 | 1,602 | 832 | 832 |
| **TOTAL SALES EXPENSE** | $ 17,889 | 8,293 | 13,992 | 4,296 | 13,992 | 4,296 | 11,048 | 3,052 | 11,048 | 3,052 | 11,048 | 3,334 | 12,590 |

## WEEKLY CASH FORECAST

| Ending | Week 1 2/22/2015 | Week 2 2/27/2015 | Week 3 3/6/2015 | Week 4 3/13/2015 | Week 5 3/20/2015 | Week 6 3/27/2015 | Week 7 4/3/2015 | Week 8 4/10/2015 | Week 9 4/17/2015 | Week 10 4/24/2015 | Week 11 5/1/2015 | Week 12 5/8/2015 | Week 13 5/15/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **GENERAL & ADMINISTRATION EXPENSE** | | | | | | | | | | | | | |
| Administrative Salaries | | | | | | | | | | | | | |
| - Insiders | | | 15,071 | | 7,536 | | 5,024 | | 5,024 | | 5,024 | | 7,536 |
| - Non-Insiders | 3,053 | | 3,053 | | 3,053 | | 2,035 | | 2,035 | | 2,035 | 2,035 | 3,053 |
| Payroll Taxes - Admin | 1,075 | | 1,075 | | 1,075 | | 896 | | 896 | | 896 | 896 | 1,075 |
| Estate Professional Fees | | | | | | | 5,000 | | | | 5,000 | | |
| US Trustee, Court & Related Costs | 2,000 | | 10,000 | | | | - | | | | | | |
| 401k Administration | | | | | | | 550 | | | | | | |
| Met Life Quarterly | | | | | | | | | | | | | |
| Dues, Subscriptions & Education | 314 | | 415 | | | | | | | | | | |
| Telephone | 2,216 | | 184 | 184 | 184 | 184 | 53 | 53 | 53 | 53 | 53 | 101 | 101 |
| Office Expenses | 1,750 | | 2,216 | | | | 2,216 | | | | | 2,216 | |
| Employee Programs | 25 | | 1,550 | | | | | | | 1,650 | | 1,800 | |
| Computer Expense | 3,801 | | 465 | | | | 25 | | | | | 65 | |
| Medical Expenses | | | 4,341 | | | | | | | 3,801 | | 4,556 | |
| Bank Service Charges | 60 | | 60 | | | | 60 | | | | | 60 | |
| Interest Expense | 700 | | 700 | | | | 700 | | | | | 950 | |
| - Adequate Protection FCW | 6,634 | | 6,634 | | | | 6,634 | | | | | 6,634 | |
| - Post petition Interest | 17,581 | | 17,581 | | | | 17,581 | | | | | 17,581 | |
| Royalty Expense | | | 2,500 | | | 21,000 | 2,500 | | | | | 2,500 | |
| **TOTAL G&A EXPENSE** | 39,209 | - | 65,844 | 184 | 11,847 | 21,184 | 43,274 | 53 | 8,007 | 5,584 | 13,007 | 36,473 | 11,764 |
| **TOTAL EXPENSE** | 477,859 | 210,472 | 410,012 | 199,803 | 288,553 | 149,842 | 337,043 | 241,484 | 222,149 | 80,107 | 227,149 | 252,394 | 215,008 |
| **CASH FROM OPERATIONS** | (336,013) | (7,692) | (139,306) | 121,659 | (108,203) | 71,419 | (52,829) | (17,270) | 2,065 | 144,107 | (2,935) | 127,680 | 165,066 |
| **BORROWED FUNDS** | 400,000 | | 100,000 | | | | | | | | | | |
| **ENDING CASH BALANCE** | 63,987 | 56,295 | 16,990 | 138,648 | 30,446 | 101,864 | 49,035 | 31,765 | 33,830 | 177,937 | 175,002 | 302,682 | 467,748 |
| **INVENTORY** | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 |
| **OPEN ACCOUNTS RECEIVABLE** | 1,229,552 | 1,289,695 | 1,239,256 | 1,258,062 | 1,359,969 | 1,416,976 | 1,438,821 | 1,516,665 | 1,588,512 | 1,679,357 | 1,758,202 | 1,655,806 | 1,453,409 |

Case 9:15-bk-10251-DS    Doc 119    Filed 08/07/15    Entered 08/07/15 17:08:17    Desc
Case 9:15-bk-10251-DS    Main Document 02/12/15 Page 34 of 80 Filed 02/12/15 15:13:12    Desc
Exhibit Exhibits A and B    Page 1 of 43

17

1  René Lastreto II, #100993
   rl2@lrplaw.net
2  Michael J. Gomez, #251571
   mjg@lrplaw.net
3  Lang, Richert & Patch
   Post Office Box 40012
4  Fresno, California 93755-0012
   (559) 228-6700 Phone
5  (559) 228-6727 Fax

6  Attorneys for Secured Creditors
   FARM CREDIT WEST, FLCA and
7  FARM CREDIT WEST, PCA

8

9              UNITED STATES BANKRUPTCY COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                    NORTHERN DIVISION

11  In re                          Case No.   bk-15-10251-DS

12  Clearwater Nursery, Inc.,      Chapter 11

13                                 STIPULATION FOR INTERIM USE OF
                                   CASH COLLATERAL AND GRANT OF
14          Debtor.                ADEQUATE PROTECTION

15

16

17

18

19         This Stipulation is made by and between Clearwater Nursery, Inc., Debtor and Debtor-in-

20  Possession (the "Debtor"), on the one hand, and Secured Creditors Farm Credit West, FLCA, and

21  Farm Credit West, PCA (together with FLCA, "Lender"), on the other hand.  The Debtor and

22  Lender hereby stipulate and agree as follows:

23                              RECITALS

24         a.      Prior to the February 11, 2015 (the "Petition Date") in the above-captioned case,

25  Lender made several loans to the Debtor (the "Loans").  Lender contends the Loans are secured by

26  substantially all of the Debtor's personal property collateral.  Pursuant to, *inter alia*, certain notes,

27  security agreements, and other agreements executed by the Debtor (collectively, the "Loan

28

---

Stipulation Authorizing Use of Cash Collateral          -1-
Between Debtor and Secured Creditors

                    EXHIBIT A                    EXHIBIT 2

17

Documents")," Lender contends it holds valid, enforceable, and perfected first priority liens and

---

[1] The Loan Documents consist of the following:

    1       Promissory Note and Loan Agreement dated June 2, 1999 between 1980 Jafroodi Family Trust U/D/T dated November 13, 1980, as amended ("Jafroodi Trust"), Mahmood Jafroodi, Azar Jafroodi, and Central Coast Federal Land Bank Association, FLCA;

    2.      Continuing Guaranty – Recourse dated June 2, 1999 between Debtor and Central Coast Federal Land Bank Association, FLCA guaranteeing the obligations of the Jafroodi Trust, Mahmood Jafroodi, and Azar Jafroodi to Central Coast Federal Land Bank Association, FLCA;

    3.      Security Agreement dated June 2, 1999 by Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Debtor in favor of Central Coast Federal Land Bank Association, FLCA;

    4.      Promissory Note and Loan Agreement dated December 16, 1999 between Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Central Coast Federal Land Bank Association, FLCA;

    5.      Continuing Guaranty – Recourse dated December 16, 1999 between Debtor and Central Coast Federal Land Bank Association, FLCA guaranteeing the obligations of the Jafroodi Trust, Mahmood Jafroodi, and Azar Jafroodi to Central Coast Federal Land Bank Association, FLCA;

    6.      Supplemental Security Agreement dated December 16, 1999 by Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Debtor in favor of Central Coast Federal Land Bank Association, FLCA;

    7.      Promissory Note and Loan Agreement dated July 13, 2000 between Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Central Coast Federal Land Bank Association, FLCA;

    8.      Security Agreement dated July 13, 2000 by Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Debtor in favor of Central Coast Federal Land Bank Association, FLCA;

    9.      Promissory Note and Loan Agreement dated April 26, 2001 between Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Central Coast Federal Land Bank Association, FLCA;

    10.      Security Agreement dated April 26, 2001 by Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Debtor in favor of Central Coast Federal Land Bank Association, FLCA;

    11.      Promissory Note and Loan Agreement dated July 1, 2002 between Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Farm Credit West, FLCA;

    12.      Continuing Guaranty – Recourse dated July 1 2002 between Debtor and Farm Credit West, FLCA, guaranteeing the obligations of the Jafroodi Trust, Mahmood Jafroodi, and Azar Jafroodi to Farm Credit West, FLCA;

    13.      Security Agreement dated July 1, 2002 by Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, and Debtor in favor of Farm Credit West, FLCA;

    14.      Continuing Guaranty – Recourse dated August 9, 2004 between Debtor and Farm Credit West, FLCA, guaranteeing the obligations of the Jafroodi Trust, Mahmood Jafroodi, and Azar Jafroodi to Farm Credit West, FLCA;

    15.      Security Agreement dated August 9, 2004 by Debtor, Jafroodi Trust, Mahmood Jafroodi, and Azar Jafroodi in favor of Farm Credit West, FLCA;

---

Case 9:15-bk-10251-DS   Doc 119   Filed 08/07/15   Entered 08/07/15 17:08:17   Desc
Case 9:15-bk-10251-DS   Main Document 02/12 Page 36 of 80   Filed 02/12/15 15:13:12   Desc
Exhibit Exhibits A and B   Page 3 of 43

security interests in substantially all of the Debtor's assets including, without limitation, (a) inventory and accounts, (b) equipment and fixtures, (c) documents of title, (d) rights to payment; (e) goods; (f) farm products; (g) investment property; (i) vehicles; (j) general intangibles, (k) cash collateral within the meaning of section 363(a) of the Bankruptcy Code ("Cash Collateral"); and (l) any proceeds of the foregoing, as well as other collateral (collectively, the "Prepetition

---

16.     Security Agreement dated August 24, 2004 by Debtor, 906 Eucalyptus Nursery, LLC ("Eucalyptus"), and American Horticultural Supply, Inc. in favor of Farm Credit West, PCA;

17.     Master Loan Agreement dated January 25, 2005 between Debtor, Eucalyptus, and Farm Credit West, PCA;

18.     Promissory Note and Supplement to Master Loan Agreement dated January 25, 2005 by Debtor and Eucalyptus in favor of Farm Credit West, PCA;

19.     Security Agreement dated March 1, 2006 by Debtor, Eucalyptus, and American Horticultural Supply, Inc., and Jafroodi Properties, L.P. in favor of Farm Credit West, PCA;

20.     Master Loan Agreement dated March 1, 2006 between Eucalyptus, Jafroodi Trust, Jafroodi Properties, L.P., and Farm Credit West, PCA;

21.     Continuing Guaranty – Recourse dated March 1, 2006 between Debtor and Farm Credit West, PCA, guaranteeing the obligations of Jafroodi Properties, L.P. to Farm Credit West, PCA;

22.     Promissory Note and Supplement to Master Loan Agreement dated September 10, 2008 by Eucalyptus, Jafroodi Trust, and Jafroodi Properties, L.P. in favor of Farm Credit West, PCA;

23.     Master Loan Agreement dated March 20, 2009 between Eucalyptus, Jafroodi Trust, Jafroodi Properties, L.P., and Farm Credit West, PCA;

24.     Promissory Note and Supplement to Master Loan Agreement dated March 20, 2009 by Eucalyptus, Jafroodi Trust, and Jafroodi Properties, L.P. in favor of Farm Credit West, PCA;

25.     Promissory Note and Supplement to Master Loan Agreement dated April 17, 2009 by Eucalyptus, Jafroodi Trust, and Jafroodi Properties, L.P. in favor of Farm Credit West, PCA;

26.     Master Loan Agreement dated November 23, 2009 between Debtor, Eucalyptus, Jafroodi Trust, and Farm Credit West, PCA;

27.     Supplemental Security Agreement dated February 14, 2011 by Debtor, Eucalyptus, American Horticultural Supply, Inc., and Jafroodi Properties, L.P. in favor of Farm Credit West, PCA;

28.     Promissory Note and Supplement to Master Loan Agreement dated August 9, 2012 by Debtor, Eucalyptus, and Jafroodi Trust in favor of Farm Credit West, PCA;

29.     Loan Restructure and Workout Agreement dated April 16, 2009 and the eight amendments thereto; and

30.     First Amended and Restated Loan Restructure and Workout Agreement dated January 2, 2014.

---

Case 9:15-bk-10251-DS Doc 119 Filed 08/07/15 Entered 08/07/15 17:08:17 Desc
Case 9:15-bk-10251-DS Main Document 02/12/15 Page 37 of 80 ed 02/12/15 15:13:12 Desc
Exhibit Exhibits A and B Page 4 of 43

1    Collateral").

2        b.     As of the Petition Date, in accordance with the terms of the Loan Documents, Lender

3 contends the Debtor is indebted to Lender in the approximate amount of $14,949,448.56 plus

4 accrued unpaid interest, charges, and other fees, including attorneys' fees and costs, chargeable

5 under the Loan Documents.

6        c.     The Debtor desires to continue operations, collect Cash Collateral, and utilize the

7 Cash Collateral to pay the ordinary and necessary expenses related to the preservation and

8 maintenance of its operations. Lender consents to Debtor's use of its Cash Collateral on the terms

9 and conditions set forth herein.

10        d.     This Stipulation shall be effective nunc pro tunc as of the Petition Date. Except as

11 otherwise provided herein, the terms of this Stipulation shall be valid and binding upon the Debtor,

12 all successors in interest to the Debtor, all creditors of the Debtor, any statutory Committee

13 appointed in this case and all other parties in interest from and after the Petition Date, including any

14 trustees appointed under Chapter 7 or Chapter 11 of the Bankruptcy Code, or any examiner

15 appointed with or without expanded powers.

16       NOW, THEREFORE, the Debtor and Lender hereby agree as follows:

17                          **STIPULATION**

18       1.     This Stipulation shall be in effect until the earlier of May 15, 2015 (subject to

19 extensions as agreed upon in writing between Lender and the Debtor pursuant to paragraph 32

20 below) (the "Interim Period"), or the Termination Date (as "Termination Date" is defined below in

21 paragraph 29), except as provided in paragraphs 24 through 26.

22       2.     The Debtor shall collect all Cash Collateral generated by the Prepetition Collateral

23 and Postpetition Collateral (as "Postpetition Collateral" is defined below in paragraph 4). The Cash

24 Collateral shall be deposited into the Court mandated debtor-in-possession operating account (the

25 "General Account"). The Debtor shall at all times keep a record of all credits and debits to the

26 General Account and be able to account for all funds in the General Account.

27    ///

28    ///

---

Stipulation Authorizing Use of Cash Collateral       -4- 
Between Debtor and Secured Creditors

**Budget**

3.  The Debtor may use Cash Collateral collected from the Prepetition Collateral and Postpetition Collateral solely to pay expenses incurred in the ordinary course of its business in amounts not to exceed the line item expenses provided in the monthly budgets for the Petition Date through May 15, 2015, attached hereto as Exhibit "1" (the "Budget," and each expense therein, and "Approved Expense").  The Debtor may exceed the budgeted amount for any line item weekly expense by up to 15% of the amount budgeted for that weekly expense only, provided however that the aggregate expenses in any given week period shall not exceed 10% more than the total budgeted weekly amount.  Additionally, the Debtor's actual individual line items for revenues for each weekly period of the Budget shall not be less than 85% of the projected line item of revenue and 90% of the line item for aggregate revenues for such period as set forth in the Budget.  With Lender's written agreement, the budgeted amount, either by line item, or total, per one week period, may be exceeded without the Court's approval.  The limitation on line items for payment of expenses does not apply to payment of the fees of the United States Trustee.  The Debtor may use $10,000.00 of Cash Collateral collected from the Prepetition Collateral and Postpetition Collateral to pay the administrative expense of the Debtor's counsel.  The Debtor may also use the Prepetition Collateral used to fund the retainer for the Debtor's counsel to pay the administrative expense of the Debtor's counsel.  No other use of Cash Collateral collected from either the Prepetition Collateral or the Postpetition Collateral to pay the administrative expenses of professional fees is authorized.

**Adequate Protection**

4.  As adequate protection for the Debtor's expenditures of Cash Collateral, the Debtor grants Lender valid, enforceable, and perfected replacement liens on, and security interests in, any and all of the Debtor's rights, title, and interest in and to all of its accounts, rights to payment, inventory, goods, farm products, accounts receivable, general intangibles, equipment, fixtures, investment property, vehicles, any substitutions or accessions to the foregoing, and any proceeds thereof, including, without limitation all cash on hand, all cash accumulated on a postpetition basis, any other Cash Collateral, and any insurance proceeds or replacements of the foregoing (excluding,

Case 9:15-bk-10251-DS    Doc 119    Filed 08/07/15    Entered 08/07/15 17:08:17    Desc
Case 9:15-bk-10251-DS    Main Document 02/12/15 Page 39 of 80ed 02/12/15 15:13:12    Desc
Exhibit Exhibits A and B    Page 6 of 43

1    however, any claims or causes of action held by Debtor under sections 502(d), 544, 545, 547, 548,

2    549, 550, and 553 of the United States Bankruptcy Code ("Avoidance Action Assets")) effective

3    as of the Petition Date,  in the same validity, priority, and scope as Lender's liens as they existed

4    against the Debtor prior to the Petition Date (the "Postpetition Collateral"), which shall not be

5    abridged or modified pursuant to sections 105 or 552 of the Bankruptcy Code or otherwise.  The

6    liens and security interests granted to Lender under this paragraph shall not be subject to any lien

7    or security interest that is avoided and preserved for the benefit of the estate pursuant to section 551

8    of the Bankruptcy Code.

9        5.        In addition to the liens and security interests granted hereunder, Lender's claims to

10    the Postpetition Collateral shall have priority, pursuant to the provisions of the Bankruptcy Code,

11    over all administrative and priority expenses incurred in the reorganization case, including, without

12    limitation, expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy

13    Code, and shall at all times be senior to the rights of the Debtor and its creditors, or in the

14    successors-in-interest of the Debtor or its creditors, including without limitation any statutory

15    committee, and any trustee or examiner appointed in the reorganization case.

16        6.        As additional adequate protection, the Debtor shall pay Farm Credit West, PCA

17    adequate protection payments consisting of monthly, interest-only payments at the non-default rate

18    of interest on Loan Nos. 3644715-201 and 3645010-101, estimated at $17,583.55 (based on interest

19    accrual of $578.09 per diem); and additional monthly adequate protection payments totaling

20    $57,731.28 to Farm Credit West, FLCA, consisting of regular monthly principal and interest

21    payments on Loan Nos. 0163155-101, 0163740-101, 0164380-101, 3634531-101, and 3643840-101

22    (the "Additional Adequate Protection").  The Debtor will note in its books and records each

23    Additional Adequate Protection payment as a portion of the rent paid to Jafroodi Properties, L.P.

24    The first adequate protection payment shall be due by no later than February 20, 2015.  Each

25    successive adequate protection payment shall be paid by the first of each month, commencing on

26    March 1, 2015.  Debtor authorizes Farm Credit West, PCA to deduct the adequate protection

27    payments via ACH transfer from its debtor-in-possession bank accounts on the first of the month

28    or the next business day should the first of the month be a legal holiday.

7.     Furthermore, as adequate protection, the Debtor shall pay Farm Credit West, PCA any patronage payments or other proceeds issued to it on account of Farm Credit West, ACA stock to be applied to Loan Nos. 3644715-201 and 3645010-101 in any manner, and authorizes Farm Credit West, PCA to collect such payments or proceeds directly from Farm Credit West, ACA.

8.     As additional adequate protection, Debtor covenants that it shall maintain at all times accounts receivable that are less than 90 days old in excess of $900,000, excluding any inter-company accounts receivable owed by 906 Eucalyptus, LLC, Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, Jafroodi Properties, L.P., American Horticultural Supply, Inc., and any insider (as defined in Bankruptcy Code section 101(31)) of, or affiliate (as defined in Bankruptcy Code section 101(2)) of, or an insider of an affiliate of 906 Eucalyptus Nursery, LLC, Jafroodi Trust, Mahmood Jafroodi, Azar Jafroodi, Jafroodi Properties, L.P., and American Horticultural Supply, Inc.

9.     In addition, as further adequate protection, Debtor shall provide Lender with semiweekly reports no later than the February 23, 2015, and continuing every other following Monday, which contain a line-item by line-item comparison of budgeted to actual receipts of Cash Collateral and incurrence and payment of Approved Expenses for the prior two week period. By no later than the 16th of the month, the Debtor shall furnish to Lender a copy of the Monthly Operating Report that the Debtor is required to file with the Office of the United States Trustee. Within one business day of submitting its initial intake package to the Office of the United States Trustee, the Debtor shall furnish a copy of the initial intake package to Lender. Debtor shall provide Lender with borrowing base certificates on a semiweekly basis commencing on February 23, 2015, and continuing every two weeks thereafter, in a form satisfactory to Lender that is signed and certified by an officer of the Debtor.

10.     As additional adequate protection, the Debtor shall provide Lender with a 13 week budget for the period of May 16, 2015, through August 7, 2015, in the same format as the Budget, by no later than April 15, 2015.

### Taxes & Insurance

11.     The Debtor shall pay all postpetition taxes when they come due (including any and all property taxes, sales taxes, income taxes, use taxes, and any other taxes related to its operations),

1  maintain insurance as required by the Loan Documents, and comply with all other requirements of

2  the Loan Documents that are necessary to preserve and maintain the value of Lender's liens and

3  security interests.  The Debtor shall timely pay sufficient partial lease payments to its landlord,

4  Jafroodi Properties, L.P., to enable Jafroodi Properties, L.P. to pay the real property taxes associated

5  with the real properties Debtor leases from Jafroodi Properties, L.P.

6  <u>**Disposition of Collateral**</u>

7      12.    The Debtor shall not use, lease, sell or expend directly or indirectly the Prepetition

8  Collateral or the Postpetition Collateral outside the ordinary course of its business without prior

9  written consent of Lender.

10      13.    Except otherwise agreed to in writing by Lender, during the term of this Stipulation,

11  the Debtor shall be enjoined and prohibited from granting any security interests or liens, including

12  liens created under section 364(d) of the Bankruptcy Code, which are senior to or on a parity with

13  Lender's prepetition security interests or liens in the Prepetition Collateral and Postpetition

14  Collateral.

15  <u>**Inspection of Collateral**</u>

16      14.    On not less than forty-eight (48) hours' advance written notice, the Debtor shall,

17  permit representatives, agents, and/or employees of Lender to visit, inspect, have reasonable access

18  to, and consult with, as the case may be for the purpose of conducting Lender's field examinations,

19  (I) the Debtor's books, records, and assets, (ii) the personnel of the Debtor who are familiar with

20  the Debtor's assets, books and records or the information set forth therein, and (iii) such other

21  information as Lender may reasonably request, and shall cooperate and consult with and provide

22  to such representatives, agents, and/or employees all such information as they may reasonably

23  request.  Lender will use good faith to conduct these examinations.

24  <u>**Automatic Perfection**</u>

25      15.    All agreements, security interests, and liens contemplated or granted by this

26  Stipulation are effective and perfected as of the commencement of the reorganization case without

27  further filing or recording by Lender in compliance with any state or federal law upon the entry of

28  an order by the Bankruptcy Court approving this Stipulation.  Lender will not be required to file

financing statements or other documents in any jurisdiction or take any other actions in order to perfect its security interests and liens granted under or pursuant to this Stipulation.

<u>**Right to Challenge**</u>

16a.    Unless otherwise provided herein, the terms and conditions of this Stipulation relating to the liens and priorities granted to Lender herein shall be binding upon the Debtor, its creditors, all other parties-in-interest, and all successors in interest thereof including, without limitation, any statutory committee, and Chapter 11 trustee or examiner that may be appointed in the reorganization case or any trustee in a case under Chapter 7 of the Bankruptcy Code into which this reorganization case may be converted. This binding effect is an integral part of the agreement included in this Stipulation.

16b.    Notwithstanding paragraph 16a, the Debtor, all other parties-in-interest, including, but not limited to, its creditors, and all successors in interest thereof including, without limitation any statutory committee, any Chapter 11 Trustee or Examiner that may be appointed in the reorganization case or any Trustee in a case under Chapter 7 of the Bankruptcy Code into which this reorganization case may be converted, shall have sixty (60) days from the date of the order of the Bankruptcy Court approving this Stipulation to bring any avoidance claims under Bankruptcy Code sections 544, 545, 547, 548, 549, 550, and similar provisions of the Bankruptcy Code as to Lender's liens, claims, and collateral. If the Debtor does not challenge the validity of the Loan Documents and the claims of Lender arising therefrom, Lender's security interest and lien on the Prepetition Collateral shall be deemed legal, valid, binding, perfected and otherwise unavoidable. The foregoing provision does not limit or impair the right of the Debtor to demand an accounting of all sums claimed due and owing by Lender, whether owing prepetition or postpetition. This provision is binding on all parties in interest and successors in interest including, without limitation, any statutory committee, any Chapter 11 Trustee or Examiner that may be appointed in the reorganization case or any Trustee in a case under Chapter 7 of the Bankruptcy Code into which this reorganization case may be converted.

///

///

Case 9:15-bk-10251-DS   Doc 119   Filed 08/07/15   Entered 08/07/15 17:08:17   Desc
Case 9:15-bk-10251-DS   Main Document 02/12/15   Page 43 of 80 ed 02/12/15 15:13:12   Desc
Exhibit Exhibits A and B   Page 10 of 43

### Limited Waiver of Automatic Stay

17.    The automatic stay presently in effect in this case pursuant to section 362 of the Bankruptcy code is hereby modified by the terms and conditions hereof, to effectuate the terms hereof and permit the adequate protection provisions in favor of Lender and the extent necessary to enable Lender to record the order entered by the Bankruptcy Court approving this Stipulation and any financing statements or related documents as Lender deems appropriate.

### No Waiver/Reservation of Rights

18.    The entry of an order approving this Stipulation shall not constitute, or be deemed to be, a waiver of any of Lender's rights or claims under the Loan Documents or applicable law, including, without limitation, the right to seek the payment of interest at the non-default and default rates, attorneys' fees and costs, and other fees and charges, or be deemed a cure of any default by the Debtor under the Loan Documents or applicable law, or be deemed a cure of any default by any other borrower or third party under the Loan Documents.

19.    Except as otherwise set forth herein, Lender reserves all rights that it may have with respect to the Prepetition Collateral, Postpetition Collateral, and Cash Collateral in this Chapter 11 proceeding, including relief from the automatic stay for, among other things, lack of adequate protection. Lender expressly reserves all right to seek relief from or modification or the automatic stay, appointment of a trustee, dismissal or conversion of the case, or any other remedies that it may have.

20.    This Stipulation shall not operate to modify, alter, impair, affect, abrogate, amend, restrict, or nullify the rights of Lender with respect to any person or entity other than the Debtor, nor release, alter impair, affect, or abrogate any debts, claims, demand, actions, and cause of action in law and equity, whether known or unknown, that Lender may have as to any person or entity other than the Debtor.

21.    Nothing contained in this Stipulation shall require or be deemed to require Lender to make an additional loan or to extend further debt financing or other financial accommodations to or for the Debtor's benefit.  Neither the Debtor nor any Trustee appointed in this case shall be

///

allowed to surcharge Lender under section 506(c) of the Bankruptcy Code for any expenses incurred in the ordinary course of business.

### Modification and Amendment

22.    No waiver, modification, or amendment of any of the provisions hereof shall be effective unless it is set forth in writing, signed by the parties hereto and approved by the Bankruptcy Court, except the Debtor shall have the right to (i) use Cash Collateral for purposes not specified in the Budget as consented by Lender in writing, and (ii) conduct its business pursuant to the terms of this Stipulation after expiration of the Budget, if Lender consents to an additional budget in writing, without further order of the Court.

23.    No subsequent stay, modification, termination, failure to extend the term of, or vacation of this Stipulation shall affect, limit, or modify any claim for the adequate protection or any superpriority claim granted hereunder, owed by the Debtor to Lender, incurred pursuant to this Stipulation or otherwise, nor shall any such stay, modification, or vacation limit, affect or modify the validity, enforceability, or perfection of any such security interest, lien, or priority granted or reaffirmed in connection therewith.  The adequate protection cannot be subordinated, lose its superpriority status, or be deprived of the benefit of the liens granted to Lender hereunder by any subsequent order in this case.

### Survival

24.    In the event that the case is dismissed, converted, otherwise suspended, or substantively consolidated, neither the entry of an order approving this Stipulation nor the dismissal or conversion of this case shall affect the rights of Lender under its Loan Documents, or the terms and conditions of this Stipulation, including the security interests, liens and superpriority claims granted herein, and all the rights and remedies of Lender thereunder shall be and remain in full force and effect as if the case had not been filed or the case had not been dismissed, converted, suspended or substantively consolidated.

25.    Notwithstanding any termination of the Debtor's authority to use the Cash Collateral pursuant to the terms hereof, all liens, priorities, rights and remedies provided to Lender in this Stipulation shall survive such termination and remain in full force and effect.

Case 9:15-bk-10251-DS   Doc 119   Filed 08/07/15   Entered 08/07/15 17:08:17   Desc
Case 9:15-bk-10251-DS   Main Document 02/12/15 Page 45 of 80ed 02/12/15 15:13:12   Desc
Exhibit Exhibits A and B   Page 12 of 43

1    26.    Notwithstanding any stay, modification, vacation, or reversal of this Stipulation, any

2  indebtedness, obligation or liability incurred by the Debtor pursuant to this Stipulation arising prior

3  to the later of the effective date of such stay, modification, vacation or reversal, or Lender's receipt

4  of notice thereof, shall be governed in all respects by the original provisions of this Stipulation, and

5  Lender shall continue to be entitled to all of the rights, remedies, privileges and benefits, including

6  any payments authorized herein and all security interests, liens and priorities granted herein, with

7  respect to all such indebtedness, obligations or liabilities incurred or existing prior to such date, and

8  with respect to the Debtor's use of the Cash Collateral prior to such date.  Without limiting the

9  generality of the foregoing, in the event any court hereafter modifies any of the provision of this

10  Stipulation, such modifications shall not affect the rights, remedies, liens, priorities, concessions,

11  and waivers granted to Lender or acknowledged pursuant to this Stipulation with respect to any

12  Cash Collateral which is used prior to any such modifications.

13                          **Default / Termination**

14    27.    Automatic Termination - Notwithstanding any other provision contained herein,

15  Debtor's authorization to use Lender's Cash Collateral pursuant to this Stipulation shall terminate

16  immediately and automatically, without any obligation of Lender to provide notice to the Debtor,

17  upon the occurrence of any of the following Events of Default:

18         (a)    Entry of an order converting the Debtor's Chapter 11 case to Chapter 7 of the

19  Bankruptcy Code, which order is not stayed within fourteen (14) days of the entry thereof;

20         (b)    Entry of an order dismissing the Chapter 11 case, which order is not stayed

21  within fourteen (14) days of the entry thereof;

22         (c)    Entry of an order by the Bankruptcy Court appointing a Chapter 11 trustee

23  or examiner in the Debtor's bankruptcy case, which order is not stayed within fourteen (14) days

24  of the entry thereof;

25         (d)    Entry of an order granting Lender relief from the automatic stay;

26         (e)    The filing of any motion by the Debtor to obtain senior or pari passu DIP

27  financing without the consent of Lender;

28         (f)    Failure of the Debtor to comply with any terms, conditions, or covenants

Case 9:15-bk-10251-DS    Doc 119    Filed 08/07/15    Entered 08/07/15 17:08:17    Desc
Case 9:15-bk-10251-DS    Main Document 02/12/15 Page 46 of 80 15:13:12    Desc
Exhibit Exhibits A and B    Page 13 of 43

contained in this Stipulation or any senior or pari passu DIP financing; and

(g)    The reversal, vacatur, stay, amendment, supplementation or other modification of this Stipulation (without Lender's consent) in a manner which shall, in the sole opinion of Lender, materially and adversely affect the rights of Lender hereunder, or shall materially and adversely affect the priority of any or all of Lender's collateral or security interests.

28.    Noticed Termination - Absent an agreement, in writing, between Lender and the Debtor, the Debtor's authorization to use Lender's Cash Collateral shall terminate automatically upon the end of the third calendar day after the mailing of notice of default from Lender, and failure to cure by the Debtor within such notice period, of the earliest to occur of any of the following Events of Default:

(a)    Non-compliance by Debtor with any of the express terms or provisions of this Stipulation or any senior or pari passu DIP financing;

(b)    Any person or entity obtains an order permitting the use of Lender's Cash Collateral without Lender's express written consent. For purposes of this subparagraph, Debtor agrees that it will not support any action which could result in expenditures materially different than as set forth in the Budget;

///

(c)    Debtor knowingly furnishes or knowingly makes any false, inaccurate or materially incomplete representation, warranty, certificate, report or summary in connection with or pursuant to his Stipulation.

29.    The date of termination upon any event as set forth in paragraphs 27 or 28 shall be referred to in this Stipulation as the "Termination Date."

## Rights and Remedies Upon Default

30.    If the Debtor is in default of this Stipulation, Lender may file a motion with the Bankruptcy Court on an expedited basis on no less than three (3) days written notice to the Debtor seeking any such additional protection as it may reasonably require with respect to continued use of Cash Collateral by the debtor or otherwise, including, without limitation, modification or termination of this Stipulation. Nothing herein shall prevent the Debtor or other parties in interest

1    from opposing such a motion.  Nothing contained herein shall or shall be deemed to constitute an

2    admission by Lender that its interest in Prepetition Collateral or Postpetition Collateral is adequately

3    protected within the meaning of section 361 of the Bankruptcy Code now or at some future time.

4    Lender shall retain all its rights available pursuant to the Bankruptcy Code or any other applicable

5    law, including its right to seek adequate protection and the Debtor shall retain all defenses and

6    rights in response thereto.

7        31.    Upon receipt from Lender of written notice that an Event of Default has occurred,

8    the Debtor shall immediately cease using Cash Collateral, and shall segregate and hold any Cash

9    Collateral in the Cash Collateral Account, or that it otherwise may have in its possession, in trust

10   for the benefit of Lender.  Such written notice shall be provided by Lender to the Debtor, to the

11   Office of the United States Trustee, and to counsel for any official creditor committee appointed

12   herein.

13                          **Extensions of Stipulation**

14       32.    In the event Lender consents to the extension(s) of the Debtor's authority to use Cash

15   Collateral under this Stipulation, the Debtor and Lender shall file with this Court a stipulation which

16   sets forth the terms of each such extension and which contains a budget of the expenses which the

17   Debtor may incur and pay during such extension along with a proposed order.  In the event that

18   Lender does not consent to extend the Debtor's authority to use Cash Collateral under this

19   Stipulation, the Debtor may bring a motion to seek authorization to continue using Cash Collateral,

20   and such use shall be authorized only if the Bankruptcy Court, after notice and a hearing, authorizes

21   the continued use of Cash Collateral in accordance with section 363(c)(2)(B) of the Bankruptcy

22   Code; provided, however, that the liens, claims, rights, remedies, and protections granted to Lender

23   under this Stipulation shall not be modified by any subsequent order of the Bankruptcy Court,

24   unless Lender agrees otherwise.

25                            **Miscellaneous**

26       33.    Upon entry of an order approving this Stipulation, the provisions hereof shall be

27   immediately binding upon and inure to the benefit of Lender, the Debtor and its respective

28   successors and assigns, including any trustees or other fiduciary hereafter appointed in the Chapter

Stipulation Authorizing Use of Cash Collateral        -14-
Between Debtor and Secured Creditors

Case 9:15-bk-10251-DS    Doc 119    Filed 08/07/15    Entered 08/07/15 17:08:17    Desc
Case 9:15-bk-10251-DS    Main Document    Filed 02/12/15    Page 48 of 80    Entered 02/12/15 15:13:12    Desc
Exhibit Exhibits A and B    Page 15 of 43

11 case or in any superseding Chapter 7 case as a legal representative of the Debtor or the Debtor's estate.

34.    No rights are intended to be created hereunder for the benefit of any third party or creditor or any direct or indirect incidental beneficiary except as specifically provided herein.

35.    Lender has entered into this Stipulation and consented to the use of the Cash Collateral in good faith and is entitled to all of the protections provided to such an entity.

36.    All notices required to or permitted to be given to the Debtor under this Stipulation shall be addressed as follows:

> Peter Susi
> psusi@hbsb.com
> Jonathan Gura
> jgura@hbsb.com
> Hollister & Brace
> 1126 Santa Barbara Street
> Santa Barbara, CA 93102
> Telephone: (805) 896-0454; Facsimile: (805) 965-0329

All notices required to or permitted to be given to Lender under this Stipulation shall be addressed as follows:

> René Lastreto II
> rl2@lrplaw.net
> Michael J. Gomez
> mjg@lrplaw.net
> Lang, Richert & Patch
> 5200 North Palm Avenue, Fourth Floor
> Fresno, CA 93704
> Telephone: (559) 228-6700; Facsimile: (559) 228-6727

The above addresses may be changed effective upon receipt of a new address. Any notice required herein or permitted to be given shall be in writing and be personally served or sent by facsimile (upon confirmation of receipt) or United States mail and shall be deemed given when sent or, if mailed, when deposited in the United States mail so long as it is properly addressed. All notices and reports required hereunder shall also be sent to counsel for any official committee.

37.    The Bankruptcy Court shall retain exclusive jurisdiction over the subject matter of this Stipulation in order to resolve any dispute in connection with the rights and duties specified hereunder.

Case 9:15-bk-10251-DS   Doc 119   Filed 08/07/15   Entered 08/07/15 17:08:17   Desc
Case 9:15-bk-10251-DS   Main Document   Filed 02/12/15   Page 49 of 80   Entered 02/12/15 15:13:12   Desc
Exhibit Exhibits A and B   Page 16 of 43

38.     The Debtor is authorized and directed to perform all acts and execute and comply with the terms of such other document, instruments and agreements necessary to effectuate the terms and conditions of this Stipulation.

39.     If the Debtor or any other parties-in-interest, including but not limited to, their creditors or any statutory committee challenge the validity of the Loan Documents and the claims of the Lender arising therefrom, including the security interests and liens on the Prepetition Collateral, neither the Cash Collateral nor the proceeds from any sale, transfer, disposition or hypothecation of the Prepetition Collateral or Postpetition Collateral shall be used to fund the challenge.

40.     Within two (2) calendar days of the execution of this Stipulation, notice of the terms of this Stipulation shall be served by the Debtor upon all required parties in accordance with Federal Rule of Bankruptcy Procedure 4001(d) and the Debtor shall file a motion with the Bankruptcy Court to approve the Stipulation with a final hearing, if necessary, to be held by no later than March 11, 2015.

41.     Any order approving this Stipulation shall be effective immediately upon its entry, and shall be effective nunc pro tunc to the Petition Date.

42.     Except as otherwise expressly provided in this Stipulation, the terms and conditions of the Loan Documents shall remain in full force and effect and Lender shall have all of its rights and remedies thereunder, subject to the provisions of Bankruptcy Code and any orders of this Court.

43.     This Stipulation may be executed in original, facsimile, or e-mail signature and in counterpart copies, and this Stipulation shall be deemed fully executed and effective when all parties have executed and possess a counterpart, even if no single counterpart contains all signatures.

1

2

3    IT IS SO STIPULATED:

4    DATED: February 1, 2015

HOLLISTER & BRACE

By: _____
Peter Susi
Jonathan Gura, Counsel for
CLEARWATER NURSERY, INC.,
Debtor and Debtor-in-Possession

DATED: February 12, 2015

LANG, RICHERT & PATCH, P.C.

By: _____
Michael J. Gomez
Attorneys for Secured Creditors
FARM CREDIT WEST, FLCA and
FARM CREDIT WEST, PCA

Stipulation Authorizing Use of Cash Collateral                -17-
Between Debtor and Secured Creditors

Case 9:15-bk-10251-DS   Doc 119   Filed 08/07/15   Entered 08/07/15 17:08:17   Desc
Case 9:15-bk-10251-DS   Main Document   Doc 9   Filed 02/12/15   Page 51 of 80   Entered 02/12/15 15:13:12   Desc
Exhibit Exhibits A and B   Page 18 of 43

# WEEKLY CASH FORECAST

| | Week 1 2/20/2015 | Week 2 2/27/2015 | Week 3 3/6/2015 | Week 4 3/13/2015 | Week 5 3/20/2015 | Week 6 3/27/2015 | Week 7 4/3/2015 | Week 8 4/10/2015 | Week 9 4/17/2015 | Week 10 4/24/2015 | Week 11 5/1/2015 | Week 12 5/8/2015 | Week 13 5/15/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ending** | | | | | | | | | | | | | |
| **BEGINNING CASH BALANCE** | $ - | 63,987.14 | 56,295 | 16,990 | 138,648 | 30,446 | 101,864 | 49,035 | 31,765 | 33,830 | 177,937 | 175,002 | 302,682 |
| **CASH RECEIPTS FROM A/R** | $ 141,846 | $ 202,760 | $ 270,706 | $ 321,462 | $ 178,360 | $ 221,251 | $ 284,214 | $ 224,214 | $ 224,214 | $ 224,214 | $ 224,214 | $ 380,074 | $ 380,074 |
| **PRODUCTION & DISTRIBUTION EXPENSE** | | | | | | | | | | | | | |
| Production Labor | | | | | | | | | | | | | |
| - Insiders | 77,553 | | 68,156 | | 68,156 | | 54,378 | | 54,378 | | 54,378 | | 62,891 |
| - Non-Insider | | | | | 9,000 | | | | | | | | |
| Maintenance Labor | 6,354 | | 6,354 | | 6,354 | 6,354 | 5,296 | | 5,296 | | 5,296 | 54,378 | 6,517 |
| Warehouse/Shipping Labor | 5,789 | | 7,718 | | 7,718 | 7,718 | 3,939 | | 3,939 | | 5,296 | 5,296 | 3,245 |
| Harvesting/Packing Labor | 46,255 | | 62,321 | | 62,321 | 62,321 | 34,702 | | 34,702 | | 3,939 | 3,939 | 18,245 |
| Harvesting/Shipping Labor (Product) | 17,765 | | 25,635 | | 25,635 | 25,635 | 25,662 | | 34,702 | | 34,702 | 34,702 | 33,667 |
| Repairs & Maintenance | 4,202 | 4,202 | 4,095 | 4,095 | 4,095 | 4,095 | 3,356 | 3,356 | 3,356 | 3,356 | 25,662 | 25,662 | 4,003 |
| Seed & Plant Material | 35,662 | 35,662 | 11,899 | 11,899 | 11,899 | 11,899 | 8,269 | 8,269 | 8,269 | 8,269 | 3,356 | 3,356 | 5,187 |
| Production Material & Supply | 19,052 | 19,052 | 9,174 | 9,174 | 9,174 | 9,174 | 6,809 | 6,809 | 6,809 | 6,809 | 8,269 | 8,269 | 6,168 |
| Soil Materials | 8,859 | 8,859 | 4,341 | 4,341 | 4,341 | 4,341 | 3,623 | 3,623 | 3,623 | 3,623 | 6,809 | 6,809 | 4,718 |
| Chemicals & Fertilizers | 9,519 | 9,519 | 7,409 | 7,409 | 7,409 | 7,409 | 7,013 | 7,013 | 7,013 | 7,013 | 3,623 | 3,623 | 10,774 |
| Shipping Materials & Supplies | 29,603 | 29,603 | 25,553 | 50,653 | 25,553 | 76,553 | 31,022 | 31,022 | 31,022 | 31,022 | 7,013 | 7,013 | 16,837 |
| Upgrade material costs | 3,650 | 3,650 | 1,925 | 1,925 | 1,925 | 1,925 | 1,540 | 1,540 | 1,540 | 1,540 | 31,022 | 31,022 | 1,925 |
| Sales Tax | 894 | 894 | 329 | 329 | 329 | 329 | 234 | 234 | 234 | 234 | 1,540 | 1,540 | 503 |
| Freight-Out | 18,405 | 18,405 | 8,510 | 8,510 | 8,510 | 8,510 | 9,199 | 9,199 | 9,199 | 9,199 | 234 | 234 | 6,455 |
| Rent | 35,159 | | | 35,159 | | | | 35,159 | | | 9,199 | 35,159 | |
| - PLIP | 57,731 | | 57,731 | | | | 57,731 | | | | | 57,731 | 57,731 |
| - Adequate Protection FCW | 1,000 | | 1,000 | | | | 1,000 | | | | | 1,000 | |
| - Short-term land lease | 934 | 934 | | | | | | | | | | | |
| Gas & Oil Vehicles | | | | 1,129 | 1,129 | 1,129 | 487 | 487 | 487 | 487 | 487 | 492 | 492 |
| Heating Gas | | | | 45,568 | | | | 35,601 | | | | 27,105 | |
| Electricity | 15,918 | 71,000 | | 15,234 | | | | 12,977 | | | | 14,757 | |
| Payroll Taxes - Excl Admin & Sales & Leg | 6,378 | 6,378 | 6,378 | | 6,378 | | 5,316 | | 5,316 | | 5,316 | | 6,378 |
| Insurance - Includes Admin & Sales W Comp Nat Logistics | 19,580 | 19,630 | 19,630 | | | | 20,896 | 82,892 | | | | 19,723 | |
| Taxes & Licenses | 90 | 90 | 90 | | | | | | | | | 90 | |
| **TOTAL PROD & DIST EXPENSE** | $ 420,761 | $ 202,179 | $ 330,176 | $ 195,324 | $ 200,724 | $ 124,363 | $ 282,721 | $ 238,380 | $ 202,093 | $ 71,552 | $ 203,093 | $ 212,627 | $ 190,253 |
| **SALES EXPENSE** | | | | | | | | | | | | | |
| Sales Salaries | 8,637 | | 8,737 | | 8,737 | | 7,198 | | 7,198 | | 7,198 | | 8,737 |
| Sales PR Taxes | 959 | | 959 | | 959 | | 799 | | 799 | | 799 | | 959 |
| Floral Shows | | | | | | | | | | | | | |
| Advertising & Promotions | 2,250 | 2,250 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | | |
| Commissions (Allertson's) | 750 | 750 | 1,050 | 1,050 | 1,050 | 1,050 | 550 | 550 | 550 | 550 | 500 | 713 | 713 |
| | $ 12,596 | $ 3,000 | $ 11,396 | $ 1,700 | $ 11,396 | $ 1,700 | $ 9,447 | $ 1,450 | $ 9,447 | $ 1,450 | $ 9,447 | $ 2,463 | $ 12,159 |
| **Travel & Entertainment** | | | | | | | | | | | | | |
| Sales Travel | 3,098 | 3,098 | 1,319 | 1,319 | 1,319 | 1,319 | 635 | 635 | 635 | 635 | 635 | 367 | 367 |
| Corporate Travel | 500 | 500 | 500 | 500 | 500 | 500 | 400 | 400 | 400 | 400 | 400 | 125 | 125 |
| Sales Meals & Entertainment | 1,495 | 1,495 | 576 | 576 | 576 | 576 | 407 | 407 | 407 | 407 | 407 | 265 | 265 |
| Corporate Meals | 200 | 200 | 200 | 200 | 200 | 200 | 160 | 160 | 160 | 160 | 160 | 75 | 75 |
| | $ 5,293 | $ 5,293 | $ 2,596 | $ 2,596 | $ 2,596 | $ 2,596 | $ 1,602 | $ 1,602 | $ 1,602 | $ 1,602 | $ 1,602 | $ 832 | $ 832 |
| **TOTAL SALES EXPENSE** | $ 17,889 | $ 8,293 | $ 13,992 | $ 4,296 | $ 13,992 | $ 4,296 | $ 11,048 | $ 3,052 | $ 11,048 | $ 3,052 | $ 11,048 | $ 3,234 | $ 12,990 |

EXHIBIT 34

Case 9:15-bk-10251-DS   Doc 119   Filed 08/07/15   Entered 08/07/15 17:08:17   Desc
Case 9:15-bk-10251-DS   Doc ... Filed 02/... Page 52 of 80   Entered 02/12/15 15:13:12   Desc
Main Document
Exhibit Exhibits A and B   Page 19 of 43

## WEEKLY CASH FORECAST

| | Week 1 2/20/2015 | Week 2 2/27/2015 | Week 3 3/6/2015 | Week 4 3/13/2015 | Week 5 3/20/2015 | Week 6 3/27/2015 | Week 7 4/3/2015 | Week 8 4/10/2015 | Week 9 4/17/2015 | Week 10 4/24/2015 | Week 11 5/1/2015 | Week 12 5/8/2015 | Week 13 5/15/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ending** | | | | | | | | | | | | | |
| **GENERAL & ADMINISTRATION EXPENSE** | | | | | | | | | | | | | |
| Administrative Salaries | | | | | | | | | | | | | |
| - Insiders | | | | | | | | | | | | | |
| - Non-Insiders | 3,053 | | 15,071 | | 7,536 | | 5,024 | | 5,024 | | 5,024 | | 7,536 |
| Payroll Taxes - Admin | 1,075 | | 3,053 | | 3,053 | | 2,035 | | 2,035 | | 2,035 | | 3,053 |
| Estate Professional Fees | | | 1,075 | | 1,075 | | 896 | | 896 | | 896 | | 1,075 |
| US Trustee, Court & Related Costs | 2,000 | | 10,000 | | | | | | | | 5,000 | | |
| 401K Administration | | | | | | | 550 | | | | | | |
| Met L/k Quarterly | | | | | | | | | | | | | |
| Dues, Subscriptions & Education | 314 | | 415 | | | 184 | 53 | 53 | 53 | 53 | 53 | 101 | 101 |
| Telephone | 2,216 | | 184 | 184 | 184 | | 2,216 | | | | | 2,216 | |
| Office Expenses | 1,750 | | 2,216 | | | | | | | 1,650 | | 1,800 | |
| Employee Programs | 25 | | 1,550 | | | | 25 | | | | | 65 | |
| Computer Expense | 3,801 | | 465 | | | | | | | 3,801 | | 4,566 | |
| Medical Expenses | 60 | | 4,341 | | | | 60 | | | | | 60 | |
| Bank Service Charges | 700 | | 60 | | | | 700 | | | | | 650 | |
| Interest Expense | 6,634 | | 700 | | | | 6,634 | | | | | 6,634 | |
| - Adequate Protection FCW | 17,581 | | 6,634 | | | | 17,581 | | | | | 17,581 | |
| - Post petition Interest | | | 17,581 | | | | 2,500 | | | | | 2,500 | |
| Royalty Expense | | | 2,500 | | | 21,000 | - | | | | | | |
| **TOTAL G&A EXPENSE** | 39,209 | - | 65,844 | 184 | 11,847 | 21,184 | 43,274 | 53 | 8,007 | 5,504 | 13,007 | 36,473 | 11,764 |
| **TOTAL EXPENSE** | 477,659 | 210,472 | 410,012 | 199,803 | 285,563 | 148,842 | 337,043 | 241,464 | 222,149 | 80,107 | 227,149 | 252,394 | 215,008 |
| CASH FROM OPERATIONS | (336,013) | (7,692) | (139,206) | 121,659 | (108,220) | 71,419 | (52,829) | (17,270) | 2,865 | 144,107 | (2,935) | 127,680 | 165,086 |
| BORROWED FUNDS | 400,000 | 100,000 | 100,000 | | | | | | | | | | |
| ENDING CASH BALANCE | 63,987 | 56,295 | 16,590 | 138,648 | 20,446 | 101,864 | 49,035 | 31,765 | 33,830 | 177,937 | 175,002 | 302,682 | 467,748 |
| INVENTORY | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 |
| OPEN ACCOUNTS RECEIVABLE | 1,229,552 | 1,289,695 | 1,239,256 | 1,259,062 | 1,359,969 | 1,418,976 | 1,438,821 | 1,516,566 | 1,598,512 | 1,678,357 | 1,758,202 | 1,605,806 | 1,453,409 |

1  René Lastreto II, #100993
   rl2@lrplaw.net
2  Michael J. Gomez, #251571
   mjg@lrplaw.net
3  Lang, Richert & Patch
   Post Office Box 40012
4  Fresno, California 93755-0012
   (559) 228-6700 Phone
5  (559) 228-6727 Fax

6  Attorneys for Secured Creditors
   FARM CREDIT WEST, FLCA and
7  FARM CREDIT WEST, PCA

8
9              UNITED STATES BANKRUPTCY COURT
10             CENTRAL DISTRICT OF CALIFORNIA
11                    NORTHERN DIVISION

12  In re                          Case No.  9:bk-15-10251-DS

13  Clearwater Nursery, Inc.,      Chapter 11

14            Debtor.              SECOND STIPULATION FOR
                                   INTERIM USE OF CASH
15                                 COLLATERAL AND GRANT OF
                                   ADEQUATE PROTECTION
16
17
18
19
20        This Stipulation is made by and between Clearwater Nursery, Inc., Debtor and Debtor-in-

21  Possession (the "Debtor"), on the one hand, and Secured Creditors Farm Credit West, FLCA, and

22  Farm Credit West, PCA (together with FLCA, "Lender"), on the other hand.  The Debtor and

23  Lender hereby stipulate and agree as follows:

                            RECITALS
24
25        a.      On February 11, 2015 (the "Petition Date"), the Debtor filed a petition for relief

26  under Chapter 11 of the United States Bankruptcy Code.

27        b.      On February 12, 2015 in the above-captioned case, the Debtor filed a "*Stipulation

28  *For Interim Use of Cash Collateral and Grant of Adequate Protection*" docketed  as ECF No. 9

EXHIBIT 1

EXHIBIT 3

7

1  (the "First Stipulation"). The Recitals of the First Stipulation are incorporated by reference.

2        c.        The above-captioned Court approved the First Stipulation on an interim and on a

3  final basis pursuant to orders entered on February 19, 2015, and March 27, 2015, docketed as ECF

4  Nos. 38 and 62.

5        d.        By its terms, the First Stipulation naturally expired on May 15, 2015.

6        e.        The Debtor desires to continue operations, collect Cash Collateral, and utilize the

7  Cash Collateral to pay the ordinary and necessary expenses related to the preservation and

8  maintenance of its operations. Lender consents to Debtor's use of its Cash Collateral on the terms

9  and conditions set forth herein.

10        f.        This Stipulation shall be effective nunc pro tunc as of May 15, 2015. Except as

11  otherwise provided herein, the terms of this Stipulation shall be valid and binding upon the Debtor,

12  all successors in interest to the Debtor, all creditors of the Debtor, any statutory Committee

13  appointed in this case and all other parties in interest from and after the Petition Date, including any

14  trustees appointed under Chapter 7 or Chapter 11 of the Bankruptcy Code, or any examiner

15  appointed with or without expanded powers.

16        NOW, THEREFORE, the Debtor and Lender hereby agree as follows:

17                                **STIPULATION**

18        I.        The terms of the First Stipulation are incorporated by reference, except as modified

19  herein.

20        II.        Paragraph 1 of the First Stipulation is superseded and replaced as follows:

21        This Stipulation shall be in effect until the earlier of August 14, 2015 (subject to
    extensions as agreed upon in writing between Lender and the Debtor pursuant to
22        paragraph 32 below) (the "Interim Period"), or the Termination Date (as
    "Termination Date" is defined below in paragraph 29), except as provided in
23        paragraphs 24 through 26.

24        III.        Paragraph 3 of the First Stipulation is modified in two narrow respects. First, it is

25  altered by replacing the Budget identified as Exhibit "1" to the First Stipulation with the budget

26  attached hereto as Exhibit "1" which runs through August 14, 2015. Second, it is modified by

27  allowing the payment of the administrative expense of the Debtor's counsel as set forth in the

28  Budget. No other use of Cash Collateral collected from either the Prepetition Collateral or the

---

8

1    Postpetition Collateral to pay the administrative expenses of professional fees is authorized.

2        IV.    Paragraph 6 of the First Stipulation is superseded and replaced as follows:

3        As additional adequate protection, the Debtor shall pay Farm Credit West, PCA
         adequate protection payments consisting of monthly, interest-only payments at the
4        non-default rate of interest on Loan No. 3644715-201, estimated at $17,093.59
         (based on interest accrual of $561.98 per diem); and additional monthly adequate
5        protection payments totaling $57,731.28 to Farm Credit West, FLCA, consisting of
         regular monthly principal and interest payments on Loan Nos. 0163155-101,
6        0163740-101, 0164380-101, 3634531-101, and 3643840-101 (the "Additional
         Adequate Protection").   The Debtor will note in its books and records each
7        Additional Adequate Protection payment as a portion of the rent paid to Jafroodi
         Properties, L.P. The first adequate protection payment shall be due by no later than
8        February 20, 2015. Each successive adequate protection payment shall be paid by
         the first of each month, commencing on March 1, 2015. Debtor authorizes Farm
9        Credit West, PCA to deduct the adequate protection payments via ACH transfer
         from its debtor-in-possession bank accounts on the first of the month or the next
10       business day should the first of the month be a legal holiday.  To the extent the
         Debtor's regular monthly principal and interest payments on Loan Nos. 0163155-
11       101, 0163740-101, 0164380-101, 3634531-101, and 3643840-101 decrease during
         the Interim Period due to a sale of collateral and the payment of the sale proceeds
12       to the loans, the reduction in the $57,731.28 Additional Adequate Protection
         normally paid to Farm Credit West, FLCA will be paid to Farm Credit West, PCA
13       as adequate protection payments.

14       V.    Paragraph 10 of the First Stipulation is superseded and replaced as follows:

15       As additional adequate protection, the Debtor shall provide Lender with a 13 week
         budget for the period of August 15, 2015, through November 13, 2015, in the same
16       format as the Budget, by no later than October 16, 2015.

17       VI.    Paragraph 16b of the First Stipulation is not incorporated into this Stipulation.

18       VII.    Paragraph 40 of the First Stipulation is superseded and replaced as follows:

19       Within two (2) calendar days of the execution of this Stipulation, notice of the terms
         of this Stipulation shall be served by the Debtor upon all required parties in
20       accordance with Federal Rule of Bankruptcy Procedure 4001(d) and the Debtor shall
         file a motion with the Bankruptcy Court to approve the Stipulation with a final
21       hearing, if necessary, to be held by no later than June 22, 2015.

22       VIII.    Paragraph 41 of the First Stipulation is superseded and replaced as follows:

23       Any order approving this Stipulation shall be effective immediately upon its entry,
         and shall be effective nunc pro tunc to May 15, 2015.

24

25       IX.    All other terms and conditions of the First Stipulation shall remain unaltered and are

26   the terms of this Stipulation.

27       X.    This Stipulation may be executed in original, facsimile, or e-mail signature and in

28   counterpart copies, and this Stipulation shall be deemed fully executed and effective when all

---

9

1    parties have executed and possess a counterpart, even if no single counterpart contains all

2    signatures.

3

4      IT IS SO STIPULATED:

5

6    DATED: May 22 2015            HOLLISTER & BRACE

7

8                             By: _____

9                                Peter Susi
                                Jonathan Gura, Counsel for

10                           CLEARWATER NURSERY, INC.,
                          Debtor and Debtor-in-Possession

11

12    DATED: May 21 2015            LANG, RICHERT & PATCH, P.C.

13

14                             By: _____

15                                   Michael J. Gomez
                                Attorneys for Secured Creditors

16                           FARM CREDIT WEST, FLCA and
                          FARM CREDIT WEST, PCA

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

**HOLLISTER & BRACE**
A Professional Corporation
ATTORNEYS AT LAW
1126 SANTA BARBARA STREET
SANTA BARBARA, CALIFORNIA 93101
Telephone: (805) 963-6711
Facsimile: (805)
Jonathan G. Gura, Bar No. 214240
Peter Susi, Bar No. 62957

Attorneys for Debtor and Debtor-in-Possession

(SPACE BELOW FOR FILING STAMP ONLY)

FILED & ENTERED

FEB 19 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY handy    DEPUTY CLERK

8

9

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION**

10

11

12

13

14

15

16

17

18

19

20

21

| | |
|---|---|
| In re | ) BK No. 9:15-bk-10251-DS |
| | ) |
| CLEARWATER NURSERY INC., | ) Chapter 11 |
| | ) |
| Debtor. | ) ORDER GRANTING DEBTOR'S |
| | ) EMERGENCY MOTION FOR ORDER: |
| | ) (1)AUTHORIZING USE OF CASH |
| | ) COLLATERAL; (2) AUTHORIZING |
| | ) POSTPETITION FINANCING; AND |
| | ) (3) GRANTING SUPERPRIORITY |
| | ) EXPENSE CLAIMS |
| | ) |
| | ) Date:    February 18, 2015 |
| | ) Time:    1:30 p.m. |
| | ) Place:   Courtroom 202 |
| | )          1415 State Street |
| | )          Santa Barbara, CA |
| | ) |
| | ) |
| | ) |
| | ) |

22

23

24

25

26

27

28

- 1 -

EXHIBIT 4

1       The "*Debtor's Emergency Motion For Order Authorizing Use*

2  *of Cash Collateral; Authorizing Postpetition Financing; and*

3  *Granting Superpriority Expense Claims*" (the "Motion," Docket

4  No. 9) filed by Clearwater Nursery, Inc. (the "Debtor") came

5  for hearing on shortened time at the request of the Debtor on

6  February 18, 2015, at 1:30 p.m. in Courtroom 202 of the above-

7  titled Court, the Honorable Deborah J. Saltzman, United States

8  Bankruptcy Judge presiding.   Appearances were as set forth in

9  the record for the hearing.

10       Based upon the Motion and the supporting papers, the files

11  and records of this case, and the arguments and statements of

12  counsel at the time of the hearing,

13       **THE COURT FINDS AS FOLLOWS:**

14       A.   Notice of the Motion was appropriate pursuant to the

15  Order Shortening Time [Docket No. 26], Local Bankruptcy Rule

16  9075-1, and Federal Rules of Bankruptcy Procedure 2002 and

17  4001(d);

18       B.   The Debtor has established the business and

19  operational needs of the estate for use of the cash collateral

20  of and financing from Farm Credit West, FLCA and Farm Credit

21  West, PCA ("FCW") in the ordinary and necessary course of the

22  estate's business on a weekly basis, including, without

23  limitation, to prevent the immediate and irreparable harm to

24  the estate pending a final hearing on the Motion;

25       C.   The provisions of the "*Stipulation For Interim Use of*

26  *Cash Collateral and Grant of Adequate Protection*," (the

27  "Stipulation"), the Debtor-in-Possession Financing Letter

28

1    Agreement dated February 13, 2015 (the "Agreement"), and the

2    Budget appended to the Motion are reasonable;

3       D.    The Debtor has established the prima facie need of

4    FCW for and rights to the grant of adequate protection for the

5    Debtor's use of FCW's cash collateral for post-petition

6    operations during the period of time covered by the Budget; and

7       E.    Other good cause supports granting the Motion.

8    **WHEREFORE, THE COURT ORDERS AS FOLLOWS:**

9       1.    The Motion is granted.

10       2.    The Stipulation, the Agreement, and the Debtor's use

11    of FCW's cash collateral pursuant to the terms of the

12    Stipulation and the Agreement are approved in all respects as

13    set forth in the Agreement and the Stipulation.    All of the

14    terms, covenants, conditions, protections, agreements,

15    reaffirmations, releases, and grants set forth in the

16    Stipulation and the Agreement are ordered as set forth therein,

17    including, without limitation, the replacement liens, the

18    super-priority liens, and the super-priority expenses of

19    administration pursuant to 11 U.S.C. §§ 105, 361, 362, 363,

20    364(c)(1), 364(d), 503(b), and 507(b).

21       3.    The Debtor shall operate in conformity with the

22    Budget and the Eligible Collateral calculation pursuant to the

23    terms of the Stipulation and the Financing Agreement.

24       4.    FCW is entitled to the grants of adequate protection

25    as set forth in the Stipulation and the protections,

26    agreements, reaffirmations, releases, and grants set forth in

27    the Agreement.

28

-3-

1       5.   A final hearing shall be conducted on the Motion on

2   March 5, 2015, at 10:30 a.m. in Courtroom 202 of the above-

3   titled Court.  Any and all further responses or oppositions to

4   the Motion shall be filed with the Clerk of the Court and

5   served upon counsel for the Debtor and FCW, and the United

6   States Trustee, no later than February 26, 2015.

7

8                                         ###

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Date: February 19, 2015

25                                  Deborah J. Saltzman
                                  United States Bankruptcy Judge

26

27

28

1

**HOLLISTER & BRACE**
A Professional Corporation
ATTORNEYS AT LAW
1126 SANTA BARBARA STREET
SANTA BARBARA, CALIFORNIA 93101
Telephone:  (805) 963-6711
Facsimile:   (805)
Jonathan G. Gura, Bar No. 214240
Peter Susi, Bar No. 62957

Attorneys for Debtor and Debtor-in-Possession

2

3

4

5

6

(SPACE BELOW FOR FILING STAMP ONLY)

```
FILED & ENTERED

FEB 19 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY handy    DEPUTY CLERK
```

7

8               **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION**

10

11   In re                              )   BK No. 9:15-bk-10251-DS
                                        )
12   CLEARWATER NURSERY INC.,           )   Chapter 11
                                        )
13                Debtor.               )   ORDER GRANTING DEBTOR'S
                                        )   EMERGENCY MOTION FOR ORDER:
14                                      )   (1) AUTHORIZING USE OF CASH
                                        )   COLLATERAL; (2) AUTHORIZING
15                                      )   POSTPETITION FINANCING; AND
                                        )   (3) GRANTING SUPERPRIORITY
16                                      )   EXPENSE CLAIMS
                                        )
17                                      )   Date:    February 18, 2015
                                        )   Time:    1:30 p.m.
18                                      )   Place:   Courtroom 202
                                        )            1415 State Street
19                                      )            Santa Barbara, CA
                                        )
20                                      )
                                        )
21                                      )

22

23

24

25

26

27

28

- 1 -

EXHIBIT 4

1        The "*Debtor's Emergency Motion For Order Authorizing Use*

2   *of Cash Collateral; Authorizing Postpetition Financing; and*

3   *Granting Superpriority Expense Claims*" (the "Motion," Docket

4   No. 9) filed by Clearwater Nursery, Inc. (the "Debtor") came

5   for hearing on shortened time at the request of the Debtor on

6   February 18, 2015, at 1:30 p.m. in Courtroom 202 of the above-

7   titled Court, the Honorable Deborah J. Saltzman, United States

8   Bankruptcy Judge presiding.    Appearances were as set forth in

9   the record for the hearing.

10       Based upon the Motion and the supporting papers, the files

11  and records of this case, and the arguments and statements of

12  counsel at the time of the hearing,

13       **THE COURT FINDS AS FOLLOWS:**

14       A.    Notice of the Motion was appropriate pursuant to the

15  Order Shortening Time [Docket No. 26], Local Bankruptcy Rule

16  9075-1, and Federal Rules of Bankruptcy Procedure 2002 and

17  4001(d);

18       B.    The Debtor has established the business and

19  operational needs of the estate for use of the cash collateral

20  of and financing from Farm Credit West, FLCA and Farm Credit

21  West, PCA ("FCW") in the ordinary and necessary course of the

22  estate's business on a weekly basis, including, without

23  limitation, to prevent the immediate and irreparable harm to

24  the estate pending a final hearing on the Motion;

25       C.    The provisions of the "*Stipulation For Interim Use of*

26  *Cash Collateral and Grant of Adequate Protection*," (the

27  "Stipulation"),  the  Debtor-in-Possession  Financing  Letter

28

1  Agreement dated February 13, 2015 (the "Agreement"), and the

2  Budget appended to the Motion are reasonable;

3      D.   The Debtor has established the prima facie need of

4  FCW for and rights to the grant of adequate protection for the

5  Debtor's use of FCW's cash collateral for post-petition

6  operations during the period of time covered by the Budget; and

7      E.   Other good cause supports granting the Motion.

8  **WHEREFORE, THE COURT ORDERS AS FOLLOWS:**

9      1.   The Motion is granted.

10     2.   The Stipulation, the Agreement, and the Debtor's use

11  of FCW's cash collateral pursuant to the terms of the

12  Stipulation and the Agreement are approved in all respects as

13  set forth in the Agreement and the Stipulation.  All of the

14  terms, covenants, conditions, protections, agreements,

15  reaffirmations, releases, and grants set forth in the

16  Stipulation and the Agreement are ordered as set forth therein,

17  including, without limitation, the replacement liens, the

18  super-priority liens, and the super-priority expenses of

19  administration pursuant to 11 U.S.C. §§ 105, 361, 362, 363,

20  364(c)(1), 364(d), 503(b), and 507(b).

21     3.   The Debtor shall operate in conformity with the

22  Budget and the Eligible Collateral calculation pursuant to the

23  terms of the Stipulation and the Financing Agreement.

24     4.   FCW is entitled to the grants of adequate protection

25  as set forth in the Stipulation and the protections,

26  agreements, reaffirmations, releases, and grants set forth in

27  the Agreement.

28

-3-

1       5.    A final hearing shall be conducted on the Motion on

2   March 5, 2015, at 10:30 a.m. in Courtroom 202 of the above-

3   titled Court.   Any and all further responses or oppositions to

4   the Motion shall be filed with the Clerk of the Court and

5   served upon counsel for the Debtor and FCW, and the United

6   States Trustee, no later than February 26, 2015.

7

8                                           ###

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Date: February 19, 2015

25                                    Deborah J. Saltzman
                                     United States Bankruptcy Judge
26

27

28

                                  - 4 -

1   Peter Susi, State Bar No. 62957
    Email: psusi@hbsb.com
2   Jonathan G. Gura, State Bar No. 214240
    Email: jgura@hbsb.com
3   **HOLLISTER & BRACE**, A Professional Corporation
    1126 Santa Barbara Street
4   Santa Barbara, CA 93101
    Telephone: (805) 963-6711
5   Facsimile: (805) 965-0329

6   Attorneys for Debtors and Debtors-in-Possession

(SPACE BELOW FOR FILING STAMP ONLY)

**FILED & ENTERED**

MAR 27 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY chackel   DEPUTY CLERK

7

8                **UNITED STATES BANKRUPTCY COURT**

9         **CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION**

10

11   In re                              )   BK No. 9:15-bk-10251-DS
                                        )
12   CLEARWATER NURSERY, INC.,          )   Chapter 11
                                        )
13          Debtors.                    )   **ORDER GRANTING DEBTOR'S**
                                        )   **EMERGENCY MOTION FOR ORDER ON**
14                                      )   **A FINAL BASIS:**
                                        )
15                                      )   **(1) AUTHORIZING USE OF CASH**
                                        )   **COLLATERAL;**
16                                      )
                                        )   **(2) AUTHORIZING POSTPETITION**
17                                      )   **FINANCING; AND**
                                        )
18                                      )   **(3) GRANTING SUPERPRIORITY**
                                        )   **EXPENSE CLAIMS**
19                                      )
                                        )   DATE:  March 5, 2015
20                                      )   TIME:  10:30 am
                                        )   CTRM:  202
21                                      )          1415 State Street
                                        )          Santa Barbara, CA
22   _____

23       The Court, having considered the relief sought in the

24   "*Debtor's Emergency Motion For Order Authorizing Use of Cash*

25   *Collateral; Authorizing Postpetition Financing; and Granting*

26   *Superpriority Expense Claims*" (the "Motion") filed by

27   Clearwater Nursery, Inc. (the "Debtor"), at the emergency

28   hearing on February 18, 2015, at 1:30 p.m., in Courtroom 202 of

**EXHIBIT 5**

1  the above-titled Court, the Honorable Deborah J. Saltzman,

2  United States Bankruptcy Judge presiding, and having granted

3  the Motion on an interim basis, and finding that notice is

4  adequate, and other good cause appearing therefor,

5      **IT IS HEREBY ORDERED:**

6      1.    The Motion and the appended "*Stipulation for Interim*

7  *Use of Cash Collateral and Grant of Adequate Protection,*" (the

8  "Stipulation") and the Debtor-in-Possession Financing Letter

9  Agreement dated February 13, 2015 (the "Agreement") are

10  approved in their entirety on a final basis.

11      2.    The Budget, and otherwise known as the 13-week Cash

12  Flow Projection, referenced in the Motion, the Stipulation, and

13  the Agreement is replaced and superseded by the budget attached

14  hereto as **Exhibit 1** to reflect the minor modifications

15  announced in open court on March 5, 2015.

16  ///

17

18  ///

19

20  ///

21

22  ///

23

24  ///

25

26  ///

27

28  ///

1       3.    All of the terms and conditions of the interim order

2    approving the Motion entered in this case on February 19, 2015

3    [Docket No. 38] continue in full force and effect.

4

5    **APPROVED AS TO FORM:**

6    Lang, Richert & Patch

7

8    _____

9    Michael J. Gomez
        Attorneys for Secured Creditors,
        FARM CREDIT WEST, PCA, and

10    FARM CREDIT WEST, FLCA

11

12

13                       ###

14

15

16

17

18

19

20

21

22

23

24    Date: March 27, 2015

25                  Deborah J. Saltzman
                  United States Bankruptcy Judge

26

27

28

## WEEKLY CASH FORECAST

| | Forecast Week 1 2/20/2015 | Forecast Week 2 2/27/2015 | Forecast Week 3 3/6/2015 | Forecast Week 4 3/13/2015 | Forecast Week 5 3/20/2015 | Forecast Week 6 3/27/2015 | Forecast Week 7 4/3/2015 | Forecast Week 8 4/10/2015 | Forecast Week 9 4/17/2015 | Forecast Week 10 4/24/2015 | Forecast Week 11 5/1/2015 | Forecast Week 12 5/8/2015 | Forecast Week 13 5/15/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BEGINNING CASH BALANCE | 0.01 | 62,154.15 | 54,462 | 9,990 | 120,316 | 76,339 | 21,536 | 4,266 | 8,331 | 150,438 | 144,670 | 273,350 | 273,350 |
| CASH RECEIPTS FROM A/R | 141,946 | 202,760 | 270,705 | 321,462 | 178,360 | 221,261 | 284,214 | 224,214 | 224,214 | 224,214 | 224,214 | 380,074 | 380,074 |
| **PRODUCTION & DISTRIBUTION EXPENSE** | | | | | | | | | | | | | |
| *Production Labor* | | | | | | | | | | | | | |
| -Insiders | 77,553 | | 68,156 | | 9,000 | | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 |
| -Non-Insiders | 57,731 | | | | 88,156 | | 54,378 | 54,378 | 54,378 | 54,378 | 54,378 | 54,378 | 62,891 |
| Maintenance Labor | 6,354 | | 6,354 | | 6,354 | | 5,296 | 5,296 | 5,296 | 5,296 | 5,296 | 5,296 | 6,517 |
| Warehouse/Shipping Labor | 5,799 | | 7,718 | | 7,718 | | 3,939 | 3,939 | 3,939 | 3,939 | 3,939 | 3,939 | 3,245 |
| Harvesting/Packing Labor | 46,235 | | 62,921 | | 62,921 | | | | | | | | 18,245 |
| Harvesting/Shipping (Produce) | 17,765 | | 25,835 | | 25,835 | | | | | | | | 33,067 |
| Repairs & Maintenance | 4,202 | 4,202 | 11,428 | 11,428 | 11,428 | 4,095 | 34,702 | 3,356 | 3,356 | 3,356 | 3,356 | 3,356 | 4,003 |
| Seed & Plant Material | 35,662 | 35,662 | 11,899 | 11,899 | 11,899 | 11,899 | 25,662 | 8,269 | 8,269 | 8,269 | 8,269 | 8,269 | 5,187 |
| Production Material & Supply | 19,052 | 19,052 | 19,174 | 19,174 | 9,174 | 9,174 | 3,356 | 6,609 | 6,609 | 6,609 | 6,609 | 6,609 | 6,168 |
| Soil Materials | 8,659 | 8,659 | 4,341 | 4,341 | 4,341 | 4,341 | 8,269 | 3,523 | 3,523 | 3,523 | 3,523 | 3,523 | 4,718 |
| Chemicals & Fertilizers | 9,519 | 9,519 | 7,409 | 7,409 | 7,409 | 7,409 | 6,609 | 7,013 | 7,013 | 7,013 | 7,013 | 7,013 | 10,714 |
| Shipping Materials & Supplies | 29,803 | 29,803 | 25,553 | 50,553 | 25,553 | 75,553 | 3,523 | 31,022 | 31,022 | 31,022 | 31,022 | 31,022 | 16,837 |
| Upgrade material costs | 3,950 | 3,950 | 1,925 | 1,925 | 1,925 | 1,925 | 7,013 | 1,540 | 1,540 | 1,540 | 1,540 | 1,540 | 1,325 |
| Sales Tax | 894 | 894 | 329 | 329 | 329 | 329 | 31,022 | 234 | 234 | 234 | 234 | 234 | 503 |
| Freight-Out | 18,405 | 18,405 | 8,510 | 8,510 | 8,510 | 8,510 | 1,540 | 9,199 | 9,199 | 9,199 | 9,199 | 9,199 | 6,455 |
| *Rent* | | | | | | | | | | | | | |
| --Insider JaWood Properties LP | 35,159 | | 57,731 | 35,159 | | 57,731 | 57,731 | 35,159 | | | | 35,159 | |
| --Adequate Protection FCW | 57,731 | | | | | | | | | | | 57,731 | |
| --Synergem Land lease | 2,833 | | | | | | 2,833 | | | | 2,833 | | |
| Gas & Oil Vehicles | 834 | 834 | 1,129 | 1,129 | 1,129 | 1,129 | 487 | 487 | 487 | 487 | 487 | | 492 |
| Heating Gas | | | | 45,566 | | | | 35,601 | | | | 27,195 | |
| Electricity | 15,919 | 71,000 | 6,378 | 16,224 | | 6,378 | | 12,977 | | | | 14,757 | |
| Payroll Taxes - Excl Admin & Sales & Ltg | 6,378 | 6,378 | 6,378 | | 6,378 | | 5,316 | 5,316 | 5,316 | 5,316 | 5,316 | | 6,378 |
| Insurance - Includes Admin & Sales W Comp Not Logistics | 19,580 | 19,630 | 19,630 | | | | 20,896 | 82,852 | 203,093 | 71,552 | | 10,725 | |
| Taxes & Licenses | 90 | 90 | | | | | | | | | | 90 | |
| **TOTAL PROD & DIST EXPENSE** | 432,544 | 201,119 | 339,242 | 202,638 | 266,056 | 124,343 | 284,554 | 238,380 | 203,093 | 71,552 | 205,536 | 211,627 | 190,253 |
| **SALES EXPENSE** | | | | | | | | | | | | | |
| Sales Salaries | 8,637 | 8,637 | 8,727 | 8,727 | 8,727 | 8,727 | 7,198 | 7,198 | 7,198 | 7,198 | 7,198 | 7,198 | 8,737 |
| Sales Wages | 959 | 959 | 789 | 789 | 789 | 789 | 789 | 789 | 789 | 789 | 789 | 789 | 959 |
| Floral Shows | | | 400 | 400 | 400 | 420 | 400 | 400 | 400 | 400 | 400 | | |
| Advertising & Promotions | 2,250 | 2,250 | 1,050 | 1,050 | 1,050 | 1,050 | 550 | 550 | 550 | 550 | 550 | 713 | 713 |
| Commissions (Allertson's) | 750 | 750 | 250 | 250 | 250 | 250 | 500 | 500 | 500 | 500 | 500 | 1,750 | 1,750 |
| **TOTAL** | 12,596 | 12,596 | 11,396 | 11,396 | 11,396 | 1,700 | 1,692 | 1,460 | 9,447 | 1,485 | 9,447 | 2,465 | 12,155 |
| **Travel & Entertainment** | | | | | | | | | | | | | |
| Sales Travel | 3,098 | 3,098 | 1,319 | 1,319 | 1,319 | 1,319 | 835 | 835 | 835 | 635 | 635 | 635 | 367 |
| Corporate Travel | 500 | 500 | 500 | 500 | 500 | 500 | 400 | 400 | 400 | 400 | 400 | 400 | 125 |
| Sales Shows | 1,495 | 1,495 | 576 | 576 | 576 | 576 | 407 | 407 | 407 | 407 | 407 | 407 | 265 |
| Sales Meals & Entertainment | 200 | 200 | 200 | 200 | 200 | 920 | 160 | 160 | 160 | 160 | 160 | 160 | 75 |
| Corporate Meals | 5,293 | 5,293 | 2,596 | 2,596 | 2,596 | 2,596 | 1,692 | 1,692 | 1,602 | 1,602 | 1,602 | 1,602 | 832 |

**EXHIBIT 1**

## WEEKLY CASH FORECAST

| | Forecast Week 1 2/20/2015 | Forecast Week 2 2/27/2015 | Forecast Week 3 3/6/2015 | Forecast Week 4 3/13/2015 | Forecast Week 5 3/20/2015 | Forecast Week 6 3/27/2015 | Forecast Week 7 4/3/2015 | Forecast Week 8 4/10/2015 | Forecast Week 9 4/17/2015 | Forecast Week 10 4/24/2015 | Forecast Week 11 5/1/2015 | Forecast Week 12 5/8/2015 | Forecast Week 13 5/15/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL SALES EXPENSE | 17,863 | 8,293 | 13,592 | 4,296 | 13,592 | 4,296 | 11,048 | 3,052 | 11,048 | 3,052 | 11,048 | 3,284 | 12,950 |
| **GENERAL & ADMINISTRATION EXPENSE** | | | | | | | | | | | | | |
| Administrative Salaries | | | | | | | | | | | | | |
| -Insiders | | | 15,071 | | 7,536 | | 5,024 | | 5,024 | | 5,024 | | 7,536 |
| -Non-insiders | 3,053 | | 3,053 | | 3,053 | | 2,035 | | 2,035 | | 2,035 | | 3,053 |
| Payroll Taxes - Admin | 1,075 | | 1,075 | | 1,075 | | 896 | | 896 | | 896 | | 1,075 |
| Estate Professional Fees | 2,000 | | 10,000 | | | | 5,000 | | | | 5,000 | | |
| US Trustee, Court & Related Costs | | | | | | | 550 | | | | | | |
| 401K Administration | | | 415 | | | | | | | | | | |
| Net Life Quarterly | 314 | | 184 | 184 | 184 | 184 | 53 | 53 | 53 | 53 | 53 | 101 | 101 |
| Dues, Subscriptions & Education | 2,216 | | 2,216 | | 2,216 | | 2,216 | | | | | 2,216 | 2,216 |
| Telephone | 1,750 | | 1,550 | | | | | | | 1,650 | | 1,600 | 1,800 |
| Office Expense | 25 | | 465 | | | | 25 | | | | | 65 | 65 |
| Employee Programs | 3,801 | | 4,341 | | | | | | | 3,681 | | 4,566 | 4,566 |
| Computer Expense | 60 | | 60 | | | | | | | | | 60 | 60 |
| Medical Expenses | 700 | | 700 | | | | 700 | | | | | 960 | 960 |
| Bank Service Charges | 6,634 | | 6,634 | | 6,634 | | 6,634 | | 6,634 | | | 8,634 | 8,634 |
| Interest Expense | | | | | | | | | | | | | |
| - Adequate Protection FCW | 17,581 | | 17,581 | | 17,581 | | 17,581 | | 17,581 | | 17,581 | 17,581 | 17,581 |
| - Post petition interest | | | | | | 21,000 | | | | | | 2,560 | 2,560 |
| Royalty Expense | | | 2,560 | | | | 2,560 | | | | | 2,560 | 2,560 |
| TOTAL G&A EXPENSE | 39,209 | - | 65,844 | 184 | 11,847 | 21,184 | 43,274 | 53 | 8,007 | 5,504 | 13,007 | 36,473 | 11,764 |
| TOTAL EXPENSE | 479,592 | 210,472 | 419,176 | 207,137 | 293,896 | 149,842 | 338,876 | 241,484 | 222,149 | 80,107 | 229,982 | 251,384 | 215,008 |
| CASH FROM OPERATIONS | (337,846) | (7,692) | (146,472) | 114,325 | (115,536) | 71,419 | (54,662) | (17,270) | 2,065 | 144,107 | (5,768) | 128,640 | 165,046 |
| BORROWED FUNDS | 400,000 | 100,000 | | | | | | | | | | | |
| ENDING CASH BALANCE | 62,154 | 54,462 | 5,990 | 120,316 | 4,780 | 76,198 | 21,536 | 4,266 | 6,331 | 150,438 | 144,670 | 273,350 | 438,416 |
| INVENTORY | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 | 6,332,779 |
| OPEN ACCOUNTS RECEIVABLE | 1,229,552 | 1,289,935 | 1,259,256 | 1,256,082 | 1,355,969 | 1,416,976 | 1,438,821 | 1,516,664 | 1,598,512 | 1,670,357 | 1,758,202 | 1,606,696 | 1,453,409 |

1   Peter Susi, State Bar No. 62957
    Email: psusi@hbsb.com
2   Jonathan G. Gura, State Bar No. 214240
    Email: jgura@hbsb.com
3   **HOLLISTER & BRACE**, A Professional Corporation
    1126 Santa Barbara Street
4   Santa Barbara, CA 93101
    Telephone: (805) 963-6711
5   Facsimile: (805) 965-0329

6   Attorneys for Debtor and Debtor-in-Possession

(SPACE BELOW FOR FILING STAMP ONLY)

**FILED & ENTERED**

**JUL 22 2015**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY chackel   DEPUTY CLERK

10          **IN THE UNITED STATES BANKRUPTCY COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12                   **NORTHERN DIVISION**

13   In re:                              Case No.  9:-15-bk-10251-DS

14   Clearwater Nursery, Inc.,           Chapter   11

15                                       **ORDER GRANTING DEBTOR'S MOTION FOR
                                         ORDER AUTHORIZING USE OF CASH
16              Debtor.                   COLLATERAL PURSUANT TO SECOND
                                         STIPULATION WITH FARM CREDIT WEST,
17                                        FLCA AND FARM CREDIT WEST, PCA

18
                                         DATE:  July 6, 2015
19                                       TIME:  10:30 a.m.
                                         CTRM:  202
20                                              1415 State Street,
                                                Second Floor
21                                              Santa Barbara, CA 93101

22          The "Debtor's Motion For Order Authorizing Use of Cash

23   Collateral Pursuant to Second Stipulation with Farm Credit

24   West, FLCA and Farm Credit West, PCA" (the "Motion," Docket No.

25   73) filed by Clearwater Nursery, Inc. (the "Debtor") came for

26   hearing pursuant to the Official Committee of Unsecured

27   Creditor's "Objection . . [to] Motion for Order Authorizing Use

28   of Cash Collateral Pursuant to Second Stipulation with Farm

                              - 1 -

                                                **EXHIBIT 6**

1   Credit West FLCA and Farm Credit West PCA" (the "Objection,"

2   Docket No. 79) on July 6, 2015, at 10:30 a.m. in Courtroom 202

3   of the above-titled Court, the Honorable Deborah J. Saltzman,

4   United States Bankruptcy Judge presiding. Appearances were as

5   set forth in the record for the hearing.

6       Based on the Motion, the, the "Reply to Objection of

7   Official Committee of Unsecured Creditors to Motion For Order

8   Authorizing Use of Cash Collateral" (the "Reply," Docket No.

9   89) filed by the Debtor, and the "Statement in Support of

10   Motion For Order to Use Cash Collateral Pursuant to Second

11   Stipulation with Farm Credit West, FLCA and Farm Credit West,

12   PCA" (the "Statement in Support," Docket No. 90) filed by Farm

13   Credit West, PCA and Farm Credit West, FLCA (together, "FCW"),

14   the supporting papers, the files and records of this case, and

15   the arguments and statements of counsel at the time of the

16   hearing,

17      **THE COURT FINDS AS FOLLOWS:**

18      A. Notice of the Motion was appropriate pursuant to

19   Federal Rules of Bankruptcy Procedure 2002 and 4001(d) and

20   Local Bankruptcy Rule 9013-1(o);

21      B. The Debtor has established the business and

22   operational needs of the estate for use of the cash collateral

23   of FCW in the ordinary and necessary course of the estate's

24   business on a weekly basis, including, without limitation, to

25   prevent the immediate and irreparable harm to the estate;

26      C. The provisions of the "Second Stipulation For Interim

27   Use of Cash Collateral and Grant of Adequate Protection," (the

28

1  "Stipulation") and the Budget appended to the Motion are

2  reasonable, as modified by the court's ruling and this Order;

3    D. The Debtor has established the prima facie need of

4  FCW for and rights to the grant of adequate protection for the

5  Debtor's use of FCW's cash collateral for post-petition

6  operations during the period of time covered by the Budget; and

7    E. Other good cause supports granting the Motion.

8    **WHEREFORE, THE COURT ORDERS AS FOLLOWS:**

9    1. The Motion is granted.

10    2. Except as otherwise provided in Paragraph 5 and 6 of

11  this Order, the Stipulation and the Debtor's use of FCW's cash

12  collateral pursuant to the terms of the Stipulation are

13  approved in all respects as set forth in the Stipulation, which

14  Stipulation incorporates by reference the terms of the

15  "*Stipulation for Interim Use of Cash Collateral and Grant of*

16  *Adequate Protection*" (the "First Stipulation") approved by this

17  court on a final basis pursuant to an Order of this Court

18  entered on March 27, 2015 (Docket No. 62). All of the terms,

19  covenants, conditions, protections, and grants set forth in the

20  First Stipulation for use of cash collateral are ordered as set

21  forth in the First Stipulation, as modified by the Stipulation,

22  including the replacement liens and the administrative expense

23  status for adequate protection payments pursuant to 11 U.S.C.

24  §§ 105, 361, 363, 503(b), and 507(b).

25    3. The Debtor shall operate in conformity with the

26  Budget pursuant to the terms of the Stipulation.

27    4. FCW is entitled to the grants of adequate protection

28  as set forth in the Stipulation.

1      5.   The $25,000.00 line item for "Estate Professional

2    Fees" in the Budget appended to the Motion extends to both the

3    Debtor's and the Committee's professionals as fees may be

4    allowed by this Court after notice and a hearing.

5      6.   The 60 day challenge period set forth in paragraph

6    16b of the "Stipulation For Interim Use of Cash Collateral and

7    Grant of Adequate Protection" attached as Exhibit 1 to the

8    "Debtor's Emergency Motion For Order Authorizing Use of Cash

9    Collateral; Authorizing Postpetition Financing; and Granting

10    Superpriority Expense Claims" (Docket No. 9) approved as part

11    of the "Order Granting Debtor's Emergency Motion For Order: (1)

12    Authorizing Use of Cash Collateral; (2) Authorizing

13    Postpetition Financing; and (3) Granting Superpriority Expense

14    Claims" (Docket No. 38) is hereby extended for the Committee

15    for thirty (30) calendar days from the entry of this Order.

16                               ###

Date: July 22, 2015

Deborah J. Saltzman
United States Bankruptcy Judge

1

2

3

4

5

6

HOLLISTER & BRACE

A Professional Corporation
ATTORNEYS AT LAW
1126 SANTA BARBARA STREET
SANTA BARBARA, CALIFORNIA 93101
Telephone: (805) 963-6711
Facsimile: (805)

Jonathan G. Gura, Bar No. 214240
Peter Susi, Bar No. 62957

Attorneys for Debtor and Debtor-in-Possession

(SPACE BELOW FOR FILING STAMP ONLY)

```
┌────────────────────────────────┐
│      FILED & ENTERED           │
│  ┌──────────────────────────┐  │
│  │                          │  │
│  │       FEB 19 2015        │  │
│  │                          │  │
│  └──────────────────────────┘  │
│  CLERK U.S. BANKRUPTCY COURT    │
│  Central District of California │
│  BY handy    DEPUTY CLERK       │
└────────────────────────────────┘
```

7

8

9

10

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In re

CLEARWATER NURSERY INC.,

                    Debtor.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

BK No. 9:15-bk-10251-DS

Chapter 11

ORDER GRANTING DEBTOR'S
EMERGENCY MOTION FOR ORDER:
(1)AUTHORIZING USE OF CASH
COLLATERAL; (2) AUTHORIZING
POSTPETITION FINANCING; AND
(3) GRANTING SUPERPRIORITY
EXPENSE CLAIMS

Date:    February 18, 2015
Time:    1:30 p.m.
Place:   Courtroom 202
         1415 State Street
         Santa Barbara, CA

- 1 -

1       The "*Debtor's Emergency Motion For Order Authorizing Use*

2  *of Cash Collateral; Authorizing Postpetition Financing; and*

3  *Granting Superpriority Expense Claims*" (the "Motion," Docket

4  No. 9) filed by Clearwater Nursery, Inc. (the "Debtor") came

5  for hearing on shortened time at the request of the Debtor on

6  February 18, 2015, at 1:30 p.m. in Courtroom 202 of the above-

7  titled Court, the Honorable Deborah J. Saltzman, United States

8  Bankruptcy Judge presiding.    Appearances were as set forth in

9  the record for the hearing.

10      Based upon the Motion and the supporting papers, the files

11  and records of this case, and the arguments and statements of

12  counsel at the time of the hearing,

13      **THE COURT FINDS AS FOLLOWS:**

14      A.   Notice of the Motion was appropriate pursuant to the

15  Order Shortening Time [Docket No. 26], Local Bankruptcy Rule

16  9075-1, and Federal Rules of Bankruptcy Procedure 2002 and

17  4001(d);

18      B.   The Debtor has established the business and

19  operational needs of the estate for use of the cash collateral

20  of and financing from Farm Credit West, FLCA and Farm Credit

21  West, PCA ("FCW") in the ordinary and necessary course of the

22  estate's business on a weekly basis, including, without

23  limitation, to prevent the immediate and irreparable harm to

24  the estate pending a final hearing on the Motion;

25      C.   The provisions of the "*Stipulation For Interim Use of*

26  *Cash Collateral and Grant of Adequate Protection*," (the

27  "Stipulation"), the Debtor-in-Possession Financing Letter

28

1   Agreement dated February 13, 2015 (the "Agreement"), and the

2   Budget appended to the Motion are reasonable;

3       D.    The Debtor has established the prima facie need of

4   FCW for and rights to the grant of adequate protection for the

5   Debtor's use of FCW's cash collateral for post-petition

6   operations during the period of time covered by the Budget; and

7       E.    Other good cause supports granting the Motion.

8   **WHEREFORE, THE COURT ORDERS AS FOLLOWS:**

9       1.    The Motion is granted.

10      2.    The Stipulation, the Agreement, and the Debtor's use

11  of FCW's cash collateral pursuant to the terms of the

12  Stipulation and the Agreement are approved in all respects as

13  set forth in the Agreement and the Stipulation.  All of the

14  terms, covenants, conditions, protections, agreements,

15  reaffirmations, releases, and grants set forth in the

16  Stipulation and the Agreement are ordered as set forth therein,

17  including, without limitation, the replacement liens, the

18  super-priority liens, and the super-priority expenses of

19  administration pursuant to 11 U.S.C. §§ 105, 361, 362, 363,

20  364(c)(1), 364(d), 503(b), and 507(b).

21      3.    The Debtor shall operate in conformity with the

22  Budget and the Eligible Collateral calculation pursuant to the

23  terms of the Stipulation and the Financing Agreement.

24      4.    FCW is entitled to the grants of adequate protection

25  as set forth in the Stipulation and the protections,

26  agreements, reaffirmations, releases, and grants set forth in

27  the Agreement.

28

- 3 -

1        5.    A final hearing shall be conducted on the Motion on

2    March 5, 2015, at 10:30 a.m. in Courtroom 202 of the above-

3    titled Court.    Any and all further responses or oppositions to

4    the Motion shall be filed with the Clerk of the Court and

5    served upon counsel for the Debtor and FCW, and the United

6    States Trustee, no later than February 26, 2015.

7

8                                                    ###

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Date: February 19, 2015

25                                    Deborah J. Saltzman
                                      United States Bankruptcy Judge
26

27

28                                              - 4 -

# LANG, RICHERT & PATCH

A Professional Corporation • Attorneys at Law

Robert L. Patch II
René Lastreto II
Charles Trudrung Taylor
Mark L. Creede
James M. Bell
Robert K. Hillison
Scott J. Ivy
William T.McLaughlin II
Craig B. Fry
Wm. Lanier Thomas

Victoria J. Salisch
Robert E. Bergin
Darlene Azevedo Kelly
(Of Counsel)

David A. Roberts
Philip A. Martinez
Ana de Alba
Michael J. Gomez
Kimberly L. Mayhew
Alice M. Dostálová-Busick
Diandra N. Netto
Sydney A. Smith
Martha R. Abundis

Frank H. Lang (Retired)
William T. Richert
(1937 - 1993)

August 3, 2015

**VIA ELECTRONIC, U.S. MAIL, AND FACSIMILE**

Peter Susi, Esq.
Hollister & Brace
1126 Santa Barbara Street
Santa Barbara, CA 93101

Mette H. Kurth
Fox Rothschild LLP
1800 Century Park E., Ste 300
Los Angeles, CA 90067

U.S. Trustee
United States Trustee (ND)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 9001

Brian D Fittipaldi
128 E Carrillo St
Santa Barbara, CA 93101

Re:   NOTICE OF DEFAULT: Clearwater Nursery, Inc. (9:15-bk-10251-DS)
File No. 35473

Dear Mr. Susi:

As you are aware, our office represents secured creditors Farm Credit West, PCA ("PCA") and Farm Credit West, FLCA (together with PCA, "FCW") in connection with the bankruptcy of Clearwater Nursery, Inc. ("Clearwater"). PCA provided Clearwater with $500,000.00 in debtor-in-possession financing (the "DIP loan") approved by the United States Bankruptcy Court, Central District of California, Northern Division (the "Bankruptcy Court"); supervising Clearwater's reorganization case. The Bankruptcy Court approved Clearwater's DIP Loan Agreement with PCA pursuant to an orders entered on February 19, 2015, and March 27, 2015 (the "Orders").

Paragraph A(1)(c) of the DIP Loan Agreement states that "Borrower shall repay in full all advances made under the DIP Loan, plus all accrued interest thereon, by no later than August 1, 2015." As you are no doubt aware, Clearwater defaulted on the DIP loan by failing to repay in full all advances made under the DIP loan, plus all accrued interest by August 1, 2015.

Fig Garden Financial Center
5200 North Palm Avenue, Fourth Floor
Fresno, California 93704

Post Office Box 40012
Fresno, California 93755-0012

Telephone: (559) 228-6700
Facsimile: (559) 228-6727

EXHIBIT 7

LANG, RICHERT & PATCH
A Professional Corporation • Attorneys at Law


Peter Susi, Esq.
Hollister & Brace, A Professional Corp
August 3, 2015
Page 2


   Furthermore, FCW and Clearwater have entered into stipulations for Clearwater's use of FCW's cash collateral.  The Bankruptcy Court approved the stipulations pursuant to the Orders. In addition to being in default under the DIP loan, notice is hereby given that Clearwater is in default under the Orders pursuant to paragraph 27(f).  Paragraph 27(f) provides:

   27.   Automatic Termination - Notwisthanding any other provision contained herein, Debtor's authorization to use Lender's Cash Collateral pursuant to this Stipulation shall terminate immediately and automatically, without any obligation of Lender to provide notice to the Debtor, upon the occurrence of any of the following Events of Default:

   (f)         Failure of the Debtor to comply with any terms, conditions, or covenants contained in this Stipulation or any senior or pari passu DIP financing . . .

The budgets approved by the Orders also mandate the repayment of the DIP loan by August 1, 2015.  Accordingly, Clearwater is also in default of the cash collateral stipulations and the Bankruptcy Court's Orders.

   Please be advised that FCW is now proceeding with all of its rights and remedies under the Orders.  In particular, paragraph 31 of the stipulations provide:

         Upon receipt from Lender of written notice that an Event of Default has occurred, the Debtor shall immediately cease using Cash Collateral, and shall segregate and hold any Cash Collateral in the Cash Collateral Account, or that it otherwise may have in its possession, in trust for the benefit of Lender. Such written notice shall be provided by Lender to the Debtor, to the Office of the United States Trustee, and to counsel for any official creditor committee appointed herein.


M:\35473\Corresp\Default Letter.wpd

LANG, RICHERT & PATCH
A Professional Corporation • Attorneys at Law

Peter Susi, Esq.
Hollister & Brace, A Professional Corp
August 3, 2015
Page 3

      Pursuant to paragraph 31 of the stipulations that have been approved by the Orders, Clearwater is hereby directed to immediately cease using cash collateral, segregate and hold any cash collateral in the Cash Collateral Accounts, or that it otherwise may have in its possession, in trust for the benefit of FCW.

      Very truly yours,

      LANG, RICHERT & PATCH

      Michael J. Gomez

MJG/tb

M:\35473\Corresp\Default Letter.wpd